**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANE FOLEY, *et al.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>LAFARGE S.A., *et al.*,<br><br>           Defendants. | Case No. 23-cv-05691-NGG-PK |
| CHARISS FINAN, *et al.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>LAFARGE S.A., *et al.*,<br><br>           Defendants. | Case No. 22-cv-07831-NGG-PK |
| TAMARA FIELDS, *et al.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>LAFARGE S.A., *et al.*,<br><br>           Defendants. | Case No. 23-cv-00169-NGG-PK |
| NADIA MURAD, *et al.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>LAFARGE S.A., *et al.*,<br><br>           Defendants. | Case No. 23-cv-09186-NGG-PK |

|  |  |
|---|---|
| ESTATE OF AVRAHAM GOLDMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 24-cv-01043-NGG-PK |
| JASON BLACK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 24-cv-08901-NGG-PK |
| HELEN JANE WILSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 25-cv-01975-NGG-PK |
| SUSAN SHIRLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 25-cv-04248-NGG-PK |

| | |
|---|---|
| CHRISTINE STALLTER, *et al.*,<br><br>               Plaintiffs,<br><br>       v.<br><br>LAFARGE S.A., *et al.*,<br><br>              Defendants. | Case No. 25-cv-06749- NGG-PK |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**

Served on April 8, 2026

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

APPLICABLE LAW ........................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I.    AFFIRMATIVE DEFENSE NO. 7:  ACT OF WAR (ALL PLAINTIFFS) ...................... 3

II.   AFFIRMATIVE DEFENSE NO. 13:  NECESSITY AND DURESS
      (ALL PLAINTIFFS) ............................................................................................... 8

III.  AFFIRMATIVE DEFENSE NO. 12:  WITHDRAWAL (*FIELDS* AND *WILSON*
      PLAINTIFFS ONLY) ............................................................................................. 12

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
  531 F. Supp. 2d 620 (S.D.N.Y. 2008).................................................................. 11

*Ass'n of Home Appliance Mfrs. v. City of N.Y.*,
  36 F. Supp. 3d 366 (S.D.N.Y. 2014)...................................................................... 4

*Biton v. Palestinian Interim Self-Gov't Auth.*,
  412 F. Supp. 2d 1 (D.D.C. 2005) ...................................................................... 4, 7

*Chiquita Brands Int'l, Inc., In re*,
  284 F. Supp. 3d 1284 (S.D. Fla. 2018) ............................................................ 9, 10

*Coach, Inc. v. Kmart Corps.*,
  756 F. Supp. 2d 421 (S.D.N.Y. 2010)................................................................. 16

*Corzo v. Brown Univ.*,
  2026 WL 91424 (N.D. Ill. Jan. 12, 2026) .......................................................... 13

*D.S. Am. (E.), Inc. v. Chromagrafx Imaging Sys., Inc.*,
  873 F. Supp. 786 (E.D.N.Y. 1995) ..................................................................... 11

*Estate of Klieman v. Palestinian Auth.*,
  424 F. Supp. 2d 153 (D.D.C. 2006) ...................................................................... 7

*Excelsior Cap., LLC v. Devine*,
  2011 WL 13305363 (E.D.N.Y. Jan. 26, 2011) ..................................................... 8

*FTC v. Consumer Health Benefits Ass'n*,
  2011 WL 13295634 (E.D.N.Y. Oct. 5, 2011)........................................................ 8

*GEOMC Co. v. Calmare Therapeutics Inc.*,
  918 F.3d 92 (2d Cir. 2019)....................................................................... 3, 11, 13

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
  2016 WL 6906583 (S.D.N.Y. Nov. 21, 2016)..................................................... 12

*Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.*,
  243 F. Supp. 3d 470 (S.D.N.Y. 2017).................................................................... 8

*Kaplan v. Cent. Bank of Islamic Republic of Iran*,
  2019 WL 2103424 (D.D.C. May 14, 2019).......................................................... 5

*Knox v. Palestine Liberation Org.*,
    306 F. Supp. 2d 424 (S.D.N.Y. 2004)...................................................................... 4

*LIBOR-Based Fin. Instruments Antitrust Litig., In re*,
    2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ........................................................ 14

*Morris v. Khadr*,
    415 F. Supp. 2d 1323 (D. Utah 2006)..................................................................... 7

*Oneida Indian Nation of N.Y. v. State of N.Y.*,
    691 F.2d 1070 (2d Cir. 1982)................................................................................... 4

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020)..................................................................... 4

*Schansman v. Sberbank of Russia PJSC*,
    128 F.4th 70 (2d Cir. 2025) ..................................................................................... 4

*Schansman v. Sberbank of Russia PJSC*,
    565 F. Supp. 3d 405 (S.D.N.Y. 2021)................................................................. 4, 7

*SEC v. Laura*,
    2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) ........................................................ 3

*SEC v. McCaskey*,
    2001 WL 1029053 (S.D.N.Y. Sept. 6, 2001).......................................................... 10

*Stansell v. BGP, Inc.*,
    2011 WL 1296881 (M.D. Fla. Mar. 31, 2011) ........................................................ 7

*U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
    *2010 WL 11561145 (E.D. Va. Jan. 25, 2010)........................................................ 10

*U.S. v. Alicea*,
    *837 F.2d 103 (2d Cir. 1988) ................................................................................... 9

*U.S. v. Berger*,
    *224 F.3d 107 (2d Cir. 2000) ............................................................................ 13, 15

*U.S. v. Bullis*,
    *77 F.3d 1553 (7th Cir. 1996) .................................................................................. 15

*U.S. v. Gigante*,
    *982 F. Supp. 140 (E.D.N.Y. 1997) ........................................................................ 13

