**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANE FOLEY, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>LAFARGE S.A., *et al.*,<br>          Defendants. | Case No. 23-cv-05691-NGG-PK |
| CHARISS FINAN, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>LAFARGE S.A., *et al.*,<br>          Defendants. | Case No. 22-cv-07831-NGG-PK |
| TAMARA FIELDS, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>LAFARGE S.A., *et al.*,<br>          Defendants. | Case No. 23-cv-00169-NGG-PK |
| NADIA MURAD, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>LAFARGE S.A., *et al.*,<br>          Defendants. | Case No. 23-cv-09186-NGG-PK |
| ESTATE OF AVRAHAM GOLDMAN, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>LAFARGE S.A., *et al.*,<br>          Defendants. | Case No. 24-cv-01043-NGG-PK |

| | |
|---|---|
| JASON BLACK, *et al.*,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>LAFARGE S.A., *et al.*,<br>　　　　　Defendants. | Case No. 24-cv-08901-NGG-PK |
| HELEN JANE WILSON, *et al.*,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>LAFARGE S.A., *et al.*,<br>　　　　　Defendants. | Case No. 25-cv-01975-NGG-PK |
| SUSAN SHIRLEY, *et al.*,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>LAFARGE S.A., *et al.*,<br>　　　　　Defendants. | Case No. 25-cv-04248-NGG-PK |
| CHRISTINE STALLTER, *et al.*,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>LAFARGE S.A., *et al.*,<br>　　　　　Defendants. | Case No. 25-cv-06749- NGG-PK |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**

Date of Service: April 29, 2026

**TABLE OF CONTENTS**

LEGAL STANDARD.................................................................................................................. 2

ARGUMENT ............................................................................................................................... 3

I.      Plaintiffs Fail To Meet Their Burden To Strike Necessity And Duress ............................. 3

II.     Plaintiffs Fail To Meet Their Burden To Strike The Withdrawal Defense ........................ 7

III.    Plaintiffs Fail To Meet Their Burden To Strike The Act-Of-War Defense........................ 9

      A.    "Declared War".................................................................................................. 10

      B.    "Armed Conflict … Between Two Or More Nations"........................................... 11

      C.    "Armed Conflict Between Military Forces Of Any Origin" .................................. 13

IV.    Plaintiffs Face No Undue Prejudice, Which In Any Event Is Irrelevant .......................... 15

CONCLUSION.......................................................................................................................... 15

i

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Alfonso v. FedEx Ground Package System, Inc.*,
    2022 WL 4545888 (D. Conn. Sept. 29, 2022)................................................................6

*American Surety Co. v. Baldwin*,
    287 U.S. 156 (1932).................................................................................................2

*Biton v. Palestinian Interim Self-Government Authority*,
    412 F. Supp. 2d 1 (D.D.C. 2005).......................................................................12

*BMW of North America, Inc. v. Gore*,
    517 U.S. 559 (1996).............................................................................................10

*Carnegie Institute of Washington v. Pure Grown Diamonds, Inc.*,
    2020 WL 5209822 (S.D.N.Y. Aug. 31, 2020)....................................................3

*Cengage Learning, Inc. v. Google LLC*,
    2025 WL 3022375 (S.D.N.Y. Oct. 29, 2025).....................................................2

*Cheung v. United States*,
    213 F.3d 82 (2d Cir. 2000)................................................................................12

*CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*,
    158 F.4th 368 (2d Cir. 2025) ..............................................................................3

*County Vanlines Inc. v. Experian Information Solutions, Inc.*,
    205 F.R.D. 148 (S.D.N.Y. 2002) .......................................................................3

*Demirayak v. City of New York*,
    2021 WL 1209560 (E.D.N.Y. Mar. 31, 2021)....................................................2

*Fields et al. v. Syrian Arab Republic*,
    2021 WL 9244135 (D.D.C. Sept. 29, 2021) .....................................................13

*GEOMC Co. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019)...............................................................2, 9, 11, 15

*Grunewald v. United States*,
    353 U.S. 391 (1957)...............................................................................................9

*In re Colonial Limited Partnership Litigation*,
    854 F. Supp. 64 (D. Conn. 1994).......................................................................14

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024) ...............................................................................3

*Johnson v. Nyack Hospital*,
    954 F. Supp. 717 (S.D.N.Y. 1997) ................................................................8

*Jones v. Equifax Information Services LLC*,
    2025 WL 918466 (S.D.N.Y. Mar. 26, 2025) .....................................2, 3, 9, 10, 12, 14, 15

*Kelly v. 21 Group Inc.*,
    2023 WL 5831131 (E.D.N.Y. Sept. 8, 2023) ........................................................2, 3, 6, 8

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ................................................................7

*New London Associates, LLC v. Kinetic Social LLC*,
    2019 WL 2918163 (S.D.N.Y. July 8, 2019) ................................................................2

*New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*,
    954 F.2d 847 (2d Cir. 1992).................................................................12

*Poyneer v. New York State United Teachers*,
    2023 WL 236499 (N.D.N.Y. Jan. 18, 2023).................................................................3

*Rich v. Miller*,
    634 F. Supp. 3d 66 (S.D.N.Y. 2022).................................................................2, 3

*Saks v. Franklin Convey Co.*,
    316 F.3d 337 (2d Cir. 2003).................................................................3

