# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARISS FINAN, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., *et al.*,<br><br>        Defendants. | Case No. 22-cv-07831-NGG-PK |
| SUSAN SHIRLEY, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., et al.,<br><br>        Defendants. | Case No. 25-cv-04248-NGG-PK |
| NADIA MURAD, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., et al.,<br><br>        Defendants. | Case No. 23-cv-09186-NGG-PK |

**DECLARATION OF RYAN P. FAYHEE**

I, Ryan P. Fayhee, declare as follows:

1. I am a Partner with the law firm Akin Gump Strauss Hauer & Feld LLP.

2. From August 2015 through May 2018, I was a Partner at the law firm Baker McKenzie.

3.      In the spring of 2016, Baker McKenzie was engaged by the Board of Directors of LafargeHolcim (now "Holcim") to investigate and advise regarding publicly reported allegations of potential dealings between Lafarge Cement Syria ("LCS")—a subsidiary of LafargeHolcim and Lafarge, S.A. ("Lafarge")—and Foreign Terrorist Organizations in Syria.

4.      Pursuant to that engagement, with the oversight of the Finance and Audit Committee of LafargeHolcim's Board, Baker McKenzie conducted an extensive internal investigation into LCS's and Lafarge's activities in Syria between 2011 and 2014. I personally oversaw the investigation, referred to as "Project Alpha." The results of that investigation were delivered to the LafargeHolcim Board in April 2017.

5.      During the Project Alpha investigation, Bruno Lafont—Lafarge's CEO and Chairman of the Board of Directors during the period under investigation—was represented by attorneys at the law firm of Willkie Farr & Gallagher LLP ("Willkie"). At the time of the investigation, Lafont was Co-Chairman of LafargeHolcim's Board of Directors, which I understand paid the fees for his representation by Willkie.

6.      In the course of the Project Alpha investigation, I and other members of the Baker McKenzie team participated in privileged and confidential discussions with Lafont's counsel at Willkie, and attorneys from Willkie were present for a privileged and confidential interview of Lafont regarding LCS and Lafarge's activities in Syria and the allegations regarding payments made to ISIS and other armed groups.

7.      In connection with its representation of Lafont during the Project Alpha investigation, Willkie was given access to hundreds of thousands of Lafarge documents and communications, including custodial materials collected from Lafont's corporate files and

accounts. These materials included privileged and confidential information belonging to Lafarge.

8.    In February 2017, Lafont's counsel at Willkie was also provided privileged and confidential draft portions of what ultimately became the Project Alpha Report on Investigative Findings and Preliminary Remedial Measures ("Project Alpha Report"), which was drafted by me and other attorneys at Baker McKenzie.

9.    During the Project Alpha investigation, Willkie affirmatively advocated on Lafont's behalf, submitted a memorandum marked "privileged and confidential" and "subject to the attorney work product and attorney-client privileges," and sought to provide input to Baker McKenzie and LafargeHolcim's Board of Directors.

10.    All communications and information shared between Baker McKenzie and Willkie during the Project Alpha investigation were made pursuant to a common interest between Lafont and LafargeHolcim and were understood to be protected by the attorney-client privilege, attorney work product doctrine, and other applicable privileges.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 16, 2026

Ryan P. Fayhee