# EXHIBIT 3

| Willkie's Allegations for ATA Plaintiffs | Willkie's Representations for Lafont |
|---|---|
| *Lafont's Awareness of Payments to FTOs* ||
| *At the specific direction of the companies' highest management levels—including the CEOs of* both *Lafarge* [*i.e.*, Lafont] *and* LCS—Defendants entered into and sustained a multi-faceted and mutually beneficial conspiracy with ISIS and intermediaries.<br><br>*Shirley* Am. Compl. ¶ 14; *accord Murad* Am. Compl. ¶ 8; *Finan* 4th Am. Compl. ¶ 12. | [A]n objective and thorough analysis of the file and of the facts underlying the charges *excludes the possibility that Bruno Lafont was informed of the existence of these payments*, which were decided upon and organized within the framework of confidential management by his subordinates.<br><br>Ex. 4, *Motion for Dismissal* at 36. |
| *Defendants*, *through* Veillard, Herrault, Pescheux, Jolibois, Roux, *Lafont*, Tlass, and Taleb, among others, *acted in concert with, and for the purpose of furthering Defendants' ISIS's, and ANF's common objectives*.<br><br>*Shirley* Am. Compl. ¶ 43; *accord Murad* Am. Compl. ¶ 62; *Finan* 4th Am. Compl. ¶ 41. | *Bruno Lafont was not "aware* that this operation notably involved agreed-upon security payments for the benefit of these terrorist entities."<br><br>Ex. 4, *Motion for Dismissal* at 36. |
| Lafarge's executives were aware that they were in peril, at least legally…. *Lafont knew that Defendants' partnership with ISIS was illegal under U.S. law and would have consequences in the United States*.<br><br>*Shirley* Am. Compl. ¶ 162; *accord Murad* Am. Compl. ¶ 207; *Finan* 4th Am. Compl. ¶ 162. | *Lafont strongly and unequivocally disputes …* that he had … any knowledge of the alleged offenses that are under investigation in France; that he was informed … of the alleged offenses … and that he was acting as "*de facto director*" of LCS.<br><br>Ex. 10, *Official Notice – Indemnification Agreement* at 3. |
| *The Amount Paid to FTOs* ||
| [Lafarge paid Foreign Terrorist Organizations] at a minimum $5.92 million to as much as $15 million.<br><br>*Shirley* Am. Compl. ¶ 199; *accord. Murad* Am. Compl. ¶ 262; *Finan* 4th Am. Compl. ¶ 181. | The maximum amount of sums that could have been passed on to organizations listed as terrorist amounted to $563,054.<br><br>Ex. 5, *Observations Seeking a Dismissal and Response to the Final Submissions of the Prosecution* at 58. |
| *Lafarge's Alleged Motives* ||
| Instead of leaving Syria … LCS saw … an opportunity for further mutual enrichment … and continued paying ISIS and ANF because doing so increased profits.<br><br>*Shirley* Am. Compl. ¶ 104; *accord. Murad* Am. Compl. ¶ 151; *Finan* 4th. Am. Compl. ¶ 105. | [T]he thesis that the continued operation of the plant was compelled by economic considerations does not withstand analysis.<br><br>Ex. 4, *Motion for Dismissal* at 31. |