# EXHIBIT 10

Case 1:25-cv-04248-NGG-PK   Document 79-12   Filed 04/30/26   Page 1 of 12 PageID #: 2451

**TEMIME ET ASSOCIES**
Avocats à la
Cour 156, rue de
Rivoli 75001
Paris
Tél : 01 49 27 00 55
Fax : 01 42 60 62 44
Toque : C1537

**WILLKIE FARR & GALLAGHER**
Avocats à la Cour
21, boulevard Malesherbes
75008 Paris
Tél : 01 53 43 45 00
Fax : 01 53 43 46 99
Toque : J003

**N°07**



**Holcim Ltd**
Grafenauweg 10
6300 Zug
Switzerland

*Attn.: Chairman*

BY EXPRESS COURIER

Paris, March 7, 2022

**OFFICIAL NOTICE - INDEMNIFICATION AGREEMENT**

We write on behalf of Mr. Bruno Lafont ("**Mr. Lafont**").

We refer to the Indemnification Agreement entered into between Mr. Lafont and LafargeHolcim Ltd (now Holcim Ltd) ("**Holcim**") on November 3, 2016 (the "**Indemnification Agreement**").

We further refer to (**i**) Holcim's letter dated January 25, 2022, claiming that Holcim is not bound by the Indemnification Agreement (the "**January 25 Letter**") and (**ii**) Holcim's letter dated January 26, 2022, informing Mr. Lafont that Holcim and its affiliate Lafarge SA ("**LSA**") were to initiate civil liability proceedings in France against him (the "**January 26 Letter**"). The corresponding summons were eventually served to Mr. Lafont on February 21, 2022 (the "**Summons**").

For the reasons briefly summarized below, Holcim's actions are irremediably flawed and extremely damaging to Mr. Lafont's reputation. In particular, Holcim thereby acts in blatant disregard for Mr. Lafont's presumption of innocence.

Page 2
March 7, 2022

1.  Contrary to Holcim's frivolous accusations, the <u>ongoing</u> criminal investigation in France, to which both Holcim's affiliate LSA and Mr. Lafont are parties as persons placed under judicial investigation (*mise en examen*), did not lead to any "*findings*" or "*recent findings*" regarding Mr. Lafont's purported involvement in the alleged dealings of Lafarge Cement Syria ("<u>LCS</u>") with sanctioned organizations.

    In this regard:

    a.  In its January 25 and 26 Letters, Holcim fails to articulate any intelligible and precise legal or factual basis for its claims, other than a vague reference to "*the latest findings made in the course of the French criminal proceedings*" or the fact that "*[t]he French judicial investigation recently brought [your] attention*" to some unspecified elements; and

    b.  In their subsequent Summons, Holcim and its affiliate LSA similarly fail to articulate, let alone demonstrate, any actual wrongdoing against Mr. Lafont, as they only refer to some merely contextual elements (*e.g.*, existence of a regular dialogue between Mr. Lafont and other members of LSA, existence of rules and procedures internal to LSA) which, in any case and by construction, were <u>already</u> known – when your company entered into the Indemnification Agreement on November 3, 2016 – not only to LSA (since they relate to its own past activities), but also to Holcim (which completed its merger with LSA in July 2015).

    In fact, as Holcim very well knows, (**i**) the judicial investigation is still ongoing and, as such, has not reached any final determination, and in any event (**ii**) up and until a final criminal verdict (if any) is reached by a court of law, all parties – including Mr. Lafont – are deemed innocent of the facts that are investigated.

    By going as far as drawing material conclusions from an ongoing criminal investigation, on the basis of fragmented, unspecified and unsubstantiated elements, Holcim is therefore acting in blatant disregard for the rule of law and Mr. Lafont's most basic rights.

2.  In addition, the reality is that this ongoing investigation – to which Holcim's affiliate Lafarge SA is a party with full access to the investigation file for almost four years now (*mise en examen* in June 2018) – has not given rise to the disclosure of any new relevant pieces of evidence (including emails or reports), which were not already known to your company in the context of its 2016-2017 internal investigation.

    In fact, after the issuance by Baker & McKenzie of its so-called investigative report in April 2017, Holcim's Chairman, Mr. Beat Hess, (**i**) publicly praised Mr. Lafont in May 2017 "*for [his] valuable services and […] high personal and professional qualities*"[1] and (**ii**) publicly declared in December 2017 that "*I have no reason to doubt Bruno Lafont, based on our internal investigation*".[2]

---

[1]     Minutes of the 105th Ordinary Annual General Meeting of LafargeHolcim Ltd held on May 3, 2017 (English version), p. 8.

