**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARISS FINAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFARGE S.A., *et al.*, <br><br> Defendants. | Case No. 22-cv-07831-NGG-PK |
| NADIA MURAD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFARGE S.A., *et al.*, <br><br> Defendants. | Case No. 23-cv-09186-NGG-PK |
| SUSAN SHIRLEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFARGE S.A., *et al.*, <br><br> Defendants. | Case No. 25-cv-04248-NGG-PK |

**WILLKIE FARR & GALLAGHER LLP'S
OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY**

Served on: April 30, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.   Lafarge's Internal Investigation And Corporate Guilty Plea............................................. 2

    B.   Plaintiffs Sue Lafarge For Its Admitted Wrongdoing.......................................................... 3

    C.   Lafarge's Belated Motion To Disqualify Willkie................................................................ 4

    D.   Conclusion of the French Criminal Proceedings ................................................................. 5

ARGUMENT.................................................................................................................. 5

    I.   WILLKIE HAS IMPLEMENTED EFFECTIVE WALLS .............................................. 6

    II.  WILLKIE HAS VIGOROUSLY REPRESENTED PLAINTIFFS AND WILL CONTINUE TO DO SO........................................................................................... 8

    III.  GRANTING LAFARGE'S BELATED AND TACTICAL MOTION TO DISQUALIFY WILLKIE WOULD UNFAIRLY PREJUDICE PLAINTIFFS ..................................... 13

CONCLUSION.............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341 (S.D.N.Y.) .................................. 7

*Bd. of Educ. of New York v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979) .................................... 6, 9, 15

*Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276 (S.D.N.Y. 2001) ................ 8

*Daniel J. Edelman Inc. v. Prime Hydration LLC*, 2025 WL 3563179 (S.D.N.Y. Dec. 12, 2025) 10

*Doe 1 v. JPMorgan Chase Bank, N.A.,* 2023 WL 3383724 (S.D.N.Y. May 11, 2023) .................. 9

*Doe 1 v. JPMorgan Chase Bank, N.A.,* No. 22-cv-10019

  (S.D.N.Y. May 8, 2023), ECF No. 114 ................................................................................. 8, 9

*Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2024 WL 3085052

  (S.D.N.Y. June 20, 2024) ......................................................................................................... 7

*Enzo Biochem, Inc. v. Applera Corp.*, 468 F. Supp. 2d 359 (D. Conn. 2007) .............................. 14

*Eur. Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297 (E.D.N.Y. 2001) ....................... 5, 8, 12, 13

*Gartner, Inc. v. HCC Specialty Underwriters, Inc.*, 580 F. Supp. 3d 31 (S.D.N.Y. 2022) .. 7, 8, 15

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127 (2d. Cir. 2005) .................... 12

*HLP Props., LLC v. Consol. Edison Co. of N.Y.*, 2014 WL 5285926

  (S.D.N.Y. Oct. 16, 2014) ..................................................................................................... 14, 15

*Intelli-Check, Inc. v. Tricom Card Tech., Inc.*, 2008 WL 4682433 (E.D.N.Y. Oct. 21, 2008) ...... 7

*Metal Mgmt., Inc. v. Schiavone*, 2007 WL 2705523 (D. Conn. Sept. 13, 2007). ......................... 14

*Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147 (S.D.N.Y. 2017) .................................................... 9

*Ni v. HSBC Bank*, 2024 WL 5700200 (S.D.N.Y. Aug. 12, 2024) ............................................... 10

*Norton v. Town of Islip*, 2006 WL 2465031 (E.D.N.Y. Aug. 23, 2006) ........................................ 5

*O'Brien v. Middle East F.*, 2020 WL 7335468 (E.D. Pa. Dec. 12, 2020) ................................... 15

*Satina v. New York City Hum. Ress. Admin.*, 2015 WL 6681203 (S.D.N.Y. Nov. 2, 2015) ........ 10

*Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235 (S.D.N.Y. 2008) ............................................ 5

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332 (Fed. Cir. 1988) ..................... 11

*U.S. v. Lafarge S.A. et al.*, No. 22-cr-00444 (E.D.N.Y. Oct. 18, 2022), ECF No. 10 .................... 3

*United States v. Massino*, 303 F. Supp. 2d 258 (E.D.N.Y. 2003) ................................................. 11

*W.T. Grant Co.* v. *Haines*, 531 F.2d 671 (2d Cir. 1976) ................................................................ 8

**Other Authorities**

*Lafarge ex-CEO sentenced to six years in prison for funding jihadists in Syria,* LE MONDE (Apr. 13, 2026, at 1:28 CEST) ....................................................................................................... 5

