# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARISS FINAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFARGE S.A., *et al.*, <br><br> Defendants. | Case No. 22-cv-07831-NGG-PK |
| NADIA MURAD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFARGE S.A., *et al.*, <br><br> Defendants. | Case No. 23-cv-09186-NGG-PK |
| SUSAN SHIRLEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFARGE S.A., *et al.*, <br><br> Defendants. | Case No. 25-cv-04248-NGG-PK |

**<u>DECLARATION OF DAN C. KOZUSKO</u>**

I, DAN C. KOZUSKO, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the bar of this Court and a partner of the law firm of Willkie Farr & Gallagher LLP ("Willkie" or the "Firm"), where I serve as Deputy General Counsel. In this role, I oversee Willkie's Conflicts Department, including the team responsible for creating

and maintaining ethical walls.  This declaration is based on my personal knowledge, discussions with the relevant individuals, and a review of Willkie's records.  By providing the information contained in this declaration, I do not intend to waive, and to the contrary I intend to preserve, all applicable privileges under all applicable laws, including but not limited to the attorney-client privilege and the attorney work product doctrine.

**The Ethical Wall Process at Willkie**

2.      In order to obtain access to documents and files for any client or matter at Willkie that is subject to an ethical wall, a user must receive permission from the partner in charge of the matter or his or her designee.  In some cases, including those discussed below in paragraphs 12 and 15, permission from Willkie's Office of General Counsel ("OGC") may also be required before a user may have access to materials subject to an ethical wall.

3.      By default, the individuals at Willkie subject to ethical walls include not only attorneys but also support staff who perform substantive roles on a matter under the supervision of Firm attorneys, such as paralegals, legal assistants, and e-discovery personnel.  The only personnel at Willkie not subject to ethical walls are those with purely administrative functions, such as proofreaders and word processors; individuals with senior IT functions who are responsible for the design and maintenance of SPM (defined below) and the Firm's ethical wall systems; and the OGC and ethical wall teams responsible for creating, maintaining, and granting access to ethical walls at Willkie.

4.      Ethical walls are created and maintained through a software program called iManage Security Policy Manager ("SPM").  SPM also regulates who can access electronic and hard copy documents at the Firm, in the manner described below.

5.     For documents stored on Willkie's document management system called iManage, SPM automatically regulates which Firm personnel can view and access documents stored electronically on iManage, based on the parameters set forth in the various ethical walls in place at the Firm.  If a user is not among those authorized to access a document, that document will not be visible in iManage to the user, even if that document otherwise would be within any search or other parameters inputted by the user.  This same restriction applies to other electronic databases maintained by the Firm, including software used to host e-discovery platforms or serve as a repository for deposition transcripts and other discovery materials for specific matters—that is, if a user is not permitted access for that matter, the database will not be accessible to the user.

6.     SPM and iManage also maintain an audit trail of all individuals who have ever accessed the documents contained on the Firm's document management system.

7.     Ethical walls at the Firm apply to hard copy files in the same manner as electronic documents stored on iManage.  Access to hard copy documents is controlled by the Firm's Records Department.  To that end, when the Records Department receives a request for hard copy files, the on-duty Records clerk reviews SPM to ensure that the person requesting those documents is permitted to access them prior to providing those documents.  The Records Department also keeps a log of every individual at the Firm to whom it provides hard copy documents for each client-matter.

**Willkie's Representation of Bruno Lafont and the Creation of an Ethical Wall in 2018**

8.     The Firm began representing Bruno Lafont in 2016.  At that time, the Firm had no reason to create an ethical wall to limit access to electronic or hard copy documents relating to this representation.  Accordingly, consistent with the Firm's standard practices, no wall was placed around the representation of Mr. Lafont in 2016.

9.      In January 2018, for reasons unrelated to the above-captioned actions (the "Actions"), Willkie created an ethical wall around the representation of Mr. Lafont (the "2018 Wall"), which limited access to electronic and hard copy files relating to this representation to only those lawyers and support staff involved in the representation of Mr. Lafont.  Since 2018, additional personnel have been added to the 2018 Wall as they joined the Paris-led team representing Mr. Lafont.  (Consistent with Willkie's confidentiality obligations, including under New York of Rule of Professional Conduct 1.6, the Firm is unable to disclose in a public filing the reasons for the creation of this wall, other than to say that the wall was created for reasons entirely unrelated to the subject matter of these Actions and was entirely unrelated to Lee Wolosky and Andrew Lichtman joining the Firm, which did not occur until many years later.  If directed to do so by the Court, the Firm will make an *in camera* submission that describes the reasons for the creation of the 2018 Wall.)