*U.S. v. Gonzalez-Perez*,
    *778 F.3d 3 (1st Cir. 2015).................................................................................... 10

*U.S. v. Harris*,
    *2008 WL 4324032* (N.D. Ill. Jan. 31, 2008)................................................................ 10

*U.S. v. Lafarge S.A.*,
    No. 1:22-cr-444-WFK (E.D.N.Y. 2022)................................................................ 2

*U.S. v. Leslie*,
    *658 F.3d 140* (2d Cir. 2011) ........................................................................ 13, 14

*U.S. v. Mandell*,
    *752 F.3d 544* (2d Cir. 2014) ............................................................................ 13

*U.S. v. Milstein*,
    *401 F.3d 53* (2d Cir. 2005) .............................................................................. 15

*U.S. v. Patel*,
    *879 F.2d 292* (7th Cir. 1989) ...................................................................... 13, 14

*U.S. v. Pestana*,
    *865 F. Supp.* 2d 357 (S.D.N.Y. 2011)................................................................ 9

*U.S. v. Stroh*,
    *2000 WL 1833397* (D. Conn. Nov. 3, 2000)...................................................... 13

*U.S. v. Villegas*,
    *899 F.2d 1324* (2d Cir. 1990) ........................................................................ 11

*U.S. v. White*,
    *552 F.3d 240* (2d Cir. 2009) .......................................................................... 9

*U.S. v. Zayac*,
    *765 F.3d 112* (2d Cir. 2014) .......................................................................... 9

*Weiss v. Arab Bank, PLC*,
    2007 WL 4565060 (E.D.N.Y. Dec. 21, 2007) .................................................... 3

**Statutes**

18 U.S.C. § 2331(4) ................................................................................................ 1, 4

18 U.S.C. § 2331(4)( A)............................................................................................ 4

18 U.S.C. § 2331(4)(B)............................................................................................ 4, 5

18 U.S.C. § 2331(4)(C)............................................................................................ 5

18 U.S.C. § 2331(6)(A)(i)........................................................................................ 5

iv

18 U.S.C. § 2331(6)(A)(ii) ................................................................................................ 1

18 U.S.C. § 2336 ............................................................................................................... 3

18 U.S.C. § 2336(a) ......................................................................................................... 3

Anti-terrorism Clarification Act of 2018, S. 2946, 115th Cong. § 2 (2018) .................. 1

U.S. Const. art. I, § 8, cl. 11 ............................................................................................ 4

## Rules

Fed. R. Civ. P. 12(f) ........................................................................................................ 3

Fed. R. Civ. P. 36(b) ...................................................................................................... 11

## Other Authorities

Amendment of the Designation of al-Qa'ida in Iraq, 77 Fed. Reg. 73,732, 73,732
   (Dec. 11, 2012) ........................................................................................................... 7

Designation of Jam'at al Tawhid wa'al-Jihad, Also Known as the Monotheism and
   Jihad Group, Also Known as the al-Zarqawi Network, Also Known as al-Tawhid,
   as a Foreign Terrorist Organization Pursuant to Section 219 of the Immigration and
   Nationality Act, 69 Fed. Reg. 61, 292, 61,292 (Oct. 15, 2004) ................................. 6

H.R. Rep. No. 102-1040 .................................................................................................. 3

H.R. Rep. No. 115-858 ................................................................................................. 3, 5

Public Notice 8732, Amendment of the Designation of al-Qa'ida in Iraq,
   79 Fed. Reg. 27,972, 27,972 (May 15, 2014) ........................................................... 6

S. Rep. 102-342 ................................................................................................................ 3

**INTRODUCTION**

The Court should strike Defendants' seventh, twelfth, and thirteenth affirmative defenses because they are legally and factually insufficient.  In October 2022, Defendants pleaded guilty to conspiring with ISIS and the al-Nusra Front ("ANF") as part of a scheme to profit from their cement plant in northern Syria and exclude their competitors.  Now Defendants assert four affirmative defenses – act of war, necessity and duress, and withdrawal – in an attempt to excuse that very conduct.  *See Foley* Dkt. 155 ("Answer") at 159-160, ¶¶ 7, 13.[1]  None is viable.  All Plaintiffs request the Court strike Defendants' act of war, necessity, and duress defenses; only the *Fields* and *Wilson* Plaintiffs move on the withdrawal defense.[2]

The ATA's "act of war" defense bars claims for injury by reason of acts "occurring in the course of" "declared war," "armed conflict . . . between two or more nations," or "armed conflict between military forces of any origin."  18 U.S.C. § 2331(4); *id.* § 2336(a).  As a matter of law, the terrorist attacks Plaintiffs allege are not such acts.  Indeed, Congress amended the ATA in 2018 to make clear that designated terrorists are ineligible for act-of-war protection.  Anti-Terrorism Clarification Act of 2018, S. 2946, 115th Cong. § 2 (2018); 18 U.S.C. § 2331(6)(A)(ii).  For good reason:  if the ATA did not even apply to ISIS – perhaps *the* paradigmatic example of a terrorist group the statute is meant to cover – it would become a dead letter.  As for the necessity and duress defenses, Defendants' binding admissions already foreclose them both.  And even if the defenses were legally viable, Defendants do not allege sufficient facts satisfying their elements.  Defendants' withdrawal defense based on their 2014

---

[1] The Defendants have asserted the same affirmative defenses in each of these matters.  For ease of reference the consolidated Plaintiffs are referencing the *Foley* Answer only.

[2] Plaintiffs do not concede that the other affirmative defenses asserted by the Defendants are valid, and reserve their rights to challenge them at the appropriate time.