*Schansman v. Sberbank of Russia PJSC*,
    565 F. Supp. 3d 405 (S.D.N.Y. 2021).................................................................12, 14, 15

*Stutts v. De Dietrich Group*,
    2006 WL 1867060 (E.D.N.Y. June 30, 2006) .................................................................10

*United States v. Bailey*,
    444 U.S. 394 (1980).................................................................3

*United States v. Contento-Pachon*,
    723 F.2d 691 (9th Cir. 1984) .................................................................5

*United States v. Dallas*,
    229 F.3d 105 (2d Cir. 2000).................................................................7

*United States v. Kang*,
    715 F. Supp. 2d 657 (D.S.C. 2010).................................................................9

*United States v. Lafarge S.A.*,
    No. 22-cr-444 (WFK) (E.D.N.Y.), Dkt. 10.................................................................1

iii

*United States v. Nerlinger*,
   862 F.2d 967 (2d Cir. 1988) ..................................................................................8

*United States v. Otis*,
   127 F.3d 829 (9th Cir. 1997) ..............................................................................4, 7

*United States v. Paul*,
   110 F.3d 869 (2d Cir. 1997) ...............................................................................3, 4

*United States v. Spitler*,
   800 F.2d 1267 (4th Cir. 1986) ..............................................................................15

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ............................................................................................7, 8

*United States v. White*,
   552 F.3d 240 (2d Cir. 2009) ...............................................................................3, 4

*Utica Mutual Insurance Co. v. Munich Reinsurance America, Inc.*,
   7 F.4th 50 (2d Cir. 2021) .......................................................................................3

*Wild Bunch, SA v. Vendian Entertainment*, LLC,
   256 F. Supp. 3d 497 (S.D.N.Y. 2017) ....................................................................5

## STATUTES, RULES, AND REGULATIONS

Designation of ISIS in the Greater Sahara (ISIS-GS),
   83 Fed. Reg. 23987 (May 23, 2018) .....................................................................14

Fed. R. Civ. P. 12(f) ....................................................................................................2

Revocation of the Foreign Terrorist Organization Designation of al-Nusrah Front,
   Also Known as Hay'at Tahrir al-Sham, 90 Fed. Reg. 30187 (July 8, 2025) ..............13, 14

8 U.S.C. § 1189 .........................................................................................................14

18 U.S.C. § 2331 .............................................................................9, 11, 12, 13, 14

18 U.S.C. § 2336 ..........................................................................................................9

## OTHER AUTHORITIES

162 Cong. Rec. S6579 (Nov. 30, 2016) ....................................................................11

Christopher M. Blanchard, Cong. Rsch. Serv., IF11080, Syria Conflict Overview:
   2011-2021 (2023), congress.gov/crs-product/IF11080..............................................11, 12

Department of Defense Press Briefing (Dec. 7, 2017),
   https://perma.cc/3XU6-NU2H ................................................................................11

iv

*Nation*, Oxford English Dictionary (March 2026)..........................................................................12

*Syria's Assad denounces 'puppet' opponents in TV Address*, BBC (Jan. 6, 2013),
    https://perma.cc/4CBD-RRSD......................................................................................11

The White House, Statement by the President on Airstrikes in Syria (Sept. 23,
    2014), https://perma.cc/6ZCX-TX6F......................................................................11

The White House, Report on the Legal and Policy Frameworks Guiding the
    United States' Use of Military Force and Related National Security
    Operations (Dec. 2016), https://perma.cc/T3LY-FH8M ....................................................10

Plaintiffs' Motion to Strike misconstrues the law and facts and seeks improperly to prevent Defendants (collectively, "Lafarge") from asserting fundamental, potentially dispositive defenses against nine actions brought by more than 1,000 plaintiffs.  It should be denied in its entirety.

The Court need look no further than the first sentence of Plaintiffs' brief to see the type of key mischaracterization on which their Motion rests.  It is untrue that Lafarge "pleaded guilty to conspiring with ISIS and the al-Nusra Front."  Mot. 1.  Lafarge S.A. and LCS pled guilty to "one count of conspiracy to provide material support to one or more foreign terrorist organizations," *United States v. Lafarge S.A.*, No. 22-cr-444 (WFK) (E.D.N.Y.), Dkt. 10, Plea Agreement, ¶ 2; they did not plead guilty to conspiring *with* FTOs themselves.  This distinction is critical because the ATA requires Plaintiffs to prove the latter.  Turning to Plaintiffs' arguments, each fails.

*First*, the Statement of Facts ("SOF") appended to the criminal Plea does not provide any basis to strike Lafarge's necessity and duress defenses.  To the contrary, it squarely supports those defenses, as it details the extreme violence, coercion, and fear that gave rise to Lafarge's duress and necessitated its conduct.  Plaintiffs' contention that the SOF forecloses Lafarge's defenses is both wrong and dependent on disputed inferences and factual assumptions that cannot be resolved on a motion to strike.  Plaintiffs also ask the Court to decide whether conduct was "reasonable," "negligent," or "reckless," none of which is fit for resolution on an incomplete record.

*Second*, Plaintiffs in only two cases, *Fields* and *Wilson*, argue that no question of fact exists that would allow Lafarge to prevail on a withdrawal defense.  This is incorrect.  Lafarge withdrew no later than September 2014, when it fled ISIS's advance, abandoned the plant, and departed Syria.  This was an affirmative act of withdrawal that was known to alleged co-conspirators.