[2]     Le Figaro, December 4, 2017: "*[Do you think it's possible that Bruno Lafont, CEO of Lafarge during the time of the events, could have not known about these payments?] I was not part of the company at the time, but I have no reason to doubt Bruno Lafont, based on our internal investigation.*

Page 3
March 7, 2022

This could not have been clearer.

Yet, Holcim and its affiliate LSA now assert the very opposite in their Summons, on the basis of the very same report (*"The Baker McKenzie report emphasizes […] that the defendants bear a distinct responsibility"*)

Such two positions are in absolute contradiction and mutually exclusive. Therefore, not only Holcim makes false accusations against Mr. Lafont, but it also manifestly acts in bad faith for the purpose of the present matter.

3.  For the sake of clarity, Mr. Lafont strongly and unequivocally disputes all of the following alleged facts (*inter alia*):

    a.  That he had, at the relevant time, any knowledge of the alleged offenses that are under investigation in France;

    b.  That he was informed, at the relevant time, by any means of communication, of the alleged offenses that are under investigation in France; and

    c.  That he was acting as "*de facto director*" of LCS.

    In fact, as Holcim very well knows, Mr. Lafont's position and statements have remained consistent since the very beginning of this matter, it being specified that your company entered into the Indemnification Agreement (dated November 3, 2016) several months after the first media coverage thereof in H1 2016, which was notably acknowledged by Holcim in press releases dated June 21 and 27, 2016.

    Needless to say, therefore, that Mr. Lafont strongly and unequivocally disputes your unjustified and repeated claims that he (**i**) "*intentionally deceived*" Holcim, (**ii**) "*collusively and intentionally concealed*" or "*wrongfully claim[ed]*" some information to Holcim, or
    (**iii**) "*acted willfully to the detriment*" of Holcim, let alone your company's further claim that (**iv**) he did so "*in order not to jeopardize the merger between Lafarge and Holcim*" – which is again a frivolous and false accusation that Holcim does not even bother to support with any kind of evidence or argument.

4.  For these reasons, Mr. Lafont hereby rejects all of Holcim's factual and legal claims, including:

    a.  Holcim's ill-considered claim, under the January 25 Letter, that it is not bound by the Indemnification Agreement, which therefore remains unaffected and shall continue to apply in full, including in particular Article 6 thereof (*i.e.*, Holcim's waiver of claims against Mr. Lafont, including claims by its affiliate LSA); and

    b.  Holcim's subsequent claim, under the January 26 Letter, that it and its affiliate LSA are entitled or warranted to initiate civil liability proceedings in France against Mr. Lafont (including, but not limited to, the Summons).

Page 4
March 7, 2022

5. Moreover, whilst your company concludes its January 25 Letter by the following statement: *"Please note, therefore, that no further payments under the Indemnification Agreement will be made as of the date of this letter [January 25, 2022]"*, it is a fact that Holcim already took unilateral, retaliatory actions against Mr. Lafont – thus breaching the Indemnification Agreement – by rejecting, for the first time on January 24, 2022, one of his legal counsel's invoice issued on January 10, 2022:

```
*** LSTUDER , 21.01.2022 - 08:58:31 / Lukas Studer ***
Not to be paid according to Mathias Gärtner
```

(email from ebs-info-corporate@lafargeholcim.com
to Willkie Farr & Gallagher dated January 24, 2022).

In light of the above unilateral actions – including **(i)** the blunt rejection of the invoice without engaging into any discussions and **(ii)** the commencement of civil liability proceedings in France in violation of, *inter alia*, the mandatory 90-day conciliation procedure provided for by Article 12 of the Indemnification Agreement –, we understand that Holcim is not interested in engaging into prior conciliation proceedings with Mr. Lafont.

For the sake of clarity, we do not consider Holcim's unilateral 14-day notice under the January 26 Letter to be an honest offer to engage into such amicable conciliation proceedings.

All of Mr. Lafont's rights and remedies in this regard are hereby expressly reserved.