Press Release, Dep't of Justice, *Lafarge Pleads Guilty to Conspiring to Provide Material Support to Foreign Terrorist Organizations* (Oct. 18, 2022) ...................................................... 2

**INTRODUCTION**

Lafarge's motion to disqualify Willkie Farr & Gallagher LLP ("Willkie") is most notable for what it lacks.  Unlike the typical disqualification motion, Lafarge's motion is not premised on any claim of its own client relationship with Willkie.  Instead, it is based on Willkie's relationship with Plaintiffs in the above-captioned actions (the "Actions"), and a separate, walled-off Willkie team's relationship with non-party Bruno Lafont in France.  But neither Plaintiffs nor Lafont have joined Lafarge's motion, and Lafarge's attempt to protect their supposed interests falls flat.

Lafarge's primary argument is that separate Willkie teams representing separate clients in separate matters on separate continents have taken contradictory positions.  But Lafarge cites *no* case that supports disqualification on that basis, and we are not aware of any.  And while Lafarge suggests that Willkie gained access to Lafarge's sensitive information, it never explains why the two ethical walls Willkie established are insufficient to protect any supposedly privileged information.  To the contrary, all members of Willkie's case team representing Plaintiffs have submitted sworn declarations stating that they have never accessed, reviewed, or discussed any confidential information regarding Willkie's representation of Mr. Lafont.

There is no basis in the case law for disqualifying Willkie based on its representation of Mr. Lafont in France—a representation that Lafarge has known about for a *decade*.  Lafarge now effectively concedes its burden to show that Willkie's separate representation of Mr. Lafont will taint these proceedings.  *See* Defendants' Motion to Disqualify at 6 (Apr. 1, 2026) (hereinafter "Mot.").  But Lafarge can't make that showing.  Certainly, Lafarge cannot show a diminution in the vigor of Willkie's representation of Plaintiffs: Lee Wolosky and Andrew Lichtman represented Plaintiffs both before and after they moved from Jenner & Block ("Jenner") to Willkie, and their representation has been as zealous after their move as it was before.

1

Lafarge's assertion that Willkie's representation of Plaintiffs will render any settlement or decision vulnerable to attack is baseless.  All Plaintiffs have been informed of Willkie's representation of Mr. Lafont in France (and of Lafarge's motion), and no Plaintiff has objected. Lafarge also ignores that *granting* a disqualification motion can be reversible error—particularly where, as here, Willkie has no direct conflict and Lafarge's arguments for "taint" lack merit.

Although Willkie takes the allegations here and the underlying ethical issues very seriously, there is simply no basis to further delay justice in this case—and deprive Plaintiffs of their chosen counsel—by granting Lafarge's delayed and deficient motion for disqualification.

## BACKGROUND

### A.  Lafarge's Internal Investigation And Corporate Guilty Plea

In October 2022, Lafarge became the first-ever corporation to plead guilty in the United States to participating in a conspiracy to provide material support to a terrorist organization. According to former Deputy Attorney General Lisa O. Monaco, Lafarge "partnered with ISIS, one of the most brutal terrorist organizations the world has ever known, to enhance profits and increase market share."  Press Release, Dep't of Justice, *Lafarge Pleads Guilty to Conspiring to Provide Material Support to Foreign Terrorist Organizations* (Oct. 18, 2022).

Lafarge's knowledge of the facts underlying its plea began much earlier.  In 2016, its Board began an internal investigation—known as "Project Alpha"—to look into allegations that Lafarge and its Syrian subsidiary paid bribes to ISIS and other armed groups.  At that time, lawyers in Willkie's Paris office began representing Lafarge's former CEO, Mr. Lafont, in connection with Project Alpha.  Lafarge and its outside counsel communicated with Willkie lawyers during this period, so Lafarge has known about Willkie's representation of Mr. Lafont in France since 2016— a full decade.  *See* Mot. at 2.  And Lafarge has known that Mr. Lafont (through French counsel)

has continuously denied responsibility for Lafarge's unlawful conduct.  Mot. Ex. 7.

In conjunction with its 2022 guilty plea, Lafarge agreed to a 52-page Statement of Facts ("SOF") detailing its criminal conduct, and it paid $778 million in penalties and forfeiture.  The SOF includes Lafarge's admissions regarding eight former employees and their role in the criminal conduct, including Mr. Lafont.  Lafarge's plea precludes it from contesting its admissions in the SOF in any legal action.  *U.S. v. Lafarge S.A. et al.*, No. 22-cr-00444 (E.D.N.Y. Oct. 18, 2022), ECF No. 10 at 31-32.  But the employees named in the SOF, including Mr. Lafont, were not parties to the guilty plea and were not otherwise charged with criminal misconduct in the United States, so Mr. Lafont remains free to refute the SOF's statements, as he has done in French proceedings.