10.      I have reviewed the list of all of the individuals at Willkie who have been granted access to materials subject to the 2018 Wall.  Based on my review of the Firm's time records, none of those individuals has ever recorded time to the Firm's representation of plaintiffs in the Actions.

11.      According to the audit trail maintained by iManage and logs maintained by the Records Department, between 2016 (when Willkie began representing Mr. Lafont) and 2018 (when Willkie created the 2018 Wall), no individual who accessed documents or files relating to the Firm's representation of Mr. Lafont has ever recorded time to Willkie's representation of plaintiffs in the Actions.

**Willkie Created a Second Ethical Wall in 2025 Once It Began Representing Plaintiffs**

12.     In early 2025, Messrs. Wolosky and Lichtman joined Willkie as partners from Jenner & Block LLP ("Jenner"). Willkie's Conflicts Department conducted its standard lateral partner conflicts review of both Messrs. Wolosky and Lichtman prior to their joining the Firm. The review process led the Conflicts Department to add a further restriction to the 2018 Wall. The further restriction prevented Messrs. Wolosky and Lichtman from being added to the 2018 Wall without permission from Willkie's OGC. At no time have Messrs. Wolosky or Lichtman requested, nor has OGC granted, permission for Messrs. Wolosky and Lichtman to be added to the 2018 Wall. In other words, at all times since joining the Firm, Messrs. Wolosky and Lichtman have been prevented by the 2018 Wall from accessing any electronic or hard copy files relating to Willkie's representation of Mr. Lafont.

13.     Messrs. Wolosky and Lichtman informed the Firm during the lateral conflict check process that they planned to bring the representation of plaintiffs in the Actions with them from Jenner. As a result, Willkie created a second ethical wall when they joined Willkie (the "2025 Wall") to ensure complete separation between the Paris-led team representing Mr. Lafont and the New York-led team representing plaintiffs in the Actions and that no one on either team could be granted access to the documents and files of the other team.

14.     The 2025 Wall restricted access to documents and files relating to the Firm's representation of plaintiffs in the Actions exclusively to those lawyers and support staff representing plaintiffs. Based on my review of the Firm's time records, none of those lawyers and support staff have ever recorded any time to the representation of Mr. Lafont.

15.     At my direction, the 2025 Wall included a restriction that prohibited any lawyer or support staff member authorized to access documents subject to the 2018 Wall from being

granted access to documents that are subject to the 2025 Wall (and *vice-versa*), without first obtaining permission from Willkie's OGC.  As a result, each Willkie lawyer and support staff member is placed into one of three categories:  (i) authorized to access documents subject to the 2018 Wall; (ii) authorized to access documents subject to the 2025 Wall; or (iii) authorized to access neither one—but a lawyer or support staff member cannot be granted access to both (i) and (ii), absent express advance permission from Willkie's OGC.  At no time has any individual requested, nor has OGC granted, such permission.  Moreover, the Firm's records in SPM reflect that there has been no overlap at any time between the list of individuals authorized to access documents subject to the 2018 Wall and the list of individuals authorized to access documents subject to the 2025 Wall.

16.    A review of iManage audit trail data and Records Department logs confirms that (i) no individual at Willkie who has recorded time to the representation of plaintiffs in the Actions has ever accessed any documents relating to the representation of Mr. Lafont; and (ii) no individual at Willkie who has recorded time to the representation of Mr. Lafont has ever accessed any documents relating to the representation of plaintiffs in the Actions.

17.    As noted in paragraph 3 above, certain administrative and IT personnel, together with OGC and its ethical wall team, are not subject to the ethical wall system at Willkie; however, the iManage audit trail reflects that none of these individuals has ever accessed any documents stored in iManage relating to either the representation of Mr. Lafont or plaintiffs in the Actions.  Likewise, the Records Department's logs do not show that any of these individuals has ever requested or been provided hard copy files relating to the Firm's representation of either Mr. Lafont or plaintiffs in the Actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 30, 2026, in New York, New York.

_/s/ Dan C. Kozusko_
Dan C. Kozusko