1

abandonment of the Jalabiyeh Cement Plant (the "Plant") likewise fails because, at most, abandoning the Plant is nothing more than a mere cessation of conspiratorial activity, which is insufficient as a matter of law. Withdrawal requires that Defendants took affirmative steps to disavow the conspiracy either by communicating their withdrawal to co-conspirators or by making a clean breast to authorities. Defendants' answer and their guilty plea make it clear that they did neither.

The Court should therefore streamline this litigation by striking all of these defenses. Allowing them to stay in the case will enlarge discovery and spawn an array of ancillary disputes over issues the parties could otherwise avoid. Procedurally, these cases have become sprawling enough. There is no need to make them even more so by forcing the parties to litigate three more defenses that fail at the threshold. Plaintiffs' motion should be granted.

## BACKGROUND

In October 2022, Defendants Lafarge S.A. and Lafarge Cement Syria S.A. ("LCS") pleaded guilty to the crime of conspiring to provide material support to ISIS and ANF. Plea Agreement ¶ 2, *U.S. v. Lafarge S.A.*, No. 1:22-cr-444-WFK (E.D.N.Y. Oct. 18, 2022), Dkt. 10. As Defendants admitted in the Statement of Facts accompanying that guilty plea, "[w]hile other multinational corporations withdrew from and ceased operations in Syria," Defendants' executives "negotiated agreements" with terrorist groups "to ensure continued operation of the Jalabiyeh Cement Plant, and to obtain economic advantage over their competitors in the Syrian cement market." Statement of Facts ("SOF") ¶ 15, No. 1:22-cr-444-WFK (E.D.N.Y), Dkt. 10-1. As part of the deal Defendants struck with the terrorists, "ISIS also agreed to impose costs on, and in some cases block the importation of, competing cement from Turkey." *Id.* Defendants negotiated those agreements "at the direction of [their] senior management," *id.* ¶16, with "the explicit purpose of incentivizing ISIS to act in a manner that would promote [Defendants']

2

security and economic interests." *Id.* ¶¶ 15, 19, 26-47.  As Defendants' executives summarized their mindset, Defendants should "share the 'cake'" with ISIS to ensure ISIS had "a vested interest" in "hav[ing] the plant run well." *Id.* ¶ 73.

## APPLICABLE LAW

Rule 12(f) provides that the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95 (2d Cir. 2019).  A defense is insufficient if there is "no question of fact" or substantial "question of law" that "might allow the defense to succeed," and the plaintiff would be "prejudiced by [the] inclusion of the defense." *GEOMC*, 918 F.3d at 96.  As this Court has explained, "a factually implausible or legally impossible affirmative defense is necessarily prejudicial to a plaintiff and should be struck." *SEC v. Laura*, 2020 WL 8772252, at *2 n.4 (E.D.N.Y. Dec. 30, 2020) (Garaufis, J.).

## ARGUMENT

### I.    AFFIRMATIVE DEFENSE NO. 7:  ACT OF WAR (ALL PLAINTIFFS)

**A.**    The act-of-war defense does not cover the terrorist attacks Plaintiffs allege.  The ATA excludes claims "for injury or loss by reason of an act of war." 18 U.S.C. § 2336.  Congress intended this defense to "bar actions for injuries that result from military action by recognized governments as opposed to terrorists." H.R. Rep. No. 102-1040 at 7 (1992); S. Rep. 102-342 at 46 (1992).  It "should not be a liability shield" for those who conspire with "designated terrorist organizations." H.R. Rep. No. 115-858, at 4-5 (2018).  Indeed, using the act-of-war defense to shelter designated terrorists like ISIS "would pervert the very purpose of the ATA, which was enacted to deter terrorist activity and hold liable those who engage in it." *Weiss v. Arab Bank, PLC*, 2007 WL 4565060, at *5 (E.D.N.Y. Dec. 21, 2007).

The act-of-war defense's text confirms that it does not apply.  An "act of war" is "any act

3

occurring in the course of" a (1) "declared war," (2) an "armed conflict, whether or not war has been declared, between two or more nations," or (3) an "armed conflict between military forces of any origin." *Id.* at \*4 (citing 18 U.S.C. § 2331(4)). Defendants satisfy none of these prongs. They cannot claim that the attacks occurred in the course of a "declared war." 18 U.S.C. § 2331(4)( A). Congress has the sole authority to declare war, U.S. Const. art. I, § 8, cl. 11, and it has not exercised that power since World War II. *See About Declarations of War by Congress*, U.S. Sen., https://www.senate.gov/about/powers-procedures/declarations-of-war.htm.[3]

Nor can Defendants claim the attacks were in the course of an "armed conflict . . . between two or more nations." 18 U.S.C. § 2331(4)(B). Under the ATA, as under the Foreign Sovereign Immunities Act ("FSIA"),[4] a "nation" must be recognized by the U.S. government. *See Knox*, 306 F. Supp. 2d at 441 ("[A]ctual recognition serves as a prerequisite for a United States court to exercise jurisdiction over a claim concerning the existence of a foreign state or the legitimacy of an act of such a state."). If the foreign entity "is not a state, the armed conflict between the two entities does not constitute a conflict 'between two or more nations.' " *Biton v. Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1, 7 n.5 (D.D.C. 2005);[5] *see Schansman v.*

---

[3] On a Rule 12 motion, the Court may take judicial notice of "material that is a matter of public record," including "legislative history" and "legislative facts." *Ass'n of Home Appliance Mfrs. v. City of N.Y.*, 36 F. Supp. 3d 366, 371 (S.D.N.Y. 2014); *Oneida Indian Nation of N.Y. v. State of N.Y.*, 691 F.2d 1070, 1086 (2d Cir. 1982) (appropriate on Rule 12 motion to take judicial notice of "law, legislative facts, or factual matters that are incontrovertible").