*Third*, Plaintiffs' argument for striking Lafarge's act-of-war defense fails as a matter of law and because it rests on a misreading of the law and the pleadings.  The ATA and case law

1

together make clear that a "declared war" can exist without a formal congressional declaration. Plaintiffs' Motion also rests on arguments unsuitable for a motion to strike, including whether the defense may apply where an entity was designated as an FTO *after* the attack at issue, and under what circumstances an entity should be considered a successor to a different designated FTO. Plaintiffs' arguments fail on the merits and improperly seek merits rulings at the pleading stage.

"Due process requires that there be an opportunity to present every available defense." *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932). Plaintiffs have amended their complaints on multiple occasions, yet they seek to prevent Lafarge from advancing key defenses that are already subject to extensive discovery and are critical to the fair adjudication of these cases. Lafarge's affirmative defenses are sufficiently pleaded and cannot be stricken without prejudicing the defense, offending basic fairness, and violating due process.

## LEGAL STANDARD

Motions to strike affirmative defenses under Rule 12(f) are "disfavored, and the standard for a plaintiff to prevail is demanding." *Cengage Learning, Inc. v. Google LLC*, 2025 WL 3022375, at *2 (S.D.N.Y. Oct. 29, 2025). A plaintiff bears the burden to show that "'(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.'" *Demirayak v. City of New York*, 2021 WL 1209560, at *2 (E.D.N.Y. Mar. 31, 2021) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019)). Whether an affirmative defense is factually plausible is a "context-specific" inquiry that considers the nature of the defense and the early stage at which it is pleaded; courts use a "relaxed application" of the standards where facts "may not be readily known to the defendant." *GEOMC*, 918 F.3d at 98; *New London Assocs., LLC v. Kinetic Soc. LLC*, 2019 WL 2918163, at *1 (S.D.N.Y. July 8, 2019). A motion to strike is not "'an opportunity for the determination of disputed, substantial questions

of law.'"  *Jones v. Equifax Info. Servs. LLC*, 2025 WL 918466, at *4 (S.D.N.Y. Mar. 26, 2025)

(quoting *Rich v. Miller*, 634 F. Supp. 3d 66, 72 (S.D.N.Y. 2022)); *Kelly v. 21 Grp. Inc.*, 2023 WL

5831131, at *4 (E.D.N.Y. Sept. 8, 2023).  Even "boilerplate" affirmative defenses should not be

struck if they give "fair notice of the nature of the defenses."  *Kelly*, 2023 WL 5831131, at *6.  In

assessing affirmative defenses, courts may rely on factual allegations in complaints, answers, and

materials incorporated by reference.  *See Rich*, 634 F. Supp. 3d at 72; *Carnegie Inst. of Washington

v. Pure Grown Diamonds, Inc.*, 2020 WL 5209822, at *4 (S.D.N.Y. Aug. 31, 2020).[1]  "A court

may also consider matters of which judicial notice may be taken."  *Cnty. Vanlines Inc. v. Experian

Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002).[2]

### ARGUMENT

**I.     PLAINTIFFS FAIL TO MEET THEIR BURDEN TO STRIKE NECESSITY AND DURESS**

Lafarge has a fundamental right to defend itself by showing that it was under extreme

duress—and acted out of necessity—when terrorists attacked and kidnapped its personnel, looted

its property, and threatened it with violence.  Duress and necessity are critically important

affirmative defenses that apply where coercive circumstances render unlawful conduct "the lesser

of two evils."  *See United States v. Bailey*, 444 U.S. 394, 409-10 (1980).  The defenses require

---

[1] Affirmative defenses apply "'even if all allegations in the complaint are true.'"  *Utica
 Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (quoting *Saks v.
Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)).  For the purposes of Plaintiffs' motion,
Lafarge assumes as true certain allegations in the Complaints, statements in the SOF (incorporated
by reference in the Complaints), and other materials incorporated by reference in the Complaints,
without admitting their truth or suggesting that Plaintiffs will be able to prove them.  *See Poyneer
v. New York State United Tchrs.*, 2023 WL 236499, at *2 (N.D.N.Y. Jan. 18, 2023) (denying
striking when defenses were "suggest[ed]" by "factual allegations of the Complaint").

[2] Judicial notice may be taken of government reports and documents from government websites
and the United Nations, *see Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023); *CITGO
Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368, 389 (2d Cir. 2025), and "media
reports insofar as they detail widely documented events that plaintiffs themselves reference or
generally acknowledge."  *Jeffery v. City of New York*, 113 F.4th 176, 179 (2d Cir. 2024).

precisely what existed here, which is a threat of harm, a nexus to the challenged conduct, a lack of "reasonable" opportunity to escape or "reasonable" legal alternatives, and that Lafarge did not negligently or recklessly place itself in the coercive situation. *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997); *United States v. White*, 552 F.3d 240, 247 (2d Cir. 2009).  Contrary to Plaintiffs' argument, Mot. 8-10, the SOF does not foreclose these arguments; rather, it makes clear that Lafarge was caught in the middle of Syria's civil war.  It is also wrong that the defenses are implausible and would prejudice Plaintiffs.  *Id.* at 11-12.