6. Based on the foregoing, we hereby request that Holcim, **within 15 days from the receipt of the present notice:**

a. Settle Willkie Farr & Gallagher's January 10, 2020 invoice, as per the Indemnification Agreement;

b. Confirm in writing that it will continue to abide by all of its obligations and undertakings under the Indemnification Agreement (including on behalf of its affiliate LSA), which remains in full force;

c. Accordingly, withdraw and cause its affiliate LSA to withdraw the Summons that were filed against Mr. Lafont before the Paris Commercial Court; and

d. Provide Mr. Lafont with a copy of the D&O Insurance [3] policies and documentation applicable to the present matter, which are in the sole possession of Holcim but are directly relevant to the assessment of Mr. Lafont's legal rights as per Article 3 of the Indemnification Agreement.

---

[3] As defined by Article 2 of the Indemnification Agreement.

Page 5
March 7, 2022

7. We hereby further demand that Holcim:

   a. Do not take any further actions in violation of the Indemnification Agreement;

   b. Do not take any further actions that would, directly or indirectly, violate or hinder Mr. Lafont's basic rights to presumption of innocence and legal defense in the context of the ongoing criminal investigation in France;

   c. In particular, do not make any factual or legal admission in the context of its ongoing discussions with the United States Department of Justice (or any similar procedure), without first allowing Mr. Lafont to fully exercise his right to defend himself; and

   d. Do not take any further illegitimate actions that would be damaging to Mr. Lafont's reputation.

8. **Should Holcim fail to comply with any of such requests, we have been instructed by Mr. Lafont to take all appropriate legal actions to claim and enforce his relevant rights and remedies, all of which are therefore expressly reserved.**

9. The present letter does not constitute an admission of the jurisdiction of any courts or of the applicability of any laws.

   Similarly, it does not constitute an admission of any of the allegations or facts that are contained or implied in the January 25 and 26 Letters or in the Summons.

We finally request that all future correspondence be addressed directly to us, as opposed to Mr. Lafont. Your legal team reads us in copy.

**Hervé Temime / Grégoire Bertrou**
*Avocats à la Cour*

CC:    - Christophe Ingrain and Nicolas Mennesson (Darrois)
        - Denis Chemla (Allen & Overy)

morningtrans.com



# TRANSLATION CERTIFICATION

Date: February 14, 2026

To whom it may concern:

I, Helen J. Wormell, a translator fluent in the French and English languages, on behalf of Morningside, do solemnly and sincerely declare that the following is, to the best of my knowledge and belief, a true and correct translation of the document(s) listed below in a form that best reflects the intention and meaning of the original text.

The document is designated as:

- 04 B. LAFONT - Pièces versées - 15122025_English UNREDACTED

*Helen J. Wormell*
Signature

Helen J. Wormell

Print

QUESTEL CONFIDENTIAL

299 South Main Street, Suite 1300
Salt Lake City, UT 84111

| **TEMIME ET ASSOCIES** | **WILLKIE FARR & GALLAGHER** |
|---|---|
| Avocats à la Cour | Avocats à la Cour |
| 156, rue de Rivoli | 21, boulevard Malesherbes |
| 75001 Paris | 75008 Paris |
| Tél : 01 49 27 00 55 | Tél : 01 53 43 45 00 |
| Fax : 01 42 60 62 44 | Fax : 01 53 43 46 99 |
| Toque : C1537 | Toque : J003 |

1

**Holcim Ltd**
Grafenauweg 10
6300 Zug
Switzerland

*Attn.: Chairman*

BY EXPRESS COURIER

Paris, March 7, 2022

<u>**OFFICIAL NOTICE - INDEMNIFICATION AGREEMENT**</u>

We write on behalf of Mr. Bruno Lafont ("**Mr. Lafont**").

We refer to the Indemnification Agreement entered into between Mr. Lafont and LafargeHolcim Ltd (now Holcim Ltd) ("**Holcim**") on November 3, 2016 (the "**Indemnification Agreement**").

We further refer to (**i**) Holcim's letter dated January 25, 2022, claiming that Holcim is not bound by the Indemnification Agreement (the "**January 25 Letter**") and (**ii**) Holcim's letter dated January 26, 2022, informing Mr. Lafont that Holcim and its affiliate (*filiale*) Lafarge SA ("**LSA**") were to initiate civil liability proceedings in France against him (the "**January 26 Letter**"). The corresponding summons were eventually served to Mr. Lafont on February 21, 2022 (the "**Summons**").

For the reasons briefly summarized below, Holcim's actions are irremediably flawed and extremely damaging to Mr. Lafont's reputation. In particular, Holcim thereby acts in blatant disregard for Mr. Lafont's presumption of innocence.