Notably, Lafarge has been adverse to Mr. Lafont since at least February 2022, when Lafarge launched civil litigation against Mr. Lafont and four other former Lafarge employees in a French court.  Mot. Ex. 2.  In the French litigation, Lafarge sued Mr. Lafont and others for "wrongful acts" that were also the subject of "criminal proceedings" in France.  *Id.* at 11-12.

**B.  Plaintiffs Sue Lafarge For Its Admitted Wrongdoing**

In December 2022, Jenner filed *Finan*, the first civil Anti-Terrorism Act case against Lafarge arising out of Lafarge's plea.  At the time, Messrs. Wolosky and Lichtman were partners at Jenner.  The *Finan* allegations (as well as those in the later-filed *Murad* and *Shirley* complaints) closely track and sometimes expand upon the SOF—facts that Lafarge is *legally barred* from contesting in this litigation.  The complaints name only Lafarge entities as Defendants but, consistent with the guilty plea, they mention the eight former Lafarge employees who were discussed in the SOF.  Mr. Lafont is referenced in only seven paragraphs in the 134-page *Finan* complaint, highlighting Mr. Lafont's conduct consistent with Lafarge's criminal admissions.

Over a year ago, in February 2025, Messrs. Wolosky and Lichtman moved from Jenner to

3

Willkie. At that time, Willkie carefully vetted possible conflict issues and determined that there was not a conflict. But in an abundance of caution, Willkie immediately erected a wall between the New York-led team representing Plaintiffs in the Actions and the Paris-led team representing Mr. Lafont in France. *See infra* at 6. That wall was in addition to a preexisting wall that Willkie erected in 2018 (for reasons unrelated to Willkie's representation of Plaintiffs) to ensure that only the Willkie lawyers representing Mr. Lafont can gain access to documents and files on his matter.

### C. Lafarge's Belated Motion To Disqualify Willkie

When Messrs. Wolosky and Lichtman joined Willkie, Lafarge and its outside counsel had known about Willkie's separate representation of Mr. Lafont in France for *nine years*. Yet for nearly a year after Messrs. Wolosky and Lichtman joined Willkie, Lafarge and its prior counsel at Loeb & Loeb and Skadden never raised a conflicts issue. Eight months ago, in August 2025, the Court denied in part and granted in part Lafarge's motion to dismiss. Since then, the parties have engaged in intense discovery, with Plaintiffs aggressively pursuing and reviewing millions of pages from dozens of Lafarge records custodians. The parties exchange emails and letters on a daily basis, participate in meet and confers on at least a weekly basis, and appear before Judge Kuo for status conferences about once a month.

Not until February 17, 2026—a *year* after Willkie became lead counsel in the Actions and after Lafarge hired its third law firm, WilmerHale ("Wilmer")—did Lafarge seek to disqualify Willkie. Crucially, no Willkie client has joined Lafarge's motion despite being on notice. In February and early March 2026, Willkie and its co-counsel emailed the nearly 1,000 Plaintiffs in the Actions to inform them about, and provide a copy of, Lafarge's initial motion. Ex. B (Wolosky Decl.) ¶ 8. *Not a single Plaintiff has expressed support for disqualification.* Rather, all the responses Willkie has received express a desire for Willkie to remain in the case. *Id.* In addition,

4

Lafarge's lawyers at Wilmer have represented that they reached out to Mr. Lafont about joining Lafarge's motion, but Mr. Lafont did not do so. Mar. 10, 2026 Conf. Tr. at 6:4-5. Lafarge has speculated, without basis, that Willkie lawyers in France may be advising Mr. Lafont not to respond. *Id*. at 6:5-7. But as Lafarge elsewhere acknowledges, Mr. Lafont is represented by at least two other law firms in France who have no role in the Actions. Defendants' Motion to Disqualify at 4 n.1 (Feb. 17, 2026).

### D. Conclusion of the French Criminal Proceedings

On April 13, 2026, following a six-week criminal trial in France, Lafarge, Mr. Lafont, and seven other former executives were found guilty of financing terrorism. Consistent with Lafarge's guilty plea in the United States, the Presiding Judge in France concluded that Lafarge established a "genuine commercial partnership with [ISIS]." *Lafarge ex-CEO sentenced to six years in prison for funding jihadists in Syria,* LE MONDE (Apr. 13, 2026, at 1:28 CEST). The Court imposed a six-year prison term on Mr. Lafont and ordered him to start serving immediately. *Id*.