[4] *See Schansman v. Sberbank of Russia PJSC*, 128 F.4th 70, 88 (2d Cir. 2025) (" 'foreign state' for purposes of the ATA immunity provision . . . is any 'foreign state' under the FSIA Definitional Provision"); *Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 430 (S.D.N.Y. 2004) ("foreign state" inquiries under ATA or FSIA immunity provisions "are identical").

[5] The ATA and FSIA's immunity provisions use the term "foreign state," while the ATA's act of war defense uses the term "nation." If there is a difference, the latter term is narrower. "FSIA defines 'foreign state' more expansively than just other nation states. 'A foreign state . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state . . . .'" *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 408 (S.D.N.Y. 2020).

*Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 419 (S.D.N.Y. 2021) (terrorist group was not a "nation for purposes of 18 U.S.C. § 2331(4)(B)"). The United States did not recognize ISIS or ANF as foreign nations, so the second prong does not apply.

The act-of-war defense's final prong – an "armed conflict between military forces of any origin," 18 U.S.C. § 2331(4)(C) – is also inapplicable. As amended in 2018, the ATA provides that the phrase "'military force' does not include" any entity that "has been designated as a . . . foreign terrorist organization" ("FTO"). 18 U.S.C. § 2331(6)(A)(i); *see* H.R. Rep. No. 115-858 at 4-5 (2018) (explaining "Congress' original intent" that defendants cannot "use the ATA's 'act of war' defense if the terrorist act was carried out by a designated terrorist organization or by any other person the court determines is not a military force"). Both ISIS and ANF were so designated. So under the statute's plain text, ISIS and ANF are not "military forces." *See Kaplan v. Cent. Bank of Islamic Republic of Iran*, 2019 WL 2103424, at *1-2 (D.D.C. May 14, 2019) (2018 amendment makes "act-of-war exception no longer applicable" to designated FTOs).

Defendants earlier conceded that the 2018 amendment bars their act-of-war defense. They stipulated in *Foley* that they asserted the defense "only insofar as [Defendants] argue that retroactive application of the 2018 amendment to the [ATA] . . . is unconstitutional." Stipulation at 2. Defendants "otherwise withdr[e]w [the] affirmative defense" and would "not assert [it] if the Court determines that the 2018 amendment constitutionally applies." *Id.*[6] Now, they have changed their position. They invoke the defense without limitation to reach attacks "carried out by an entity or group not designated" as an FTO "at the time of the act." *Fields*, Dkt. 124 at 149,

---

[6] The Court need not decide this question. The defense fails as a matter of law whether or not the amendment applies. *Infra* at pp. 7-8.

5

¶ 7.[7]  Defendants appear to argue that the defense applies whenever the attacking group was designated *after* the attack at issue.

Defendants' attempt to backtrack is unpersuasive.  For one thing, Defendants' temporal argument applies at most to two attacks – ANF's kidnappings of Plaintiff Theo Padnos, *see Stallter* Dkt. 1 at 120, ¶ 289 (kidnapped by ANF in October 2012), and Leyla Ekren, *see Finan* Dkt. 140 at 128, ¶ 391 ("Ekren was first brought to Syria in 2012 when [her parents] joined ANF.").[8]  The group that carried out every other attack across these nine cases was indisputably already designated at the time.  Under the statute's 2018 amendment, the Court should strike this defense as to all attacks but the Padnos and Ekren attacks for that reason alone.

But the Court should also strike this defense as to Mr. Padnos and Ms. Ekren.  ANF kidnapped Theo Padnos in October 2012, a few weeks before the Secretary of State designated ANF as an FTO.  *Stallter* Dkt. 1, ¶¶ 33, 289.  But ANF emerged from al-Qaeda in Iraq ("AQI"), a group the Secretary had already designated in 2004.  *See* 69 Fed. Reg. 61292 (Oct. 15, 2004).  Similarly, Leyla Ekren was brought to Syria in 2012 by her parents who joined ANF.  *Finan* Dkt. 140, ¶ 391.  When the State Department designated ISIS and ANF, it did not issue new designations.  It simply accounted for AQI's evolution by amending its designation to include the names for ANF and ISIS.  *See* 77 Fed. Reg. 73732 (Dec. 11, 2012) (adding ANF); 79 Fed. Reg. 27972 (May 15, 2014) (adding ISIS).  Therefore, Mr. Padnos's and Ms. Ekren's kidnappings *were* committed by already-designated terrorists.

---

[7] When Defendants sought leave to amend their answers in *Foley*, *Black*, *Shirley*, and *Fields* to add new defenses after the deadline for amendment had passed, they told the Court that doing so would "ensure consistency across" all of the related cases before the Court.  *Foley* Dkt. 145 at 1. Defendants' inconsistencies belie that representation.  In some cases, the act-of-war defense is narrowed by stipulation, but in others it is now asserted without limitation.  Defendants do not even plead the defense consistently across their answers.

[8] Ekren was also subject to attacks by ISIS later in time.  *See Finan* Dkt. 140 at 128, ¶ 393.