*First*, the SOF does not foreclose necessity and duress defenses.[3]  That "other multinational corporations withdrew" from Syria, Mot. 9, does not rule out that Lafarge was unable to do so due to threats to its employees or contractors, particularly if withdrawing from Syria "would [not] have protected" them, such as with Syrian employees who could not leave the country.  *See United States v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997) (requiring duress instruction where the possibility of future harm to family may have compelled participation in conspiracy).  Similarly, Lafarge negotiating to protect plant operations, Mot. 9-10, does not foreclose these defenses but instead underscores the coercive and extortive nature of the duress that affected Lafarge's wartime conduct.  It also does not negate the threats or establish reasonable legal alternatives.

Plaintiffs' Motion also fails because it seeks resolution of disputed facts that require discovery and further litigation on the merits.  Plaintiffs cannot avoid litigation over facts by asking the Court to draw inferences against Lafarge on key factual issues, such as whether Lafarge had "ample time to pursue legal alternatives," Mot. 9, and whether it faced sufficiently imminent threats or a "true emergency," *id.* at 10.  Those are subjects for document discovery, depositions,

---

[3] As Lafarge has elsewhere explained, Plaintiffs have failed to show that the SOF's mention of particular facts has preclusive effect. *See Fields* Dkt. 113 at 3.  Regardless, Lafarge addresses the argument here as if SOF facts are taken as true.

4

and further litigation. Moreover, whether alternatives or escapes were "reasonable," *see* Mot. 8-11, is a fact-intensive issue not resolvable at this stage. *See United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984) (reversing for jury determination of whether escape was "reasonable"); *Wild Bunch, SA v. Vendian Ent.*, LLC, 256 F. Supp. 3d 497, 507 (S.D.N.Y. 2017) (describing "reasonableness" as "fact-intensive" and improper for disposition at dismissal stage).[4]

Plaintiffs' argument is also misplaced because Plaintiffs have not yet identified the particular evidence that they will use to support their conspiracy claims and have even resisted identifying the *scope* of the conspiracy that they will ultimately ask the court or jury to find.[5] Plaintiffs acknowledge that additional discovery may inform whether a particular "payment and interaction with ISIS and ANF" was "link[ed]" to "specific threats against Defendants and their personnel[,]" Mot. 11-12, and Plaintiffs have indicated an intent to rely on such alleged payments as evidence of a conspiratorial agreement. Thus, Lafarge must be able to plead the defense, as additional discovery may inform issues like whether any particular act—such as a payment—as well as any overall alleged conspiracy, may be excused as a matter of duress or necessity.

***Second***, Lafarge has sufficiently pleaded necessity and duress. Contrary to Plaintiffs' contention, Mot. 11, Lafarge's Answers assert that acts serving as the basis for Plaintiffs'

---

[4] Plaintiffs suggest that Lafarge "negligently or recklessly place[d]" itself in the coercive situation, Mot. 9-10, but Lafarge did not "place" itself in any situation at all. Lafarge had operated the plant since 2010, before the civil war, and subsequently found itself caught in a conflict zone as Syria devolved into a "full-fledged civil war" that opened the door to FTOs "gain[ing] control of territory in Syria," including around the plant. *E.g.* SOF ¶¶ 2, 22, 23.

[5] For example, certain Plaintiffs filed a pre-motion letter indicating an intent to seek partial summary judgment as to an "agreement" and the "unlawful act" that was the object of the conspiracy, but did not define either element clearly enough to identify the agreement's scope. *See Fields* Dkt. 108, 113. The non-moving Plaintiffs noted this same failure to identify scope and asserted that "ongoing discovery will bear on both issues." *Foley* Dkt. 142 at 2 n.1. Plaintiffs have also resisted answering interrogatories about the scope of any conspiracy. Ex. A, *Fields* Plfs. Resp. & Obj. to Interrog. No. 12 (calling interrogatory on conspiracy "premature because discovery is ongoing" and saying it "calls for expert testimony").

5

conspiracy allegations "resulted from war, violence, threats of violence, and/or a lack of free will," and that "armed groups in Syria's civil war used violence and threats of violence against Defendants' property, personnel, contractors, distributors, and customers."[6]  The Answers thus provide "fair notice" of the nature of the defenses, including that Defendants were subjected to violence and threats by armed groups in a war.  *Kelly*, 2023 WL 5831131, at \*6; *see Alfonso v. FedEx*, 2022 WL 4545888, at \*4 (D. Conn. Sept. 29, 2022) (affirmative defense characterizing "actions central" to the complaint did not require "further factual pleading").  Moreover, the Complaints and SOF underscore the elements:

**Threat or risk of harm.**  The Complaints and SOF are replete with threats or risks of harm. *See, e.g.*, SOF ¶ 15 (stating ISIS "would have used force and threats"), 25 ("Lafarge and LCS executives were aware of the risks of violence to their personnel and suppliers").[7]  The Complaints and SOF also recognize that LCS employees and contractors were attacked and harmed.  *E.g. Goldman* Compl. ¶ 86, Dkt. 1 ("LCS employees were being kidnapped and LCS trucks were being hijacked."); SOF ¶ 25 ("Some LCS employees were kidnapped for ransom, one LCS contractor was killed at a checkpoint, and armed militants began to regularly hijack LCS trucks.").  The Complaints and SOF likewise describe ISIS and other groups' brutality.  *E.g. Black* Compl. ¶ 37, Dkt. 1 (quoting U.N. that ISIS "made calculated use of public brutality").