Page 2
March 7, 2022

1. Contrary to Holcim's frivolous accusations, the <u>ongoing</u> criminal investigation in France, to which both Holcim's affiliate LSA and Mr. Lafont are parties as persons placed under judicial investigation (*mis en examen*), did not lead to any "*findings*" or "*recent findings*" regarding Mr. Lafont's purported involvement in the alleged dealings of Lafarge Cement Syria ("<u>LCS</u>") with sanctioned organizations.

In this regard:

a. In its January 25 and 26 Letters, Holcim fails to articulate any intelligible and precise legal or factual basis for its claims, other than a vague reference to "*the latest findings made in the course of the French criminal proceedings*" or the fact that "*[t]he French judicial investigation recently brought [your] attention*" to some unspecified elements; and

b. In their subsequent Summons, Holcim and its affiliate LSA similarly fail to articulate, let alone demonstrate, any actual wrongdoing against Mr. Lafont, as they only refer to some merely contextual elements (*e.g.*, existence of a regular dialogue between Mr. Lafont and other members of LSA, existence of rules and procedures internal to LSA) which, in any case and by construction, were <u>already</u> known – when your company entered into the Indemnification Agreement on November 3, 2016 – not only to LSA (since they relate to its own past activities), but also to Holcim (which completed its merger with LSA in July 2015).

In fact, as Holcim very well knows, (**i**) the judicial investigation (*information judiciaire*) is still ongoing and, as such, has not reached any final determination, and in any event (**ii**) up and until a final criminal verdict (if any) is reached by a court of law, all parties – including Mr. Lafont – are deemed innocent of the facts that are investigated.

By going as far as drawing material conclusions from an ongoing criminal investigation, on the basis of fragmented, unspecified and unsubstantiated elements, Holcim is therefore acting in blatant disregard for the rule of law and Mr. Lafont's most basic rights.

2. In addition, the reality is that this ongoing investigation – to which Holcim's affiliate Lafarge SA is a party with full access to the investigation file for almost four years now (*mise en examen* in June 2018) – has not given rise to the disclosure of any new relevant pieces of evidence (including emails or reports), which were not already known to your company in the context of its 2016-2017 internal investigation.

In fact, after the issuance by Baker & McKenzie of its so-called investigative report in April 2017, Holcim's Chairman, Mr. Beat Hess, (**i**) publicly praised Mr. Lafont in May 2017 "*for [his] valuable services and [...] high personal and professional qualities*"[1] and (**ii**) publicly declared in December 2017 that "*je n'ai aucune raison de douter de Bruno Lafont, au regard de notre enquête interne*".[2]

---

[1]     Minutes of the 105th Ordinary Annual General Meeting of LafargeHolcim Ltd held on May 3, 2017 (English version), p. 8.

[2]     Le Figaro, December 4, 2017: "[*Pensez-vous possible que Bruno Lafont, PDG de Lafarge au moment des faits, ait pu ignorer ces versements ?] Je n'étais pas dans l'entreprise à l'époque, mais je n'ai aucune raison de douter de Bruno Lafont, au regard de notre enquête interne*".

Page 3
March 7, 2022

This could not have been clearer.

Yet, Holcim and its affiliate LSA now assert the very opposite in their Summons, on the basis of the very same report ("*Il ressort du rapport du cabinet Baker McKenzie […] que les défendeurs ont une responsabilité particulière*").

Such two positions are in absolute contradiction and mutually exclusive. Therefore, not only Holcim makes false accusations against Mr. Lafont, but it also manifestly acts in bad faith for the purpose of the present matter.

3.  For the sake of clarity, Mr. Lafont strongly and unequivocally disputes all of the following alleged facts (*inter alia*):

    a.  That he had, at the relevant time, any knowledge of the alleged offenses that are under investigation in France;

    b.  That he was informed, at the relevant time, by any means of communication, of the alleged offenses that are under investigation in France; and

    c.  That he was acting as "*de facto director*" of LCS.

    In fact, as Holcim very well knows, Mr. Lafont's position and statements have remained consistent since the very beginning of this matter, it being specified that your company entered into the Indemnification Agreement (dated November 3, 2016) several months after the first media coverage thereof in H1 2016, which was notably acknowledged by Holcim in press releases dated June 21 and 27, 2016.

    Needless to say, therefore, that Mr. Lafont strongly and unequivocally disputes your unjustified and repeated claims that he (**i**) "*intentionally deceived*" Holcim, (**ii**) "*collusively and intentionally concealed*" or "*wrongfully claim[ed]*" some information to Holcim, or (**iii**) "*acted willfully to the detriment*" of Holcim, let alone your company's further claim that (**iv**) he did so "*in order not to jeopardize the merger between Lafarge and Holcim*" – which is again a frivolous and false accusation that Holcim does not even bother to support with any kind of evidence or argument.