### ARGUMENT

Motions to disqualify counsel "are subject to particularly strict scrutiny" because of their "potential for abuse as a tactical device." *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008). "The Second Circuit generally takes a restrained approach to the disqualification of attorneys in civil cases," which requires "a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case." *Norton v. Town of Islip*, 2006 WL 2465031, at *2 (E.D.N.Y. Aug. 23, 2006) (Garaufis, J.) (cleaned up). "[E]thical infractions that do not rise to the level of 'taint'" cannot support disqualification. *Eur. Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 303 (E.D.N.Y. 2001) (Garaufis, J.).

"[W]ith rare exceptions disqualification has been ordered only in essentially two kinds of

cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of [the] client . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving [the] present client an unfair advantage." *Bd. of Educ. of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Neither circumstance is present here. Willkie has zealously advocated for Plaintiffs, and it has no unfair advantage over Lafarge. Given the Court's prior interest in the latter issue, Mar. 10, 2026 Conf. Tr. at 19:20-21, Plaintiffs begin there.

## I.      WILLKIE HAS IMPLEMENTED EFFECTIVE WALLS

There is no risk of Willkie gaining an unfair advantage over Lafarge based on access to Lafarge's privileged information. Even assuming that Willkie obtained such information, *but see infra* at 8 n.3, Willkie has imposed effective walls between the New York-led team representing Plaintiffs in the Actions and the Paris-led team representing Mr. Lafont in France.

In 2018 (for reasons unrelated to Willkie's representation of Plaintiffs), Willkie established an ethical wall around its representation of Mr. Lafont to ensure that only the lawyers and staff representing Mr. Lafont could gain access to documents and files on his matter.[1] Kozusko Decl. ¶ 9. None of those lawyers are part of the team that represents Plaintiffs in the Actions; rather, *all* of the lawyers on Willkie's case team here joined Willkie many years *after* the 2018 wall was put in place. Exs. B-E. And when Willkie began representing Plaintiffs in 2025, Willkie immediately created a second wall that prohibits anyone other than the lawyers and staff members representing Plaintiffs from accessing documents relating to the Actions. Kozusko Decl. ¶ 12.

Given the ethical walls around two separate matters run by separate teams on separate

---

[1] Contrary to Lafarge's assertion (Mot. at 12), individuals subject to Willkie's ethical walls "include not only attorneys but also support staff who perform substantive roles on a matter under the supervision of Firm attorneys, such as paralegals, legal assistants, and e-discovery personnel." Ex. A (Kozusko Decl.) ¶ 3.

continents, there is no risk of Plaintiffs gaining an unfair advantage over Lafarge.  Confirming this point, the lawyers representing Plaintiffs here have submitted sworn declarations representing that (1) they have never accessed or reviewed any confidential information regarding Willkie's representation of Mr. Lafont and (2) they have never had any communications with anyone at Willkie regarding confidential information obtained in connection with Willkie's representation of Mr. Lafont.  Exs. B-E; *see Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2024 WL 3085052, at *3 (S.D.N.Y. June 20, 2024) (holding that any presumption that confidences were shared before an ethical wall was implemented was rebutted through declarations that no information or materials were shared).  Further, Willkie's Deputy General Counsel has reviewed the file histories and confirmed that no one representing Plaintiffs has ever attempted to access any document in Willkie's case file for Mr. Lafont. Kozusko Decl. ¶ 16.

Courts routinely deny motions for disqualification on similar facts.  *See, e.g.*, *Gartner, Inc. v. HCC Specialty Underwriters, Inc.*, 580 F. Supp. 3d 31, 40 (S.D.N.Y. 2022) (denying motion to disqualify Norton Rose where the firm had "measures . . . in place to ensure that those providing assistance to the . . . company [could not] access information provided to [Norton Rose] during the course of other matters") (cleaned up); *Intelli-Check, Inc. v. Tricom Card Tech., Inc.*, 2008 WL 4682433, at *5 (E.D.N.Y. Oct. 21, 2008) (crediting attorney affidavits representing that they had no communication regarding the conflicting cases); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 346-47 (S.D.N.Y.) (finding factors like physical separation and large law firm size also effectively protect against disclosure).  The same result is warranted here.

Lafarge's contrary arguments lack merit.  Lafarge first claims that the "2025 wall should not have been necessary if, as Willkie contends, there was a wall erected in 2018."  Mot. at 13.  But Lafarge should not be heard to complain that Willkie has been *too* careful.  It is a feature, not

a bug, of Willkie's efforts that both the 2018 and the 2025 walls remain in place and effective.