6

**B.**     The 2018 amendment supplies reason enough to strike this defense.  But even if the 2018 amendment did not control, ISIS and ANF were not "military force[s]" under that term's plain meaning.  Courts often rule that terrorists are ineligible for act-of-war protection, regardless of designation status.  *See*, *e.g.*, *Schansman*, 565 F. Supp. 3d at 419 (holding that non-designated terrorist group using "intimidation and violence" "against civilians" was "not a military force" qualifying for act of war exception); *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *11 (M.D. Fla. Mar. 31, 2011) (holding FARC "cannot be considered a military force of any origin"); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1334 (D. Utah 2006) (finding al Qaeda is not a "military force" but "instead, a 'group' that systematically uses violent and destructive acts in its attempts to coerce the United States into acceding to its demands").  Terrorist attacks like the ones here "violate[] established norms of warfare and armed conflict under international law," and "[a]s a matter of law" are not acts "occurring in the course of armed conflict."  *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 166-67 (D.D.C. 2006) (act of war defense does not exempt attack on civilian bus); *see Biton*, 412 F. Supp. 2d at 7-10 (similar).

ANF's kidnapping and torture of Theo Padnos is therefore not an act of war.  Mr. Padnos was a civilian freelance reporter covering the civil war.  *Stallter* Dkt. 1 at 120, ¶ 289.  ANF kidnapped him and tortured him for approximately 22 months before finally releasing him.  *Id.* The kidnapping, detention, and torture of unarmed civilians is not an act of war regardless of whether the group carrying out the kidnapping and torture is a designated FTO.  A group "engage[d] in violent acts against civilians," including "torture," "is a terrorist group . . . not a military force" for purposes of the act-of-war defense.  *Schansman*, 565 F. Supp. 3d at 419.

**C.**     Allowing Defendants to plead this defense would work substantial prejudice.  It would create a needless sideshow over an array of ancillary issues, which the Court and the

7

parties will need to spend resources addressing. For example, if the defense stands, the parties may need to retain experts to opine on issues of international law, including the extent to which ISIS and ANF complied with the laws of war. They may need to debate U.S. foreign policy and the reasons for the timing of ISIS's and ANF's terrorist designations. They may even need to dive into otherwise-irrelevant details of each terrorist attack, including whether the terrorists were wearing uniforms or were using an attack technique likely to cause civilian deaths. And after all that, Plaintiffs would move for summary judgment on the defense, adding to the number of other issues the Court will then be asked to resolve.

None of that is necessary. Because this defense fails at the threshold, the Court should decline to "expand the scope of [the] case" by forcing the parties to litigate these issues. *Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.*, 243 F. Supp. 3d 470, 477 (S.D.N.Y. 2017) (striking defense presenting "numerous additional technical, factual, and legal issues that would lead to additional fact discovery, expert discovery, and substantial motion practice"); *see also Excelsior Cap., LLC v. Devine*, 2011 WL 13305363, at *2 (E.D.N.Y. Jan. 26, 2011) ("[W]here an affirmative defense is clearly insufficient as a matter of law . . . it is best to eliminate such a defense at the earliest possible stage."). Plaintiffs should not be prejudiced by incurring the added time and expense of "discovery and motion practice on" issues that would "ultimately be for naught because the affirmative defense[] [is] deficient as a matter of law." *FTC v. Consumer Health Benefits Ass'n*, 2011 WL 13295634, at *7 (E.D.N.Y. Oct. 5, 2011).

## II.   AFFIRMATIVE DEFENSE NO. 13:  NECESSITY AND DURESS (ALL PLAINTIFFS)

A.     Defendants admitted to a range of facts in the Statement of Facts accompanying their guilty plea. Those admissions foreclose any claim of necessity or duress here.

Necessity and duress require immediate threats that leave a defendant no alternative but

8

to violate the law.  To plead necessity, Defendants must allege that they were under "present, imminent, and impending threat of death or serious bodily injury," that they "did not negligently or recklessly place [themselves]" in the situation compelling their unlawful conduct, and that they "had no reasonable legal alternative."  *U.S. v. White*, 552 F.3d 240, 247 (2d Cir. 2009).  Likewise, duress requires that Defendants "faced a threat of force . . . sufficient to induce a well-founded fear of impending death or serious bodily injury" and that they "lacked a reasonable opportunity to escape harm."  *U.S. v. Zayac*, 765 F.3d 112, 120 (2d Cir. 2014) (citation omitted).  The lack of any opportunity to escape is vital to both defenses.  To prevail, Defendants must show a "real emergency" that left them "no time to pursue any legal alternative."  *U.S. v. Pestana*, 865 F. Supp. 2d 357, 361 (S.D.N.Y. 2011); *see U.S. v. Alicea*, 837 F.2d 103, 106-07 (2d Cir. 1988) (failure to escape was fatal to defense as a matter of law).[9]

Defendants' guilty plea conclusively forecloses these defenses.  Defendants admitted that, "[w]hile other multinational corporations withdrew from and ceased operations in Syria," Lafarge's executives "negotiated agreements" with terrorist groups "to ensure continued operation of the Jalabiyeh Cement Plant, and to obtain economic advantage over their competitors in the Syrian cement market."  SOF ¶ 15.  This admission alone is fatal.  Any threats Defendants may have faced were the result of their own conduct, as they had ample time to pursue legal alternatives (such as withdrawing from Syria) before conspiring with terrorists.

Defendants have further admitted that they exercised agency and control in their

---

[9] Plaintiffs disagree that the ATA even allows for duress and necessity defenses but do not ask the Court to decide that question in this posture.  If the Court allows these defenses to stay in the case, Plaintiffs intend to raise this argument (among others) at summary judgment.  *See In re Chiquita Brands Int'l, Inc.* 284 F. Supp. 3d 1284, 1305-06 (S.D. Fla. 2018) (assuming without deciding that defenses exist while noting that ATA does "not specifically exempt conduct under duress (or otherwise exempt involuntary conduct)").

negotiations with ISIS.  As Defendants acknowledge, *they* structured their agreement with ISIS to "incentiviz[e] ISIS to act in a manner that would promote" Defendants' interests.  *Id.* ¶ 15. Indeed, Defendants discussed the importance of "shar[ing] the 'cake'" with ISIS to ensure ISIS had "a vested interest to have the plant run well."  *Id.* ¶ 73.