**Nexus to alleged misconduct.**  Harm was unavoidable without yielding to the armed groups' extortion.  For example, *Foley* Plaintiffs allege that Lafarge negotiated to make payments

---

[6] *Black* Amend. Answer, p. 136, ¶ 13, Dkt. 53; *Fields* Answer, p. 150, ¶ 13, Dkt. 124; *Finan* Answer, p. 142, ¶ 13, Dkt. 148; *Foley* Amend. Answer, p. 160, ¶ 13, Dkt. 155; *Goldman* Answer, p. 104, ¶ 13, Dkt. 55; *Murad* Amend. Answer, p. 539, ¶ 13, Dkt. 86; *Shirley* Amend. Answer, p. 148, ¶ 13, Dkt. 63; *Stallter* Answer, p. 137, ¶ 13, Dkt. 10; *Wilson* Answer, p. 154, ¶ 13, Dkt. 53.

[7] *See also, e.g.*, *Foley* FAC ¶ 88 (noting "threat of terrorist violence"); *Finan* FAC ¶ 102 (alleging that Lafarge employees referenced "threats").

to armed groups "for the specific purpose of protecting LAFARGE's and LCS's employees." *Foley* FAC ¶ 57, Dkt. 68; *see also* SOF ¶ 15 (payments were "to protect LCS employees").[8]

***Reasonable escape or legal alternatives.*** As described, Lafarge's employees and contractors were kidnapped, threatened, and killed, and courts have recognized that such dangers limit alternatives and escapes. *See Otis*, 127 F.3d at 835 (risk that armed group would kidnap defendant's father again supported duress defense; escape would not "have protected his father"); SOF ¶ 17 ("[E]xecutives believed that … sharing proceeds … was the best way to protect employees[.]"). Indeed, while Lafarge was able to evacuate LCS's expatriate employees in 2012, LCS's many Syrian employees remained and relied on Lafarge for protection. *See* SOF ¶ 25. Regardless, the "reasonableness" of a possible escape or alternative cannot be resolved on a motion to strike because it turns on facts and discovery and may require resolution by a jury. *Supra* p. 5.

***Reckless placement.*** As explained, Lafarge did not "place" itself in the Syrian Civil War. The war came to Lafarge in northern Syria, where it tried to continue operating rather than surrendering its people and property to terrorists. *Supra* p. 5 n.4.

## II.   PLAINTIFFS FAIL TO MEET THEIR BURDEN TO STRIKE THE WITHDRAWAL DEFENSE

Withdrawal is an affirmative defense to liability for acts committed by co-conspirators after the defendant withdraws from a conspiracy. *See, e.g.*, *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 837 (11th Cir. 1999) ("A conspirator who withdraws from the conspiracy is no longer a member of the conspiracy and the subsequent acts of the conspirators usually do not bind him."); *United States v. Dallas*, 229 F.3d 105, 110 (2d Cir. 2000). "Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach

---

[8] *See also, e.g.*, *Black* Compl. ¶¶ 57, 88, Dkt. 1 ("[ISIS's] penchant for violence was the reason Lafarge wanted to pay them off."); *Wilson* Compl. ¶¶ 82-83, Dkt. 1 ("Lafarge and LCS executives believed that keeping the [plant] in business and sharing the proceeds with the armed groups …, including ISIS and ANF, was the best way to protect employees[.]").

7

Case 1:25-cv-04248-NGG-PK   Document 76   Filed 04/29/26   Page 15 of 24 PageID #: 2063

co-conspirators have generally been regarded as sufficient to establish withdrawal." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978). "Formal notices" to conspirators are unnecessary; "disabl[ing] [the defendant] from further participation and ma[king] that disability known" to a conspirator accomplishes withdrawal. *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988). Here, only the *Fields* and *Wilson* Plaintiffs argue that no factual question could allow the withdrawal defense to succeed, based on "factual assertions and the facts admitted in the SOF." Mot. 12. They are wrong.[9]

*First*, Plaintiffs are mistaken that the September 2014 evacuation of the plant was "mere cessation." It was an affirmative act that "disable[d]" participation in any alleged conspiracy and made that disability known to alleged co-conspirators. *See Nerlinger*, 862 F.2d at 974.[10] This allegation alone is sufficient to provide "fair notice of the nature of the defense[]." *Kelly*, 2023 WL 5831131, at *6. The SOF confirms that LCS withdrew, stating that LCS "evacuated" the plant "just ahead of advancing ISIS militants" who "seized the plant the next day," SOF ¶ 95, and stole Lafarge's cement for its own benefit, *id.* ¶ 19. *See also Fields* TAC ¶ 191, Dkt. 119; *Wilson* Compl. ¶ 154, Dkt. 1. ISIS caused LCS's evacuation and was aware of it, at least from the moment ISIS forces seized the plant. *Fields* Plaintiffs themselves allege the breakdown in any alleged relationship between Lafarge and ISIS, stating in relation to "ISIS seiz[ing] the cement plant" that "[a]s it turn[ed] out, terrorists are not trustworthy business partners." *Fields* TAC ¶ 190.

_____

[9] In a footnote, Plaintiffs assert that any abandonment or termination of the conspiracy was "unilateral" and that "abandoned" and terminated" are synonymous with "withdr[ew]." Mot. 13 n.10. That is also wrong. A conspiracy can terminate by abandonment or consummation, separate from withdrawal. *See Johnson v. Nyack Hosp.*, 954 F. Supp. 717, 721 (S.D.N.Y. 1997).