4.  For these reasons, Mr. Lafont hereby rejects all of Holcim's factual and legal claims, including:

    a.  Holcim's ill-considered claim, under the January 25 Letter, that it is not bound by the Indemnification Agreement, which therefore remains unaffected and shall continue to apply in full, including in particular Article 6 thereof (*i.e.*, Holcim's waiver of claims against Mr. Lafont, including claims by its affiliate LSA); and

    b.  Holcim's subsequent claim, under the January 26 Letter, that it and its affiliate LSA are entitled or warranted to initiate civil liability proceedings in France against Mr. Lafont (including, but not limited to, the Summons).

Page 4
March 7, 2022

5.  Moreover, whilst your company concludes its January 25 Letter by the following statement: "*Please note, therefore, that no further payments under the Indemnification Agreement will be made as of the date of this letter [January 25, 2022]*", it is a fact that Holcim already took unilateral, retaliatory actions against Mr. Lafont – thus breaching the Indemnification Agreement – by rejecting, for the first time on January 24, 2022, one of his legal counsel's invoice issued on January 10, 2022:

> \*\*\* LSTUDER , 21.01.2022 - 08:58:31 / Lukas Studer \*\*\*
> Not to be paid according to Mathias Gärtner

(email from ebs-info-corporate@lafargeholcim.com<br>to Willkie Farr & Gallagher dated January 24, 2022).

In light of the above unilateral actions – including (**i**) the blunt rejection of the invoice without engaging into any discussions and (**ii**) the commencement of civil liability proceedings in France in violation of, *inter alia*, the mandatory 90-day conciliation procedure provided for by Article 12 of the Indemnification Agreement –, we understand that Holcim is not interested in engaging into prior conciliation proceedings with Mr. Lafont.

For the sake of clarity, we do not consider Holcim's unilateral 14-day notice under the January 26 Letter to be an honest offer to engage into such amicable conciliation proceedings.

All of Mr. Lafont's rights and remedies in this regard are hereby expressly reserved.

6.  Based on the foregoing, we hereby request that Holcim, **within 15 days from the receipt of the present notice:**

    a.  Settle Willkie Farr & Gallagher's January 10, 2020 invoice, as per the Indemnification Agreement;

    b.  Confirm in writing that it will continue to abide by all of its obligations and undertakings under the Indemnification Agreement (including on behalf of its affiliate LSA), which remains in full force;

    c.  Accordingly, withdraw and cause its affiliate LSA to withdraw the Summons that were filed against Mr. Lafont before the Paris Commercial Court; and

    d.  Provide Mr. Lafont with a copy of the D&O Insurance[3] policies and documentation applicable to the present matter, which are in the sole possession of Holcim but are directly relevant to the assessment of Mr. Lafont's legal rights as per Article 3 of the Indemnification Agreement.

---

[3]    As defined by Article 2 of the Indemnification Agreement.

Page 5
March 7, 2022

7.  We hereby further demand that Holcim:

    a.  Do not take any further actions in violation of the Indemnification Agreement;

    b.  Do not take any further actions that would, directly or indirectly, violate or hinder Mr. Lafont's basic rights to presumption of innocence and legal defense in the context of the ongoing criminal investigation in France;

    c.  In particular, do not make any factual or legal admission in the context of its ongoing discussions with the United States Department of Justice (or any similar procedure), without first allowing Mr. Lafont to fully exercise his right to defend himself; and

    d.  Do not take any further illegitimate actions that would be damaging to Mr. Lafont's reputation.

8.  **Should Holcim fail to comply with any of such requests, we have been instructed by Mr. Lafont to take all appropriate legal actions to claim and enforce his relevant rights and remedies, all of which are therefore expressly reserved.**

9.  The present letter does not constitute an admission of the jurisdiction of any courts or of the applicability of any laws.

    Similarly, it does not constitute an admission of any of the allegations or facts that are contained or implied in the January 25 and 26 Letters or in the Summons.

We finally request that all future correspondence be addressed directly to us, as opposed to Mr. Lafont. Your legal team reads us in copy.

**Hervé Temime / Grégoire Bertrou**
*Avocats à la Cour*

CC:  - Christophe Ingrain and Nicolas Mennesson (Darrois)
     - Denis Chemla (Allen & Overy)