Lafarge also claims that ethical walls can only defeat disqualification based on "potential conflicts from successive representations." Mot. at 13. That is legally incorrect—which may explain why Lafarge cites *no case* to support its argument.[2] In fact, courts within this Circuit have often relied on the presence of walls in denying motions to disqualify in cases of concurrent representations. *See, e.g.*, *Gartner*, 580 F. Supp. 3d at 40 (denying motion to disqualify Norton Rose based on alleged concurrent representations where the law firm had sufficient safeguards in place to protect against leakage of confidential information); *Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276, 288 (S.D.N.Y. 2001) (concluding that prima facie improper simultaneous adverse representation can be rebutted by showing no risk that confidential information gained through the representation can be used to give an unfair advantage).[3]

## II.    WILLKIE HAS VIGOROUSLY REPRESENTED PLAINTIFFS AND WILL CONTINUE TO DO SO

Absent concerns about confidential information, Second Circuit courts disqualify counsel only if the court lacks "confidence in the vigor of the attorney's representation of the client." *Bd.*

---

[2] Lafarge focuses on the sufficiency of ethical walls under the Rules of Professional Conduct. But as this Court has recognized, the Second Circuit's standard for disqualification is more demanding. *See Eur. Cmty.*, 134 F. Supp. 2d at 303-305; *see, e.g.*, *W.T. Grant Co.* v. *Haines*, 531 F.2d 671, 677-78 (2d Cir. 1976).

[3] If all that were not enough, Lafarge has not met its burden to show that it shared "privileged and confidential information" with Mr. Lafont and his French attorneys more than a decade ago, in connection with Project Alpha. Mot. at 2. Lafarge has not provided *any* common interest agreement or joint defense agreement governing the sharing of supposedly privileged information with Mr. Lafont's lawyers at Willkie. Instead, it conspicuously uses the phrase "common interest," not "common interest *agreement*," and Lafarge does not even assert that a common interest agreement exists (or existed). Mot. at 2; Mot. Ex. 1 ¶¶ 9-10. But as Wilmer observed when defending *itself* against a motion to disqualify, courts adjudicating such disputes typically look to the specific wording of the referenced agreements. *Doe 1 v. JPMorgan Chase Bank, N.A.,* No. 22-cv-10019 (S.D.N.Y. May 8, 2023), ECF No. 114. Nor has Lafarge explained how it did not waive any privilege when it sued Mr. Lafont in 2022 and accused him of wrongdoing. Regardless, as Wilmer successfully argued a few years ago, Wilmer "is aware of no case[] in which a court in the Second Circuit disqualified a party's chosen counsel on the basis of a common interest agreement, and there is no basis to do so under the ethical rules (which relate to conflicts arising from *client* relationships)." *JP Morgan*, ECF No. 114 at 13. That same reasoning applies here.

8

*of Educ. of New York*, 590 F.2d at 1246.  There is no reason to doubt Willkie's vigor here.

*First*, unlike in the typical disqualification motion, Lafarge does not claim any attorney-client relationship with Willkie and thus expresses no concerns about the vigor of its *own* representation.  Instead, Lafarge speculates about Willkie's supposed "diminishing effectiveness for *each of its clients*"—*i.e.*, Plaintiffs and Mr. Lafont, all of whom are in litigation *against Lafarge*.  Mot. at 9 (emphasis added).  Notably, *none* of Willkie's clients has joined Lafarge's motion.  Nor has any Plaintiff raised concerns about Willkie's vigorous representation.

Courts generally reject third-party attempts to police a client's choice of counsel.  Indeed, Wilmer itself successfully made this argument a few years ago when it was the subject of a disqualification motion.  Wilmer explained that the moving party was "not a current or former client of WilmerHale," and "'[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.'"  *Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10019 (S.D.N.Y. May 8, 2023), ECF No. 114 at 7 (quoting *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993)).  Judge Rakoff agreed with Wilmer and denied the motion.  *Doe 1 v. JPMorgan Chase Bank, N.A.,* 2023 WL 3383724, at *1 (S.D.N.Y. May 11, 2023).  Wilmer was right in 2023, and the Court should reject its contradictory argument now.