Far from facing any imminent, unavoidable threat, Defendants negotiated with ISIS for several months and made recurring payments during that time.  *Id.* ¶¶ 19, 26-47; *see In re Chiquita Brands*, 284 F. Supp. 3d at 1325 (rejecting defense where there was "no evidence of a specific ultimatum or threat . . . at any time" during years defendant paid terrorist group); *U.S. v. Gonzalez-Perez*, 778 F.3d 3, 13-15 (1st Cir. 2015) (duress defense unavailable where defendant "placed himself" in the situation and "chose to return fourteen additional times" to participate in "additional transactions").  Defendants' agreements did not reflect a true emergency such that they lacked other options.  Instead, Defendants' executives "methodically approved" the agreements and were "satisfied about them."  SOF ¶ 16.

Those admissions are binding on Defendants and foreclose their defenses.  *See SEC v. McCaskey*, 2001 WL 1029053, at *3 (S.D.N.Y. Sept. 6, 2001) (facts admitted in previous guilty plea had "binding estoppel effect against [defendant] in the instant civil action"); *U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2010 WL 11561145, at *3 (E.D. Va. Jan. 25, 2010) (statement of facts accompanying defendants' guilty plea in criminal case constituted "binding admissions" foreclosing defenses); *U.S. v. Harris*, 2008 WL 4324032, at *1 (N.D. Ill. Jan. 31, 2008) ("[t]he plea agreement is a judicial admission, and unless defendant is suggesting that she lied in her plea . . . the admission compels entry of judgment in the instant case").  In fact, Defendants have admitted *in this case* that the facts accompanying their guilty plea are true.  *See* Ex. 1, Defendants' Responses and Objections to Plaintiffs' First Set of Merits Requests for

10

Admission at 5-6. That admission too "conclusively establish[es]" the stipulated facts. Fed. R. Civ. P. 36(b). And given those admissions, the necessity and duress defenses must fail.

But even apart from the guilty plea, the Court should strike these defenses because Defendants fail to plead them with "factual allegations" sufficient "to make them plausible." *GEOMC*, 918 F.3d at 98-99. Defendants only generically plead that "certain alleged acts or omissions of Defendants resulted from war, violence, threats of violence, and/or a lack of free will" and that "armed groups in Syria's civil war used violence and threats of violence against Defendants' property, personnel, contractors, distributors, and customers." Answer at 160, ¶ 13. These assertions fall far short of alleging facts necessary to even make out the elements of these defenses. *See Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008) (striking defenses where defendant alleged "no facts" in support and did not "even refer to the elements of the various affirmative defenses"); *D.S. Am. (E.), Inc. v. Chromagrafx Imaging Sys., Inc.*, 873 F. Supp. 786, 797-98 (E.D.N.Y. 1995) (defense must provide "opposing party with adequate notice of the relevant elements of the defense.").

**B.** Allowing Defendants to pursue these deficient defenses would prejudice Plaintiffs. Because "[e]vidence of a mere 'generalized fear' does not satisfy" the requirements, discovery would be required to determine whether Defendants' conduct was precipitated by a "specific" threat and "prospects of harm that were immediate." *U.S. v. Villegas*, 899 F.2d 1324, 1344 (2d Cir. 1990). Although Plaintiffs have served discovery requests seeking information that could be relevant to the defenses, far more would be needed to litigate the purported threats with the specificity the defenses require. For instance, additional discovery would be required to link each unlawful payment and interaction with ISIS and ANF to specific threats against Defendants and their personnel. Beyond that, even though Defendants broadly had alternatives,

11

discovery would be needed to assess the degree and credibility of particular threats, and evaluate in the moment what alternatives or options for escape were available.

Such factual inquiries are unnecessary. Defendants cannot outrun their previous acknowledgments and their own admissions that their conspiracy was a calculated business decision – not unavoidable action undertaken with a gun to anyone's head. This prejudice warrants striking these defenses because "there is nothing to be achieved by undertaking discovery as to affirmative defenses that fail as a matter of law or fact." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2016 WL 6906583, at *9 (S.D.N.Y. Nov. 21, 2016).

## III. AFFIRMATIVE DEFENSE NO. 12: WITHDRAWAL (*FIELDS* AND *WILSON* PLAINTIFFS ONLY)

Defendants' twelfth affirmative defense is that they "withdrew from, abandoned, and/or terminated any such alleged conspiracy before the acts that allegedly caused Plaintiffs' injuries, and withdrew from, abandoned, and/or terminated any conspiracy at the latest by September 2014, when Defendants abandoned the Jalabiyeh Cement Plant and ceased operations in Syria." *Fields*, Dkt. 124 at 150, ¶ 12. The Court should strike this defense because, based on Defendants' limited factual assertions and the facts admitted in the SOF, there is no question of fact that could allow it to succeed.

The Second Circuit has set out the following standard for a defendant to establish the affirmative defense of withdrawal from a conspiracy:

> As an initial matter, it is well-settled that withdrawal from a conspiracy is an affirmative defense for which the defendant bears the burden of proof at trial. **Mere cessation of the conspiratorial activity by the defendant is not sufficient to prove withdrawal.** The defendant must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators. Unless a conspirator produces affirmative evidence of withdrawal, his

12

> participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators.