[10] Plaintiffs' conspiracy allegations relate to Lafarge's operation of the cement plant, Mot. 2-3, so Lafarge abandoning the plant necessarily disabled participation in any alleged conspiracy.

Presumably, this explains why Plaintiffs do not argue that there was post-seizure revenue sharing with ISIS or further LCS payments intended for ISIS.

*Second*, contrary to Plaintiffs' argument, Mot. 14-15, there were no post-evacuation acts by Lafarge in furtherance of any conspiracy with ISIS. Not reporting something to authorities is not an overt "act" at all, much less one in furtherance of a conspiracy. *See United States v. Kang*, 715 F. Supp. 2d 657, 666-67, 675-78 (D.S.C. 2010) (doubting that a "failure … to confess" could be an overt act and rejecting that it furthered a conspiracy). Even purported overt acts related to concealment generally are not "in furtherance" of conspiracy. *See Grunewald v. U.S.*, 353 U.S. 391, 403-04 (1957). At minimum, questions of law and fact abound as to the relationship between any post-evacuation acts by Lafarge and any alleged conspiracy with ISIS and thus are inappropriate for resolution on a motion to strike.

## III.    PLAINTIFFS FAIL TO MEET THEIR BURDEN TO STRIKE THE ACT-OF-WAR DEFENSE

The ATA provides that "[n]o action shall be maintained [] for injury or loss by reason of an act of war." 18 U.S.C. § 2336(a). The statute defines "act of war" as "any act occurring in the course of" any one of three types of conflicts: "declared war," "armed conflict, whether or not war has been declared, between two or more nations," or "armed conflict between military forces of any origin." 18 USC § 2331(4). Alleged attacks meet these definitions, so the Court should deny Plaintiffs' motion to strike Lafarge's act-of-war affirmative defense. At minimum, Plaintiffs have failed to meet their burden to show that "there is no question of fact [or law] which might allow the defense to succeed," *GEOMC*, 918 F.3d at 96, and the nature of the defense and early stage of these proceedings make striking improper, as many relevant facts cannot be "readily known" and substantial legal questions are disputed. *Id.* at 98; *Jones*, 2025 WL 918466, at *4.[11]

---

[11] In *Foley* and *Finan*, a stipulation was entered that limited the defense to certain constitutional grounds. *Foley*, Dkt. 123; *Finan*, Dkt. 119. Lafarge asserts the defense on only constitutional

### A.      "Declared War"

There is no merit to Plaintiffs' argument that the alleged attacks did not occur during a "declared war" because "Congress has the sole authority to declare war" under Article I of the Constitution and it did not do so here.  Mot. 4.

*First*, nothing in the ATA's text limits "declared war" to instances where Congress has exercised its formal Article I war power, and Plaintiffs do not cite any authority for that argument, which conflicts with the plain language of the ATA and in-circuit authority interpreting it.  *See, e.g.*, *Stutts v. De Dietrich Grp.*, 2006 WL 1867060, at *4 (E.D.N.Y. June 30, 2006) (applying the act-of-war defense to actions during the Gulf War, which lacked a formal declaration by Congress).[12]  Plaintiffs' interpretation is also untenable since, as Plaintiffs note, Mot. 4, Congress has not formally declared war since 1942—50 years prior to enactment of the ATA—such that Congress must have intended for "declared war" under the ATA to cover other types of declarations.  The ATA also does not limit "declared war" to a declaration of war by the United States.  At minimum, this is a "disputed, substantial question[] of law" that cannot be resolved on a motion to strike.  *Jones*, 2025 WL 918466, at *4.

*Second*, Plaintiffs do not attempt to argue and cannot show that no question of fact exists that could allow this defense to prevail.  Plaintiffs allege that ISIS's leader, Abu Bakr al-Baghdadi, declared a global war on the United States, announcing in 2012 that "our war with you [the United

---

grounds there: retroactive application of the 2018 amendment to the ATA that excludes FTOs from the definition of "military force" violates the Due Process Clause, because it deprives defendants of fair notice of the conduct that is subjected to liability and the severity of the penalty that may be imposed.  *See BMW of N. Am., v. Gore*, 517 U.S. 559, 574 (1996).

[12] Like the Gulf War, actions against ISIS were conducted "under the authority" of AUMFs.  *See* The White House, Report on the Legal and Policy Frameworks Guiding the United States' Use of Military Force (Dec. 2016), at 5-6, 15-16, https://perma.cc/T3LY-FH8M.

10

States] has now started." *E.g.*, *Black* Compl. ¶ 42, Dkt. 1.[13]  Plaintiffs themselves allege injuries from attacks undertaken as part of that global "war."[14]  The Syrian government likewise declared war.  *See*, *e.g.*, *Syria's Assad denounces 'puppet' opponents in TV address*, BBC (Jan. 6, 2013), https://perma.cc/4CBD-RRSD ("We are now in a state of war in every sense of the word.").

Moreover, whether this defense is available under the ATA rests on facts that are not "readily available" to Lafarge, precluding striking the defense now.  *GEOMC*, 918 F.3d at 98.  Third-party discovery from governments and expert discovery will bear on whether the attacks occurred during a declared war, including the legal bases for military operations in Syria and Iraq and evidence that the United States and other nations treated ISIS as an enemy in an ongoing war.[15]

### B.      "Armed Conflict … Between Two Or More Nations"

Plaintiffs contend that there was no "armed conflict … between two or more nations" recognized by the U.S. government.  Mot. 4-5.  But there were multiple recognized nations engaged in the Syrian Civil War.  And the ATA says nothing about requiring such recognition.  *See* 18 U.S.C. § 2331(4).  Regardless, legal and factual issues preclude striking the defense.