*Second*, Plaintiffs and Mr. Lafont are not directly adverse: Plaintiffs in the nine related cases have not sued Mr. Lafont, and there is no reason to expect they will ever do so.  At most, Lafarge has identified *potential* or *hypothetical* adversity.  But courts consistently deny disqualification motions based on theoretical adversity between a party and a non-party.  *See, e.g.*, *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 153 (S.D.N.Y. 2017) (denying motion where plaintiffs' law firm, at the time the initial complaint was filed, represented one of defendant's former managers, who was not a named party but who was "*potentially* liable to the current

9

plaintiffs") (emphasis added); *Satina v. New York City Hum. Ress. Admin.*, 2015 WL 6681203, at *1-2 (S.D.N.Y. Nov. 2, 2015) (denying motion where plaintiff's law firm sued defendant after representing a potential witness who was also plaintiff's supervisor at defendant's employ).

The same result is warranted here. Lafarge's assertions of maybe-potentially-someday adversity provide no reason to suspect that Willkie will represent Plaintiffs less vigorously in order to protect Mr. Lafont. Messrs. Wolosky and Lichtman moved from Jenner to Willkie more than a year ago; yet Lafarge points to no indication that their representation of Plaintiffs has diminished in any way, and this Court has witnessed firsthand the vigor of their representation in this case.

Lafarge suggests (Mot. at 9) that Mr. Lafont could theoretically be a witness in this case, but that appears extremely unlikely given that he resides in France, is not subject to subpoena, and was just sentenced to six years in prison. Moreover, for reasons unrelated to this motion, any examination of Mr. Lafont would take place in one of the related cases and be supervised by Kellogg Hansen, which—well before Lafarge filed this motion—sought Mr. Lafont's deposition (among others) through the Hague Convention process.[4] *See Foley*, 23-cv-05691, ECF No. 125 at 4 (Nov. 24, 2025). Courts have consistently allowed another law firm to take discovery from or question a third party where a particular law firm has a potential conflict. *See, e.g., Daniel J. Edelman Inc. v. Prime Hydration LLC*, 2025 WL 3563179, at *3 (S.D.N.Y. Dec. 12, 2025) (permitting co-counsel to issue subpoenas where lead counsel represented the recipient); *Ni v. HSBC Bank*, 2024 WL 5700200, at *2 (S.D.N.Y. Aug. 12, 2024) (allowing counsel to represent a party and a former employee of that party at depositions despite arguments that counsel would be incentivized to place blame on one to the detriment of the other).

---

[4] Should Mr. Lafont's deposition ever occur, it could be used in the Actions even though it would be taken in one of the related cases. *See Finan*, 23-cv-05691, ECF No. 152.

10

Lafarge's contrary authority consists of inapposite *criminal* cases in which defense attorneys would not be able to examine or pursue a legal strategy against key witnesses who were their own clients.  Mot. at 9-10 (citing *United States v. Rogers*, 9 F.3d 1025, 1028, 1032 (2d Cir. 1993); *United States v. Massino*, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) (Garaufis, J.)). Notably, disqualification in those cases hinged on Sixth Amendment considerations not applicable in this civil matter.  *See Massino*, 303 F. Supp. 2d at 260.

*Third*, unable to show direct adversity, Lafarge conjures up an argument that disqualification is required because Willkie "advance[s] contradictory facts."  Mot. at 8.  But even if that were true, that is no reason to doubt the vigor of Willkie's representation.  If anything, Lafarge effectively contends that Willkie is being *too* vigorous in its representation of Plaintiffs by taking positions that are inconsistent with the Lafont team's positions in France.  That is not a basis for disqualification.

Unsurprisingly, Lafarge cites *no* case disqualifying counsel for alleged inconsistent factual representations, and we are not aware of any.  This makes sense, because "[a]ttorneys represent clients—not legal positions."  *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1338 (Fed. Cir. 1988).  Lafarge instead relies on two types of cases, neither of which is on point. First, Lafarge cites typical disqualification cases in which a law firm takes on matters where current clients are suing each other and are therefore directly adverse.[5]  These client-vs.-client cases have

---

[5] *See, e.g.*, Mot. at 6-8 (citing *Cohen v. Strouch*, 2011 WL 1143067, at *4 (S.D.N.Y. Mar. 24, 2011) (law firm represented driver in one suit while simultaneously representing the driver's passenger in another suit against driver based on the same accident); *Merck Eprova AG v. Prothera, Inc.*, 670 F. Supp. 2d 201, 212 (S.D.N.Y. 2009) (law firm represented Client A in unfair competition action brought by Client B who law firm was simultaneously representing in a related patent prosecution case); *DeAngelis v. Am. Airlines, Inc.*, 2010 WL 1270005, at *3 (E.D.N.Y. Mar. 26, 2010) (Garaufis, J.) (law firm jointly represented clients raising defenses that would benefit one defendant at the other's expense and where one had cross-claimed against the other)); *cf.* Mot. at 9 (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975) (upholding disqualification of plaintiff's counsel where counsel represented employee of defendant who sought to become a plaintiff in the same lawsuit)).