*U.S. v. Leslie*, 658 F.3d 140, 143 (2d Cir. 2011) (emphasis added) (citations omitted); *U.S. v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014) (conspirator must "'present evidence of some affirmative action' that he took to 'disavow or defeat the purpose' of the conspiracy.") (quotation omitted); *U.S. v. Berger*, 224 F.3d 107, 118 (2d Cir. 2000) ("[R]esignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law."); *U.S. v. Stroh*, 2000 WL 1833397, at *2 (D. Conn. Nov. 3, 2000) ("Withdrawal from a conspiracy requires more than just 'dropping out.'"); *Corzo v. Brown Univ.*, 2026 WL 91424, at *23 (N.D. Ill. Jan. 12, 2026) ("[W]ithdrawal must do more than clearly indicate the end of the withdrawer's participation. . . . [A] conspirator may not effectuate a legally effective withdrawal by merely announcing that it is ceasing to participate") (citations and quotation marks omitted).[10]

Here, Defendants base their defense on their September 2014 abandonment of the Plant. But, at most, that conduct was a "mere cessation of the conspiratorial activity" or a "resignation from a criminal enterprise," which is insufficient as a matter of law. *Leslie*, 658 F.3d at 143; *Berger*, 224 F.3d at 118. Defendants do not assert any affirmative acts that they undertook to disavow their association with the conspiracy or to defeat its purpose. They do not allege, for instance, that they communicated their supposed withdrawal from the conspiracy to ISIS or ANF.[11] They simply walked away, which is insufficient. *See U.S. v. Patel*, 879 F.2d 292, 294

---

[10] To the extent that Defendants claim that they abandoned or terminated their involvement in a conspiracy with ISIS and/or ANF, they did so unilaterally. Accordingly, all three terms are merely different names for withdrawal. *U.S. v. Gigante*, 982 F. Supp. 140, 170 (E.D.N.Y. 1997) ("Unilateral termination is often referred to as 'withdrawal'").

[11] In *GEOMC*, the Second Circuit confirmed that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense . . . ." *Id.* at 98. Accordingly, defendants pleading affirmative defenses "need[] to

(7th Cir. 1989) ("You do not absolve yourself of guilt of bombing by walking away from the ticking bomb.") (Posner, J.).  Defendants also fail to claim that they made "a clean breast to the authorities." *Leslie*, 658 F.3d at 143.  Nor could they; Defendants' guilty plea states that their criminal conduct "was not voluntarily self-reported to [DOJ], and that the Office and NSD have determined that they did not receive timely and full cooperation with their Investigation."  Plea Agreement at 4-5.

Defendants' failure to cooperate with authorities was not their only effort to conceal their involvement in the conspiracy.  As admitted, even after abandoning the Plant, Defendants falsified records to conceal their dealings with terrorists.  SOF ¶¶ 96-103.  For instance, in October 2014 – one month *after* abandoning the Plant – Defendants entered into an agreement to compensate their agent for work he had performed negotiating an agreement with ISIS, and to reimburse him for making fixed monthly "donation" payments to terrorist groups, including ISIS.  *Id.* at ¶¶ 100-101.  This agreement, which Defendants backdated, included a $210,000 invoice that Defendants paid after their supposed withdrawal.  *Id.* ¶¶ 102-103.  The agreement required Defendants' agent to "maintain the confidentiality of information he learned about LCS Holding Company and 'its affiliates,' such as LAFARGE and LCS, 'including the existence of this agreement.'"  *Id.* at ¶ 100.  This conduct belies Defendants' claim that they withdrew from the conspiracy in September 2014 because "there is no question that an act of concealment can constitute an overt act in furtherance of the conspiracy." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 WL 1331830, at *15 (S.D.N.Y. Mar. 25, 2019); *U.S. v. Bullis*, 77 F.3d 1553, 1563 (7th Cir. 1996) (acts of concealment taken after a purported withdrawal are

---

support th[o]se defenses with some factual allegations to make them plausible." *Id.* at 99.  Here, Defendants fail to plead any facts that plausibly support an affirmative defense of withdrawal.

14

necessarily in furtherance of the conspiracy and extend it); *Berger*, 224 F.3d at 119 (even when a defendant completely severs ties to a criminal enterprise, acts of concealment thereafter establish a continuing link to the conspiracy); *U.S. v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005) (efforts to conceal a conspiracy to safeguard monetary gain "are to be considered acts in furtherance of the conspiracy"). Here, Defendants' attempts to conceal their conspiracy and protect their ill-gotten gains negate any supposed earlier withdrawal.

Failing to strike Defendants' withdrawal defense will prejudice Plaintiffs by requiring significant additional discovery at this late stage. While some discovery already underway addresses this defense, far more will be needed. For instance, Plaintiffs will be required to spend countless hours poring over documents related to Defendants' abandonment of the Plant, their concealment of conspiratorial activities thereafter, and their failure to cooperate with law enforcement. Likewise, Plaintiffs will be forced to use up some of their limited number of depositions to address withdrawal, and to spend significant deposition time addressing that defense, instead of focusing on other witnesses and factual issues that are actually in dispute. Plaintiffs should not be required to shift their discovery focus in order to address a futile and improperly pled defense. *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) (striking defense where "[p]laintiffs would needlessly incur increased discovery costs in having to explore the factual grounds for this defense" and the defense would "expand the scope of discovery by raising [other] issues . . . outside the scope of the current litigation").

## CONCLUSION

For all of the foregoing reasons, the Court should strike Defendants' seventh, twelfth, and thirteenth affirmative defenses with prejudice.