*First*, Plaintiffs ignore that multiple nations were engaged in the Syrian Civil War, which expert discovery will likely address in detail.  *See, e.g.*, Christopher M. Blanchard, Cong. Rsch. Serv., IF11080, Syria Conflict Overview: 2011-2021 (2023), at 1, congress.gov/crs-product/IF11080 (noting the involvement of the United States, Syria, Russia, Iran, Turkey, and

---

[13] *See also Fields* TAC ¶ 77 (noting that Baghdadi warned "our war with you has now started"); *Shirley* Am. Compl. ¶ 56 (same), Dkt. 38; *Finan* FAC ¶ 54, Dkt. 140; *Foley* FAC ¶ 42, Dkt. 68; *Murad* Am. Compl. ¶ 337, Dkt. 37; *Stallter* Compl. ¶ 42, Dkt. 1.

[14] *See, e.g.*, *Shirley* Am. Compl. ¶ 351; *Stallter* Compl. ¶ 267; *Foley* FAC ¶ 268.

[15] *See* Department of Defense Press Briefing (Dec. 7, 2017) (referring to "[t]he war against ISIS"), https://perma.cc/3XU6-NU2H; 162 Cong. Rec. S6579 (Nov. 30, 2016) (Sen. Kaine referring to "war against ISIS" and noting reliance on authorization for use of force); The White House, Statement by the President on Airstrikes in Syria (Sept. 23, 2014), https://perma.cc/6ZCX-TX6F.

European Countries).  The ATA requires only that the challenged "act" occurred "in the course" of such a conflict—not that it was committed by a "nation."  18 U.S.C. § 2331(4).

*Second*, Plaintiffs' argument that the Islamic State was not a "nation" raises the question whether an unrecognized group that controls territory and governs a population can be a "nation" for purposes of the ATA's act-of-war exception.  Contrary to Plaintiffs' argument, in other contexts, the Second Circuit has found that "[a]n entity's status as a nation … does not depend on whether it receives diplomatic recognition[.]"  *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 954 F.2d 847, 853 (2d Cir. 1992).  Plaintiffs cite case law interpreting the term "foreign state," Mot. 4-5 & n.5, but that authority does not define the term "nation" in the ATA.[16] Dictionaries define "nation" to extend beyond U.S.-recognized sovereigns.  *See Nation*, Oxford English Dictionary (March 2026).  And the Second Circuit has used dictionary meanings in recognizing that a similar term, "foreign country," is "ambiguous" and "does not refer solely to a foreign sovereign or independent nation."  *Cheung v. United States*, 213 F.3d 82, 91 (2d Cir. 2000). At minimum, whether any warring parties in Syria were "nations" presents a "disputed, substantial" legal question, *Jones*, 2025 WL 918466, at *4.

*Third*, even if this Court were to accept Plaintiffs' interpretation of "nation" and conclude that a "nation" must be responsible for the "act," despite insufficient support for either proposition, Plaintiffs *still* would not have shown that there is no question of fact on which the defense can prevail.  Plaintiffs would need to establish that no recognized nation was responsible, at least in

---

[16] Plaintiffs cite two cases that do interpret the ATA, Mot. 4-5, but both are distinguishable and do not control.  In the out-of-circuit case *Biton v. Palestinian Interim Self-Gov't Auth.*, the defendants did not actually litigate the defense.  412 F. Supp. 2d 1, 7 (D.D.C. 2005).  *Schansman v. Sberbank of Russia PJSC* decided a motion to dismiss, and thus Plaintiffs merely had the burden to plausibly allege that the act-of-war defense was not met.  565 F. Supp. 3d 405, 419 (S.D.N.Y. 2021). Regardless, neither *Biton* nor *Schansman* support Plaintiffs' contention that U.S. recognition controls.

part, for alleged acts that harmed Plaintiffs.  18 U.S.C. § 2331(4).  Not only is that a fact question, but certain of the Plaintiffs here elsewhere have argued that the Syrian Arab Republic—a recognized foreign state—aided ISIS in the same conduct and attacks at issue here.  *Fields v. Syrian Arab Republic*, 2021 WL 9244135, at *5 (D.D.C. Sept. 29, 2021) (stating that Syria "cooperated militarily with ISIS" and that "[w]ith Syria's continued support, ISIS made significant advances" including seizing Iraqi cities); *see Foley* FAC ¶ 174, Dkt. 68 (asserting that Syria supported ISIS).  Thus, questions of fact exist as to whether "nations" are responsible for alleged attacks.

### C.    "Armed Conflict Between Military Forces Of Any Origin"

Plaintiffs' arguments that the "armed conflict between military forces of any origin" definition cannot apply misread the statute and improperly seek resolution of disputed legal and factual issues at the pleading stage.

*First,* as with "armed conflict … between two nations," Plaintiffs mistakenly imply that a "military force" must have committed the relevant attack, whereas the statute requires only that the harm occurred from an act "in the course of" such a conflict.  18 U.S.C. § 2331(4).  Plaintiffs do not suggest that the Syrian Civil War was not a conflict between military forces.