11

no relevance here.  Second, Lafarge cites cases in which one of the clients of the allegedly conflicted law firm objected to that law firm's continued representation and joined the moving party's request to disqualify.[6]  But no Willkie client has joined Lafarge's motion here.

Similarly, Lafarge argues that it is "*per se* unreasonable for the same firm to simultaneously represent clients with divergent interests in closely related matters."  Mot. at 12.  But Lafarge cites nothing to support such a "per se" rule.  *Id.*  In fact, the only "per se" rules concerning conflicts of interest are set forth in Rule 1.7(b)(2) (prohibiting a representation "prohibited by law") and Rule 1.7(b)(3) (prohibiting a representation involving "the assertion of a claim by one client against another client represented by the lawyer in the same litigation").  Neither is the case here.

*Fourth*, Lafarge speculates that Willkie's representation in the Actions will create "an impossible settlement dynamic" because "when Willkie demands more in settlement for the benefit of Plaintiffs, it harms the interests of Willkie's other client, Lafont, who faces potential indemnification liability."  Mot. at 10.  This misleading argument fails to cast doubt on Willkie's vigor.  Lafarge's summons against Mr. Lafont in France nowhere mentions "indemnification"— much less attaches an indemnification agreement.  Mot. Ex. 2.  Instead, Lafarge sued Mr. Lafont under provisions of the Syrian Civil Code and French Commercial Code based on wrongful conduct relating to the French "criminal proceedings."  *Id.* at 11-12.  And even if Mr. Lafont might be held liable on an indemnification theory, that would not taint the proceedings.  As this Court

---

[6] Mot. at 8 (citing *Ests. Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 345 F. Supp. 93, 99 (S.D.N.Y. 1972) ("Since it is clear that UATC is the client likely to be injured by the dual representation, it, as well as the defendants herein, urge that [attorney] be required to forego his representation of plaintiff.")); *id.* at 10 (citing *In re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235, 244 (D.N.J. 2000) ("Ms. Lipton has declined to consent to the dual representation out of her concern that Paul Weiss' duty of loyalty would be impaired.")).  Lafarge's reliance on *Estates Theatres* is further misplaced because that case treated the ethical rules as dispositive of the disqualification question, whereas the Second Circuit has subsequently made clear that the rules "merely provide general guidance," and the disqualification inquiry turns on whether an attorney's conduct "tends to taint the underlying trial."  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127,132 (2d. Cir. 2005); *see Eur. Cmty.* 134 F. Supp. 2d at 303-305.

12

has explained in rejecting a disqualification bid, "[e]ven crediting the contention that the agreement to indemnify the Plaintiffs in the event of a suit or counterclaim against them . . . could generate a conflict at some point in the future, this hypothetical possibly does not threaten the integrity of the judicial process." *See Eur. Cmty.*, 134 F. Supp. 2d at 306 (Garaufis, J.).

*Fifth*, Lafarge speculates that Willkie's ongoing representation "create[s] fodder for appeal" because an "'order refusing to disqualify counsel' is itself 'reviewable on appeal after final judgment.'" Mot. at 11 (quoting *In re ALBA Petróleos de El Salvador S.E.M. de C.V.*, 82 F.4th 104, 112 (2d Cir. 2023)). But given that motions to disqualify are committed to the sound discretion of the district court, Lafarge unsurprisingly does not cite a single case in which an appellate court reversed the denial of such a motion. Willkie also has informed Plaintiffs of the disqualification issue and sent them Wilmer's motion. With none expressing objections to Willkie's continued representation, any appellate challenge by them years in the future would almost certainly be waived. And any hypothetical challenge to a hypothetical settlement would fail, *see* Mot. at 10-11, because Plaintiffs are represented by additional counsel who would advise them on any settlement. Finally, Lafarge ignores the countervailing appellate risk from *granting* its motion: It is "reversible error for a district court to disqualify counsel for ethical violations which do not rise to the level of 'taint.'" *Eur. Cmty.*, 134 F. Supp. 2d at 304.