15

Dated: April 8, 2026

*/s/ Joshua D. Arisohn*
Joshua D. Arisohn
Arisohn LLC
94 Blakeslee Rd.
Litchfield, CT 06759
Tel: (917) 656-0569
josh@arisohnllc.com

Matthew A. Girardi
Bursor & Fisher, P.A.
50 Main St., Ste 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
mgirardi@bursor.com

T.Michael Guiffre
John L. Murino (pro hac vice pending)
Aryeh S. Portnoy (pro hac vice pending)
Michael J. Williams (pro hac vice pending)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: mguiffre@crowell.com
jmurino@crowell.com
aportnoy@crowell.com
mwilliams@crowell.com

*Counsel for Fields Plaintiffs*


*/s/ Lee Wolosky*
Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Respectfully submitted,

*/s/ Joshua D. Branson*
Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
Lillian V. Smith (*pro hac vice*)
Christopher C. Goodnow (*pro hac vice*)
James A. Ruck (*pro hac vice*)
Eric J. Maier (*pro hac vice*)
Chase H. Robinett (*pro hac vice*)
Kaleb J. LeGore (*pro hac vice*)
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com
lsmith@kellogghansen.com
cgoodnow@kellogghansen.com
jruck@kellogghansen.com
emaier@kellogghansen.com
crobinett@kellogghansen.com
klegore@kellogghansen.com

Adam J. Goldstein
Ryan Sparacino (*pro hac vice*)
Stacey Wilson (*pro hac vice*)
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com

Matthew Jason Fisher (*pro hac vice*)
SPARACINO PLLC
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
312-216-5111
matt.fisher@sparacinopllc.com

*Counsel for Foley Plaintiffs*

16

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450
Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

Brent Caslin
JENNER & BLOCK LLP
515 S Flower Street, Suite 3300
Los Angeles, CA 90071
213-239-5100
bcaslin@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com
sariail@jenner.com

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

*Counsel for Finan Plaintiffs*

17

*/s/ Joshua D. Branson*
Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

Adam J. Goldstein
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com

Matthew Jason Fisher (*pro hac vice*)
SPARACINO PLLC
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
312-216-5111
matt.fisher@sparacinopllc.com

*Counsel for Black Plaintiffs*

*/s/ Lee Wolosky*
Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450
Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

Brent Caslin (*pro hac vice*)
JENNER & BLOCK LLP
515 S Flower Street
Suite 3300
Los Angeles, CA 90071
213-239-5100
bcaslin@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com

18

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

Craig W. Carlson (*pro hac vice*)
Langdon D. Southworth (*pro hac vice*)
THE CARLSON LAW FIRM
100 East Central Texas Expressway
Killeen, TX 76541
254-526-5688
ccarlson@carlsonattorneys.com
lsouthworth@carlsonattorneys.com

*Counsel for Shirley Plaintiffs*

| | |
|---|---|
| */s/ Lee Wolosky* | */s/ Kevin L. Attridge* |
| Lee Wolosky | Kevin L. Attridge (*pro hac vice*) |
| Andrew J. Lichtman | Melissa Fox |
| Kathryn Bolas | Jonathan E. Missner (*pro hac vice*) |
| WILLKIE FARR & GALLAGHER LLP | Robert B. Gilmore (*pro hac vice*) |
| 787 Seventh Avenue | STEIN MITCHELL BEATO |
| New York, NY 10019 | & MISSNER LLP |
| Tel: (212) 728-8000 | 2000 K Street, NW, Suite 600 |
| Fax: (212) 728-8111 | Washington, D.C. 20006 |
| lwolosky@willkie.com | Tel: (202) 737-7777 |
| alichtman@willkie.com | Fax: (202) 296-8312 |
| kbolas@willkie.com | kattridge@steinmitchell.com |
| | mfox@steinmitchell.com |
| | jmissner@steinmitchell.com |
| | rgilmore@steinmitchell.com |
| Todd C. Toral | Gavriel Mairone |
| JENNER & BLOCK LLP | MM~LAW LLC |
| 2029 Century Park East | 980 North Michigan Avenue, Suite 1400 |
| Ste 1450 | Chicago, IL 60611 |
| Los Angeles, CA 90067-2901 | Tel: (312) 253-7444 |
| 213-239-2294 | Fax: (312) 275-8590 |
| ttoral@jenner.com | Ctlaw@mm-Law.com |
| Jason P. Hipp | Andrew E. Goldsmith |
| Sarah Ann Purtill | Joshua D. Branson (*pro hac vice*) |
| JENNER & BLOCK LLP | KELLOGG, HANSEN, TODD, |
| 1155 Avenue of the Americas | FIGEL & FREDERICK PLLC |

19

New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com
Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

Amal Clooney (*pro hac vice*)
Alisha Mathew (*pro hac vice*)
OFFICE OF AMAL CLOONEY
54 Doughty Street
London
United Kingdom of Great Britain and
Northern Ireland
(44) 204 526 1185
YazidiUS@amalclooney.co.uk
am@officeofac.co.uk

*Attorneys for Murad Plaintiffs*

1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

*Attorneys for Goldman Plaintiffs*


/s/ *Joshua D. Branson*
Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

Adam J. Goldstein
Ryan R. Sparacino (*pro hac vice forthcoming*)
Matthew J. Fisher (*pro hac vice forthcoming*)
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
matt.fisher@sparacinopllc.com

*Attorneys for Stallter Plaintiffs*


/s/ *Tracy Reichman Kalik*
Noel J. Nudelman
Richard D. Heideman (pro hac vice)
Tracy Reichman Kalik (pro hac vice)
Joseph H. Tipograph
HEIDEMAN NUDELMAN
& KALIK, P.C.
5335 Wisconsin Avenue, NW
Washington, DC 20015
(202) 463-1818

*Counsel for Wilson Plaintiffs*

20