*Second*, even assuming that an alleged attack had to be committed by a "military force," Plaintiffs are wrong that the term "military force" excludes a group that was designated a "foreign terrorist organization" *after* the attack at issue.  Mot. 5-6.  Plaintiffs cite no case law for their view, which in any case is untenable.  The natural reading of "has been designated" is that it refers to the same temporal period as the "act occurring in the course of … armed conflict."  18 U.S.C. § 2331(4), (6).  Any other construction would lead to the illogical result that conduct would move in and out of the act-of-war exception as a group's designation changed over time.  Plaintiffs' reading would mean that their argument does not apply to acts committed by the al-Nusra Front, which is no longer a designated foreign terrorist organization.  *See* Revocation of the Foreign

13

Terrorist Organization Designation of al-Nusrah Front, 90 Fed. Reg. 30187 (July 8, 2025). Moreover, the FTO designation statute is forward-looking and does not apply retroactively. It states: FTO "designation under this subsection shall take effect upon publication" of that designation. 8 U.S.C. § 1189(a)(2)(B)(i). Reading § 2331(6) as Plaintiffs advocate would require retroactive application of this forward-looking statute. *See, e.g.*, *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 89 (D. Conn. 1994) (construing statute not to "apply retroactively" where legislature "stated that '[t]his act shall take effect from its passage'"). At minimum, this is a substantial disputed question of law. *Jones*, 2025 WL 918466, at *4.

**Third**, even though ANF was not a designated FTO at the time of certain attacks, Plaintiffs argue that ANF should be considered a designated FTO from the moment of its creation because it allegedly emerged from an already-designated organization. Mot. 6. Plaintiffs cite no case law suggesting that such a theory could satisfy the definition of an FTO in the ATA, and their argument only underscores the need for expert discovery on the nature and histories of these armed groups.

**Fourth**, Plaintiffs ignore other attacks that the Complaints allege were carried out by entities not then-designated as FTOs. In addition to the two attacks that Plaintiffs noted, Mot. 6, certain Plaintiffs claim injuries from a 2017 attack that they allege was carried out by ISIS-GS. *Black* Compl. ¶ 302, Dkt. 1; *Stallter* Compl. ¶ 297, Dkt. 1. ISIS-GS was not designated as an FTO or SDGT until 2018.[17] Certainly, determining who carried out each attack and whether and when they were designated as FTOs is a factual inquiry that requires fact and expert discovery.

**Finally**, Plaintiffs claim that attacks by "terrorists" are ineligible for the act-of-war exception, "regardless of designation." Mot. 7. But Plaintiffs' only in-circuit case acknowledges "[t]here is a lack of authority" on the issue, *Schansman*, 565 F. Supp. 3d at 419, making it an

---

[17] *See* Designation of ISIS in the Greater Sahara (ISIS-GS), 83 Fed. Reg. 23987 (May 23, 2018).

14

unsettled question not resolvable on a motion to strike, *Jones*, 2025 WL 918466, at *4.  It also turns on factual questions as to the parties involved in the Syrian Civil War or that committed particular attacks.

## IV.    PLAINTIFFS FACE NO UNDUE PREJUDICE, WHICH IN ANY EVENT IS IRRELEVANT

Plaintiffs argue they would be prejudiced by having to litigate each defense, but "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation."  *GEOMC*, 918 F.3d at 98. Because Plaintiffs have not met their burden for striking any defense, any prejudice is irrelevant. Further, Plaintiffs are wrong that these affirmative defenses will significantly expand discovery or the issues.  Plaintiffs already have demanded such discovery and, in any case, the parties will litigate similar fact and expert issues for the case-in-chief.  For instance, extortion can demonstrate the lack of any conspiratorial agreement, *see United States v. Spitler*, 800 F.2d 1267, 1276 (4th Cir. 1986) (conspiracy laws should not encompass "[t]he businessman who yields to the extortion of a racketeer" (quoting Model Penal Code § 2.06, Comment (1985)), and so issues related to threats against Lafarge will be litigated beyond the necessity and duress defenses.  Similarly, a conspiracy can end without a withdrawal, *supra* p. 8 n.9, and issues about Lafarge's evacuation will be litigated as to the continuity or end of any alleged conspiracy.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike should be denied.

15

Date of Service: April 29, 2026                    Respectfully submitted,

ALYSON ZUREICK                                     /s/ David W. Bowker
WILMER CUTLER PICKERING                            DAVID W. BOWKER
   HALE AND DORR LLP                               JONATHAN E. PAIKIN
7 World Trade Center                               ALBINAS PRIZGINTAS (*pro hac vice*)
250 Greenwich Street                               MICHAELA WILKES KLEIN (*pro hac vice*)
New York, NY 10007                                 WILMER CUTLER PICKERING
(212) 230-8875 (t)                                    HALE AND DORR LLP
(212) 230-8888 (t)                                 2100 Pennsylvania Avenue, N.W.
alyson.zureick@wilmerhale.com                      Washington, D.C. 20037
                                                   (202) 663-6000 (t)
                                                   (202) 663-6363 (f)
                                                   david.bowker@wilmerhale.com
                                                   jonathan.paikin@wilmerhale.com
                                                   albinas.prizgintas@wilmerhale.com
                                                   michaela.wilkesklein@wilmerhale.com

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and foregoing document was served via email to counsel of record on April 29, 2026.

*/s/ David W. Bowker*

David W. Bowker