### III.    GRANTING LAFARGE'S BELATED AND TACTICAL MOTION TO DISQUALIFY WILLKIE WOULD UNFAIRLY PREJUDICE PLAINTIFFS

Plaintiffs would be severely prejudiced if Willkie were disqualified at this late stage. Willkie is lead counsel to approximately 80% of the total 1,000+ Plaintiffs across these nine related cases. Messrs. Wolosky and Lichtman developed and filed the first civil ATA case against Lafarge over three years ago, and they have led case strategy for the Actions ever since. Mr. Wolosky, in particular, is uniquely qualified to lead these cases based on his experience in both government

13

and private practice. Wolosky Decl. ¶¶4-5  He is a world-renowned expert on terrorism, having served under four U.S. Presidents in senior legal and national security positions, including as Director of Transnational Threats on the National Security Council under Presidents Bill Clinton and George W. Bush, and as Special Envoy for Guantanamo Closure under President Obama. *Id.* In private practice, Mr. Wolosky has decades of experience successfully representing plaintiffs in major Anti-Terrorism Act cases.  *Id.* This type of expertise and experience is crucial in litigating these sprawling and complicated cases, and bringing them to a successful resolution for the benefit of terrorism victims.

As the Court is well aware, these cases are extraordinarily hard-fought, complex, and time-intensive—with billions of dollars in damages at stake.  The parties are well past the half-way point of the allotted time for fact discovery, and they are feverishly working to complete their document productions as they gear up for depositions in advance of the September 2026 fact discovery cut-off.  Willkie has been driving the legal strategy for the Actions throughout discovery and is intimately familiar with the facts, including the hundreds of thousands of pages produced by Lafarge.  Removing lead counsel at this late stage would cause significant prejudice to Plaintiffs, especially where not a single Plaintiff has objected to Willkie's representation.  *See, e.g.*, *HLP Props., LLC v. Consol. Edison Co. of N.Y.*, 2014 WL 5285926, at *6 (S.D.N.Y. Oct. 16, 2014); *Metal Mgmt., Inc. v. Schiavone*, 2007 WL 2705523, at *3 (D. Conn. Sept. 13, 2007).

It is no answer that Plaintiffs could continue to be represented by co-counsel.  Mot. at 15. A "client's interest in freely selecting counsel of her choice" is a critical consideration, especially where many of those clients initially retained Jenner after personally meeting with Mr. Wolosky and in reliance on his unique and extensive experience in the terrorism space. *Enzo Biochem, Inc. v. Applera Corp.*, 468 F. Supp. 2d 359, 364 (D. Conn. 2007) (internal citation omitted).  Further,

14

as Lafarge acknowledges, *see* Mot. at 10, co-counsel in these complicated cases have developed a coordinated system of working together on various tasks, projects, and strategy. Removing lead counsel would fundamentally interfere with this arrangement to the detriment of all Plaintiffs.

By contrast, Lafarge would suffer no prejudice if Willkie remains in the case, which is confirmed by Lafarge's decision to sit on this motion for a year. Lafarge claims that it raised this issue "[p]romptly upon discovering the conflict." Mot. at 5. But *Lafarge* has undisputedly known about Willkie's representation of Mr. Lafont since at least 2016. The only changed circumstance is that Lafarge hired its third law firm to take over its defense. As Judge Kuo recently reminded Lafarge, however, the "years that prior counsel [at Loeb and Skadden] had to look into the case and develop the facts and all those kinds of things are attributed to [Wilmer/Lafarge]." Mar. 3, 2026 Hr'g Tr. at 18:6-11, *Foley*, 23-cv-05691, ECF No. 149.

Finally, "even when made in the best of faith," motions to disqualify "inevitably cause delay." *Nyquist*, 590 F.2d at 1246. And here, both the timing (a year after Messrs. Wolosky and Lichtman joined Willkie, six months after this Court denied in part Lafarge's motion to dismiss, and halfway through fact discovery) and the content of this motion (unsupported by relevant case law and in which no Willkie client joins) suggest Wilmer made a tactical decision to seek disqualification. Particularly when combined with the prejudice to Plaintiffs, that is more than sufficient reason to deny the motion. *See, e.g.*, *Gartner*, 580 F. Supp. 3d at 40-41; *HLP Props., LLC v. Consol. Edison Co. of N.Y.*, 2014 WL 5285926, at *6 (S.D.N.Y. Oct. 16, 2014); *O'Brien v. Middle East F.*, 2020 WL 7335468, at *5 (E.D. Pa. Dec. 12, 2020) ("A purported conflict of interest is not a chit to be held in a litigant's pocket until a rainy day.").

## CONCLUSION

For the reasons herein, the Court should deny Defendants' motion to disqualify.

15

Date of Service: April 30, 2026

Respectfully submitted,

*/s/ Erica Ross*
Erica Ross
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
Telephone: 202-303-1271
eross@willkie.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by email.

Dated: April 30, 2026

/s/ *Erica Ross*
Erica Ross