# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARISS FINAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 22-cv-07831-NGG-PK |
| DIANE FOLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 23-cv-05691-NGG-PK |
| JASON BLACK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 24-cv-08901-NGG-PK |
| SUSAN SHIRLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 25-cv-04248-NGG-PK |

1

NADIA MURAD, *et al.*,

    Plaintiffs,

  v.

LAFARGE S.A., *et al.*,

    Defendants.

ESTATE OF AVRAHAM GOLDMAN, *et al.*,

    Plaintiffs,

  v.

LAFARGE S.A., *et al.*,

    Defendants.

HELEN JANE WILSON, *et al.*,

    Plaintiffs,

  v.

LAFARGE S.A., *et al.*,

    Defendants.

CHRISTINE STALLTER, *et al.*,

    Plaintiffs,

  v.

LAFARGE S.A., *et al.*,

    Defendants.

Case No. 23-cv-09186-NGG-PK

Case No. 24-cv-01043-NGG-PK

Case No. 25-cv-01975-NGG-PK

Case No. 25-cv-06749-NGG-PK

2

TAMARA FIELDS, *et al.*,

                Plaintiffs,

        v.

LAFARGE S.A., *et al.*,

                Defendants.

Case No. 23-cv-00169-NGG-PK

### LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Eastern District of New York ("Eastern District") presents its compliments to the appropriate judicial authority of France for assistance in obtaining evidence to be used at trial in the above-captioned civil proceedings before this Court. A request is hereby made by the Eastern District, at 225 Cadman Plaza East, Brooklyn, NY 11201, United States of America, to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Département de l'entraide, du droit international privé et européen (DEDIPE), 13, Place Vendôme, 75042 Paris Cedex 01, France, for assistance in obtaining deposition and document discovery from Bi Young Chungunco (the "Witness"), a former employee of Defendants Lafarge S.A. and Lafarge Cement Syria S.A., in the above-captioned actions. This request is made pursuant to Chapter I of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial matters. The Eastern District is a court of law and equity and has subject-matter jurisdiction over these actions pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2338.

The Eastern District has determined that it would further the interests of justice to obtain document discovery from, and testimony under oath of, the Witness residing within your jurisdiction. The actions involve claims that Defendants Lafarge S.A., Lafarge Cement Holding

3

Ltd. ("Lafarge Cyprus"), and Lafarge Cement Syria S.A. ("LCS") conspired to provide material support to two terrorist organizations: the Islamic State of Iraq and Syria ("ISIS") and the al-Nusrah Front ("ANF"). Plaintiffs allege they are victims and family members of victims of ISIS's and ANF's terrorist attacks and other operations. Defendants deny Plaintiffs' allegations in their entirety and have asserted affirmative defenses based on the circumstances under which the challenged conduct allegedly occurred. The Witness is a former executive of Lafarge S.A. and LCS, and both Plaintiffs and Defendants allege he has knowledge and documents relevant to these actions, as described in more detail below.

The Witness's testimony and documents are not available from any source within the Eastern District and cannot be obtained by any means other than pursuant to an order of an appropriate judicial authority of France, compelling the Witness to appear for examination and to produce certain documents that are highly relevant to the determination of the above-captioned dispute.

This request is made with the understanding, and on the basis, that any order made pursuant to this request: (1) will not require the Witness to commit any offense; and (2) will not violate the laws of civil procedure of any French court.

The Eastern District, therefore, and in conformity with Article 3 of the Hague Convention, respectfully requests that you, in furtherance of justice by proper and usual process of your court, cause the Witness to appear before a judge authorized to administer oaths and take testimony, in accordance with articles 735 *et seq.* of the French Code of Civil Procedure, at a precise time to be fixed by said judge, and answer on her oath or affirmation questions and cross-questions; and that the Court will direct her deposition to be transcribed and recorded by video, and the transcript and video be sent to counsel for the parties in the action who so request a copy.

4

The Eastern District further respectfully requests that you, in furtherance of justice by proper and usual process of your court, cause the Witness to produce documents responsive to the requests described below, and that copies of those documents be sent to counsel for the parties in the action who so request them.  The Eastern District stands ready to provide similar judicial assistance to judicial authorities in France when required.

| 1. | Sender | The Honorable Peggy Kuo<br>United States Magistrate Judge<br>United States District Court<br>Eastern District of New York<br>225 Cadman Plaza East<br>Brooklyn, New York 11201<br>UNITED STATES OF AMERICA |
|----|--------|---------|
| 2. | Central Authority of the Requested State | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Département de l'entraide, du droit international privé et européen<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>FRANCE |
| 3. | Person to whom the executed request is to be returned | The Honorable Peggy Kuo<br>United States Magistrate Judge<br>United States District Court<br>Eastern District of New York<br>225 Cadman Plaza East<br>Brooklyn, New York 11201<br>UNITED STATES OF AMERICA<br><br>and<br><br>David W. Bowker<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>2100 Pennsylvania Avenue, N.W.<br>Washington, DC 20036<br>Tel: (202) 663-6000<br>Fax: (202) 663-6363<br>david.bowker@wilmerhale.com<br>UNITED STATES OF AMERICA |

| 4. | Specification of the date by which the requesting authority requires receipt of the response to the Request for International Judicial Assistance ("Request for Assistance") | The requesting authority would greatly appreciate a response to the Request for Assistance as soon as is practicable. |
|---|---|---|
| 5. | Requesting Authority | United States District Court<br>Eastern District of New York<br>225 Cadman Plaza East<br>Brooklyn, New York 11201<br>UNITED STATES OF AMERICA |
| 6. | To the competent authority of | The Republic of France |
| 7. | Name of the case and any identifying number | Foley, *et al.* v. Lafarge S.A., *et al.*, No. 23-cv-05691-NGG-PK;<br><br>Finan, *et al.* v. Lafarge S.A., *et al.*, No. 22-cv-07831-NGG-PK;<br><br>Black, *et al.* v. Lafarge S.A., *et al.*, No. 24-cv-08901-NGG-PK;<br><br>Shirley, *et al.* v. Lafarge S.A., *et al.*, No. 25-cv-004248-NGG-PK;<br><br>Goldman, *et al.* v. Lafarge S.A., *et al.*, No. 24-cv-01043-NGG-PK;<br><br>Murad, *et al.* v. Lafarge S.A., *et al.*, No. 23-cv-09186-NGG-PK;<br><br>Stallter, *et al.* v. Lafarge S.A., *et al.*, No. 25-cv-06749-NGG-PK;<br><br>Fields, *et al.* v. Lafarge S.A., *et al.*, No. 23-cv-00169-NGG-PK;<br><br>Wilson, *et al.* v. Lafarge S.A., *et al.*, No. 25-cv-01975-NGG-PK |

| 8. | Names of Plaintiffs | *Foley Plaintiffs*: Estate of James Foley, Diane Foley, John W. Foley, John E. Foley, Mark Foley, Kathryn Simpson, Michael Foley, Estate of Kayla Mueller, Richard Mueller II, Marsha Mueller, Eric Mueller, Estate of Steven Sotloff, Arthur Sotloff, Shirley Sotloff, Lauren Sotloff, Ashley Wheeler, D.W. (by and through Ashley Wheeler), Heather Harbour-Quackenbush, Rachel Quackenbush, Scotty Quackenbush, Tatira Wade, Zachariah Wheeler, Frederick Cardin, Hayley Simpkin, Nellie Cardin, Pollyanna Dhanani, Vincent Cardin, Ali Madina, Tatsiana Neudakh, A.M. (by and through Ali Madina), L.M. (by and through Ali Madina), Ryan Galdes, C.G. (by and through Ryan Galdes, Nathan Stallter, Estate of Weston Lee, Aldene Lee, Zakery Spicer, Megan Spicer, J.S. (by and through Zakery Spicer), W.A.S. (by and through Zakery Spicer), W.C.S. (by and through Zakery Spicer), Beth Rosen, Jerrod Spicer, Lauranna Eifert, Nathan Spicer, Tanner Spicer, William Raak, Michelle Black, Henry Black, Karen Black, Addie Johnson, Elisa Johnson, John Johnson, Jennifer Johnson, Jo-Anne Johnson, and Richshama Johnson.<br><br>*Finan Plaintiffs*: Chariss Finan, Gloria Finan-Bacon, Shawn Bacon, Kristin Dayton, Hailey Dayton, Cole Dayton, Kenton Stacy, Lindsey Stacy, L.S., M.S., S.S., A.S., Charles Keating III, William Keating, Cassandra Keating, Elizabeth Berry Jacek, Andrew Berry, Nathan Berry, A.B., N.B., Mohamad El Hajj Hassan, Zeinab El Hajj Hassan, Ayda Ahmad, and Leyla Ekren<br><br>*Black Plaintiffs*: Jason Black, Ezekiel Black, I.B. (by and through Michelle Black), Estate of Nohemi Gonzalez, Beatriz Gonzalez, Paul Gonzalez, Reynaldo Gonzalez, Ron Greenfield, Pnina Greenfield, Gili Greenfield, Liron Greenfield, Shere Greenfield, Shye Greenfield, and Myeshia Johnson<br><br>*Shirley Plaintiffs*: Susan Shirley, Caitlin Shirley, Francisco Molinar, Frank Molinar, Debra Austrum, Elizabeth Ashley Molinar, Destiny English, Porter Goodman, Dale Goodman, Teresa Goodman, Ian Goodman, Levi Goodman, Erika Tannis Goodman, Jessica Wagner, Freeman Stevenson, Robert Stevenson, Paige Atwood, Meghan Stevenson, Chelsea Niehaus *as next friend* to M. N-K, a minor, |

7

and L.N-K, a minor, Reginald Savage, Brenna Savage, David Todd, Rachel Todd, Ricardo Todd, Tammy Grodt, Kaylee Dedrick *as next friend* to T.G., a minor, Meghann Conforti, Stephanie Dawson, Emily Grodt, John Grodt, Kaitlyn Doxie, David Taylor, Sr., Lauren Samuels, Daniel Kitchens, Mathew Hughes, Paul W. Hughes, Sherri L. Hughes, Daniel D. Hughes, and Jonathan P. Hughes

*Goldman Plaintiffs*: Estate of Avraham Goldman, Nitzhiya Goldman, Maya Goldman Cohen, Sharon Goldman-Najman, Gila Nissenbaum, Nathan Goldman, Estate of Yonatan Suher, Inbal Merom, G.S., a minor, by his legal guardian Inbal Merom, U.S., a minor, by his legal guardian Inbal Merom, Randolph Suher, Yael Suher, Amir Suher, Eyal Suher, Eran Suher, and Edeete Suher

*Murad Plaintiffs*: Nadia Murad, A.A., A.A., A.A., A.B., A.K., A.P., Abas Alhami, Abas Zaghla, Abeer Kareem, Abid Kassim, Abla Amy, Abrahim Qaso, Adib Ayzden, Adil Khalaf, Adil Murad, Adla Hasan, Adnan Shamo, Adool A Abdi, Adoulla Matto, Adula Mato, Aede Aldukhi, Aeid Hamo, Ahlam Albobo, Ahmed Hamo, Ahmed Ibrahim, Ahmed Mastto, Ahmed Omar, Aishan Bashar, Aishan Hassan, Aishe Murad, Akram Ezdeen, Al.M.K., Alan Elias Ibrahim, Alan Hasckan, Alan Murad, Alex Ismail, Ali Murad Azeez Barkhash, Ali Turki, Alias Aldakhi, Aliefa Avdi Rasho, Alifa Khalaf, Almas Alhainto, Alvin Khidir, Alya Ido, Alya Maroo, Alyas Aldakhi, Alyas Saydo, Am. K., Amal Hasan, Amal Kheder, Amal Osman, Ameen B Omar, Ameen Babeir Khudidah, Ameen Eedo, Ameera Khaleel Hussein, Ameera S Naif, Amena Maao, Amer Hasan, Amer Khudher, Amir Aldarwish, Ammar Mato, Amsha Hussein Ali, Angel Abrahim Qaso, Ansam Zaito, Anwar Elias, Arkan Adee, Armaan Bargish, Asaad Qasim, Asad Naif, Ashti Al Hamka, Ashwaq Naif Rashawka, Asia Ezeden, Asia Haji, Asia K Ali, Asinja Badeel, Asmar Eedo, Aveen Hussein, Awaz Smoqi, Ay.M.K., Ayad Khurmish, Ayaz Hasan, Azad Aadi, Azad Ziyad Murad Smoqi, Azeer Ismael, Azeez Haskan, Azeezah Arab, Azzat Aldake, B.K., Babeir Khudidah Khibil, Badal Khalaf, Badri Namo, Bahar Hamo, Bahar Mourad, Bahar Sulaiman, Bakir Murad, Banas Dna,

8

| | | Bannaz Shamo, Barack Abraham, Barakat Ali, Barakat Aslan, Barakat Hussein Rasho, Barakat Khalaf, Barakat Mahko, Barakat Mato, Barfi Hamo, Bari Blasiny, Barvi Mirza Ali, Basam Aldakhi, Base Awsman, Basee Naser, Baseh Shamo, Basel Shamo, Bashar Mourad, Basil Auso, Basim Alali, Basim Khalaf, Basim Namr, Basima A Hami, Basima Auso, Basima Kurtan, Basima Pir Ali, Basima Qasim Mtro, Baslan Allaw, Basma Zido Shekh, Basman Z Darweesh, Basseh Osman, Bassemah Shamo, Bayan Haydar, Bezar Ahmad, Bilqeez Khalaf, Bizi Misqri, Bsaam Alali, D.A., D.A., D.K., Dahham L Haji, Dakheel Sulaiman, Dakheel Zandinan, Dakhil Elias, Dakhil Odi, Dalal Semoqi, Dalia Kalo, Dalia Khairo, Dalshad Khudhur, Dalya Zndinan, Dani Hadgi, Daran Khamo, Darweesh Qasim, Darwesh Khalaf, Darwish Darwish, David Khaleel, David Majo, Dawood Basi Haji, Dawood Knjo, Dawood Masto, Dawood Murad, Dejin Khidir, Deleer Khudada, Diksa K Alkahalaf, Dilher Othman, Diyana Khairo, Dler Almahama, Edo Hammo, Eeda Hussain, Eedo Khalaf, Eedo Khalaf, Eedo Osman, Elias Eedo, Elyas Zaito, Evan Bibo, Ezzat Kolo, F.K., Fadi Khaleel, Fadi Taalo Pirali, Fadia Al Dakhi, Fadwa Daher, Fadwa Yousif, Faeza Murad Maroo, Faeza Osso, Fahad Naif, Fahad Qassim, Faisal Khalaf Smoqi, Faisal Osso, Faisal Rasho, Faisal Saydo, Faisal Yazdeen, Faiz Al Sloo, Faiza Shamo Kari, Fakhri Kassem, Falah Alpishimam, Falah Osman, Falah Rashoka, Falah Salo, Faleeha H Barehamy, Fareda Kader, Fareeda Aldakhi, Fares Dahhar, Farhan Alyas, Farida Khalaf, Faris Auso, Faris Bakr, Faris Khether, Faris Pirali, Faris Saado, Farooq Ibrahim, Fatima Ali, Fatin Kassem, Fawaz Blasiny, Fawziya Darweesh Hami, Faysal Khudir, Feryal D Khairo, Feryal Pirali, Firas Arab, Firdaus Kari, G.A., Gawri Al Dakhi, Gawry Salih Shamo, George Ibrahim, Ghalya Samokee, Ghandi Allaw, Ghanim Masto, Gharib Kheder, Ghassan Kheder, Ghazal Bashar Kassem, Ghazal Smoqy, Ghazalah Hesso, Ghazalah Mourad, Ghazalah Sulaiman, Guli Mahko, Guli Qasim, Guli Rasho, Gulistan Haji, H.D., H.K., Habeeb Mtro, Hadeel Pirali, Hadeel Sarhan, Hadi H Zagla, Hadi Majow Qassim, Hadi Pir, Hadia Smoqi, Hadiya Hadgi, Hadji H Khalaf, Hadji Kheder, Hadyah Murad, Haidar Hesso, Haidar Shamo Kari, Haider Elias, Haifaa Haji, Haifaa Khurmish, Haifaa |

9

Osman, Haiveen Blasiny, Hajar Ali, Haji A Blasiny, Haji Hameka, Haji Hasan Biso Mirza, Haji Hassan Smouki, Haji Salih Saido, Hakim Osman, Hakima Antar, Hala Rashoka, Halah Blasiny, Haleema Khalaf, Halfeen Khudada, Halimah F Hasan, Hammood Ali Aleeso, Hamo Hamo, Hamy M Hamdan,  Hanaa Abass, Hanaa Darwish, Hanaa Khalaf, Hanan Ibrahim, Hanan Jundi, Hanan Omar, Hanan Smoqy, Hanan Thanoon, Haneef Smoqi, Harbi Izdeen, Haroon Al Hayder, Harry Hasckan, Hasan Fandi, Hasan K Khalil, Hashim Ido, Hassan Alassaf, Hassan Ali, Hassan Hassan, Hassan Hussein, Hassan J. Hassan, Hasso Bakr, Hatem Alali, Hatim Ido, Hawri Darweesh Elias Jndo, Hayder Yousif Murad, Hazem Al Yezidi, Hazim Aldakhi, Hazim Avdal, Hazim Ezdeen, Hazim Murad Maroo, Hazim Rashawka, Hazo Omar, Hazrat Ali, Hazzo Besho, Heivi Khalaf, Hend Z Atallah, Hiba Nawaf Assi, Hikmat Khalaf, Hinar K Kochi, Hiyam Omar, Hozhin Suliman, Huda Jasso, Humoom Darweesh, Husayn Joko, Husein Hesso, Husein Osman, Hussein Alisso, Hussein Hafi Ezdeen, Hussein Haji, Hussein Hskan, Hussein Khalaf, Hussein Kheder, Hussein M Maroo, Hussein Rasho, I.N., I.T., Ibrahim Ali, Ibrahim Alkhalaf, Ibrahim Khaleel Ghanim Zandinan, Ibrahim Khilla, Ibrahim Mourad, Ibrahim Oso, , Ikhelas Mirza, Ilham Alijomir, Imad Matto, Inam Omar, Inas Al Aode, Isaac Abrahim Qaso, Isam M Maroo, Isam Nafkosh, Ismaeil Hesso, Ismael Hammo, Ismael Khro, Ismael Maajo, Ismail Heskan, Ismail Khalaf, Izdeen Smoqy, Izdihar Sheikh, J.A., J.K., Jad K Khurmish, Jadaan Khalaf, Jakleen Smo, Jalal Alhasan, Jalal Khalaf, Jalal Rasho, Jallal Isa, Jamal Karee Rasho, Jamal Mastu, Jamal Murad, Jamal Sedoo Al Dakhi, Jameel Khalaf Darweesh, James Abdy, Jamila Al Jndo, Janan Al Omar, Jane Doe, Janet Doe, Jani Al Dakhee, Jani Dawood, Jihad Khalaf, Jndy Smoqi, Joanne Osman, John Zalfow, Jolyana Khammoo, Jono Ahmed, Joza Shikho, Jwane Hasan, Jwani Hadi, Jyan Haji, Kafia Masto, Kali Pirali, Kamal Ali, Kamal Hasan Bakr, Kamal Ismail, Kamiran Choko, Kamla Ido, Kamla Shammo, Kamo Shammo, Kasim Hamo, Kawa Murad, Kawi Khalaf Kasem, Kawkab Rasho, Kawry Omar, Kawwal Hasan, Kejjan K Hesso, Khadeeda Sharo, Khaeiri Khoudeida, Khaeri Hadgi, Khaeri Hamo, Khairi Alpishimam, Khairi Alsattam, Khairi Darweesh, Khairi Elias,

10

|  |  | Khairi Heskan, Khairi Hesso, Khairi Khudher, Khairi Masto, Khairi Shammo, Khairi Smoqy, Khairi Zandinan, Khalaf Ahmed, , Khalaf Kasem Amsikh, Khalaf Khalaf, Khalaf Murad, Khalaf Shammo, Khalaf Smoqi, Khalaf Sulaiman, Khaled Mourad, Khaled Shamo, Khaleel Ali, Khaleel Assaf, Khaleel K Khalaf, Khaleel Kamo Elias Haskan, Khaleel Mark, Khaleel Samo, Khaleel Sulaiman, Khalid Arab, Khalid Haider, Khalid I Khalaf, Khalid Jendo, Khalid Juko, Khalida Khalaf, Khalida Simoqi, Khalida Zndinan, Khalidah Hussein, Khalil Hakan, Khalil Sinjari, Khani Rafo, Khani Sheebo Sharo, Khansa Hasan, Khansa Khalaf, Khaton Abas, Khatoon Haskan, Khaula Saeed, Khawla Al Aisso, Khawlah H Maleko, Kheder Darweesh, Kheder Hadji, Kheder Shamo Kheder, Khedir Qassim, Khero Khalaf, Khero Edo, Khidhir Ido, Khifshi Hassan, Khifshi Khudeeda Sulaiman, Khokhee Ahmed, Khokhi Alpishimam, Khokhi Khider Khudeeda, Khokhi Naif Rashawka, Khokhy Elias Omer, Khonaf Haskan, Khonav Qary, Khoudeida K Saadoon, Khounaf Shammo, Khudaidah Havend, Khudayda Aldakhi, Khudedah Murad, Khudhur Abdal Azzo Dnai, Khudhur Ali, Khudhur Sulaiman, Khudidah S Maleko, Khunaf Salaja, Kiret Haji, Kitbiya Haidar, Klestan Ali Alhasan, Kochar Mhko, Kolo H Dahar, Kori Abdullah Ahmed, Kori Omar, Kori Sharro, Koulan Mourad, Kouli Khalaf, Kozi Hussein, Kudida H Shamo, Kuliar Jumaah, Laila Halo, Laila Hesso, Laila Kassem, Laila Khdir Ayub, Laila Khoudeida, Laila Mardos Miho, Laila Rasho Saleh, Laith Saleem, Layla H Karee, Layla Ibrahim, Layla Mourad, Layla Omar Elias Barghash, Layla Shamo, Leza Alali, Linda Osman, Lozina Alkhalaf, Lozniya Zandinan, Luis Alyas Kosa, M.A., M.G., M.K., M.K., Ma. K., Madina Aldakhi, Madleen Murad Maroo, Maged Hadgi, Maha Izdeen, Mahabad Darweesh, Mahabat Ali, Mahdi Hussein, Maher K Zandinan, Maherah Khille, Mahmood Hamo, Mahmood Kheder Ayoob, Mahya Alqasim, Majjo Hamo Khalaf, Majow Kaso, Manal Kuly, Mando Mtro, Manji Ibrahim Dahhar, Marenah Khalaf, Marvin Sulaiman, Marwan Khalaf, Maryam Naif, Maryna Shallal, Maya K Lavin, Mayada S M Malham, Mayan H Ali, Mayan Murad Mulhem Smoki, Maysoon Borali, Mazen Suleiman, Mazin Faeedi, Meser Haje, Mihi Zaghla, Mirza B Bakr, Mirza Khalaf, Misry Adi, |

11

| | | |
|---|---|---|
| | | Miyan Khalaf, Miyasar Kalo, Miyo Murad, Mo. K., Mohsin Ali Hasan, Mohsin Alsalo, Mohsin Khudaydah Haji, Mokhles Kheder, Mourad Hesso, Muayad Yousif, Mubad Rashow, Muhand Kheder, Muhsin Aljando, Muhsin Holki, Mulhim Abdullah, Mumtaz Blasiny, Munefah Murad, Muntasir Khudhur, Muqdad Alhamy, Murad Ismael, Murad M Mousa, Murad Qasim, Murad Qizly, Murad Smoqy, N.A., Naam Joko, Naam Simoqy, Nabilyoon Nawaf Allaw, Nada Hasan Bargish, Nada Osman, Nadia Ibrahim, Nadima Mirza, Nadin Elias, Nadira Keti Broka, Naeemah Nimr, Naeif Majjo Hamo, Nafeh Kassem, Nafiya Khoudeida, Nahidah Hasan, Nahrein Kassem, Naif Alsilo, Naif Yousif Murad, Naji Majo, Najma Khalaf, Nancy Khoudieda Khalil, Nanssy Elias, Naseema Kamal Abda Dinai, Nashwan Khudidah, Nasima Haskaan, Nasima Osman, Natiq Atto Shamo, Navin Khalaf, Navin Naif, Nawaf Dahar, Nawaf Haskan, Nawaf Khalaf, Nawaf Sulaiman, Nawal Haji, Nawfee Khadeeda, Nawras Elias, Nawroz Sulaiman, Nayif Ibrahim, Nayyef Abdo, Nazar Kheder, Neam Mahmood, Nermeen Elias, Nibras Basitkey, Nidema Malko, Nissani Jndo, Nizar Rasho, Nofa Dena, Nofa Kareem Ismael, Nofa Kasem, Nora Yazdeen, Nori Khalaf, Noura Osman, Omar Haider, Omar Hussein, Omar Ismail, Omar Rashsho, Oras Osso, Ozair Al Jndo, P.K., Paiman Dna, Paris Allaw, Parker Burjus, Parween Chiyan, Pasha Rasho, Qadisyah Hussein, Qaisar Haji Ali Blasiny, Qaseema Ali, Qasim Barakat Guly, Qasim Pir, Qasim Shaabo Sulaiman Samoqi, Qassim Chomer, Ra. K., Rae. K., Raeda Ghanem, Raeed Khadida, Raghda Al Saydo, Rahan Alali, Rana Alali, Rana Khairo, Randa Khodida, Rashed Khder, Rashid Murad, Rasho Haso, Rasimia Smoqy, Rasmia Khalaf, Reema Alhamy, Ricky Namer, Rifaah Hussein, Riham Jndo, Rima Hadgi, Riyad Hesso, Roh. K., Rojeen Almahama, Rojgar Dna, Ronza Fehed, Rosa Nahamat, Rose Osman, Roza Shamo, S.A., S.A., S.K., S.S., Sa. D., Sa. H., Sa. K., Saad Faraz, Saad Ibrahim, Saad Khodida, Saada Murad, Saadi Aloso, Saado Ali, Saadoon Khudidah, Saadoon Smoqi, Saadun Issa, Saeed Salo, Sabah Barakat, Sabah Hussein, Sabah Mirzan Hasan, Sabah Qasim, Sabah Zaido, Sabreen Mahmah, Sabri Elias, Sabri Nafkosh, Saeed Bakr, Saeed Hamo, Saeed Issa, Saeed Kalo, Saeed Khalaf, Saeed Murad, Saeed Qasim, Sahar |

| | | Nafkhosh, Sahira Majoo, Saido Hesso, Saidow M Zandinan, Saifi H Smouki, Salah Omar, Salah Osman, Salam Sheikh, Salar Badeel, Saleh Khalaf, Saleh Saffuk, Saleh Saleh, Salema Merza, Salih Hasckan, Salih Rashki, Salih Saado, Salim Ido, Salim Kheder, Salim Merza, Salim Sulaiman, Sally Rashid, Salman Elias, Salwa Adee, Salwan Khodida, Sam Lincoln, Sam Qasim Mirza, Saman Ali, Saman Khalil, Saman Khodida, Samea Merza, Sameer Darweesh, Sameer Khudhur, Sameer Zandinan, Sameera Darweesh, Sameera Rasho, Samerah Osman, Sami Smoqi, Samia Findi Ahmed, Samia Smoqi, Samir Eizdin, Samirah Osman, Samo Samo, Sanaa Osman, Sanan Aldakhi, Sarab Nafkosh, Sarah Joko, Sardar Almahama, Sardar Rashid, Sari O Meskin, Sari Turki, Sarkawt Badeel, Savey Meesho Khro, Sawsan Afdi, Seno Murad, Serdar Auso, Sevi Mourad, Shafiq Shabo Abdullah, Shaha Malo, Shaha Mohammed, Shahab Bashar, Shahab Khudeeda, Shahla Alhamy, Shahnaz Alhamy, Shahnaz Murad, Shahnaz Osso, Shahrazad Jumaah, Shahrstan A Hami, Shaima A Abrahim, Shaima Shamo Kari, Shami Ibraheem, Shamia Maao, Shamo Alhamy, Shareef Murad, Sharifa Khalil, Sharo Smoqy, Sharro Gebbo, Sharro Khalaf, Shawqi Sulaiman, Shazo Al Saleem, Sheelan Jadaan, Shereen Murad, Sheren Auso, Sheren Qaso, Sherevan Alhamy, Shihab Hami, Shiri Elias Khalaf, Shirwan Chicho, Shkur Eedo, Si. D., Si. K., Siham Merza, Sinobar Badeel, Skfan Al Niamo, Sleman Smoqi, So. H., Solaf Eido Kheder Alsadun, Souriya Osman, Sozan Ajol, Sozan Khalaf, Sr. H, Stefan Khodida, Steven Alnahmo, Steven Auso, Suaad Shammo, Suad Keti, Suad Khalaf, Suad Khider, Suad Nafkosh, Sulaf Darweesh, Sulaiman Allaw, Sulaiman Antar, Sulaiman Hamo, Sulaiman Hasan, Sulaiman Sido, Sultan M Maroo, Suriyah Haji, Sy. H., Taalo Khudhur, Taha A Abdullah, Tahseen Osman, Tahsin Jihan, Talal Rasho, Tareq Darweesh, Tariq Qasim, Tawaf Merza, Thaura Smoqi, Thawra Rashawka, Trko Omar, Turkia Mahko, Ubayd Salih Nafkosh, Umayah Murad, Valentina Abrahim Qaso, Vinal Halaja, W.A., Wa. A., Wadhhah Alesou, Wadhhah Dawood, Wahida Havend, Wansa Aldkhi, Wansa Rashki, Wardah Hasan, Waseem Breem, Wisam Saado, Wlid Qaro, Y.H., Y.T., Yousif M A Zandinan, Yousif Muhamd Beeso, Yousif Nimr, Yusra Aldakhi, Zaaim Ali, Zaedo Ali, Zaeeton Haji, Zahra |

13

|  |  | Hamo, Zahra Osman, Zaidan Kheder Sulaiman, Zainab Eazden, Zaitoun Aldakhi, Zaizo Ali, Zeed Alale, Zeidan Khalaf Kasem, Zeri Hesso, Zeyed Khudhur, Zina Yazdeen, Zinah Muhi, Zirvan Alaode, Ziyad Faeedi, Ziyad Khudir, Ziyad Smoqi, Zoher Alali, Zozan Hiskan, Zubada Khudada |
|  |  | *Stallter Plaintiffs*: Christine Stallter, Chester Lee, Peter Padnos, Brent Bartels, Michelle Black for the estate of Bryan Black, Debra Gannon, Raymond Gannon, Myeshia Johnson for the estate of LaDavid Johnson, A.J. by and through her next friend Myesia Johnson, L.S.J. by and through her next friend Myeshia Johnson, L.T.J. by and through his next friend Myeshia Johnson, Cowanda Johnson, Richard Johnson, Quanika Johnson, Rishshawnda Johnson, and Michael Perozeni |
|  |  | *Fields Plaintiffs*: Tamara Fields, Estate of Lloyd Carl Fields Jr., by and through Tamara Fields as Personal Representative, Heather Gavino, Estate of James Damon Creach, by and through Heather Gavino as Personal Representative, Jackson Creach, Samantha Creach, Jayedon Creach, Kimberly Harris, Estate of Sean Copeland, by and through Kimberly Harris as Personal Representative, Estate of Brodie Copeland, by and through Kimberly Harris as Personal Representative, Austin Copeland, Maegan Copeland, Kenneth Ressman, Jerri Faye Eaves, Khalesi Love, Rhasia Love, Veda Love, Estate of Nicholas Vittorio Leslie, by and through Conrado Ignacio Leslie as Personal Representative, Conrado Ignacio Leslie, and Paola Ana Maria Leslie |
|  |  | *Wilson Plaintiffs*: Helen Jane Wilson, Valerie Wilson-Hudson, Cynthia Lahne, Melanie Ann Nicholson, Tim William Russell, Chaim Winternitz, A.W. (By And Through His Parents and Guardians Chaim Winternitz and Esther Winternitz), B.W. (By and Through Her Parents and Guardians Chaim Winternitz and Esther Winternitz), D.W. (By and Through Her Parents and Guardians Chaim Winternitz and Esther Winternitz), M.W. (By and Through Her Parents and Guardians Chaim Winternitz and Esther Winternitz), M.W. (By and Through His Parents and Guardians Chaim Winternitz and Esther Winternitz), Ester Winternitz, Faige Winternitz, Jacob Winternitz, Moshe |

14

| | | |
|---|---|---|
| | | Winternitz, Yitel Winternitz, Estate Of Justin Shults (By and Through Its Administratrix, Sheila Shell), Sheila Shell, Jeffrey Shults, Tiffany Shults-Ristine, Levi Sutton, Estate Of Stephanie Moore-Shults (By and Through Its Executor Carolyn G. Moore), Carolyn G. Moore, Geary Moore, Holly E. Wood, Estate Of James Logan Gragg (By and Through Its Executrix Glenda S. Gragg), Trella Elizabeth Newsom, Estate Of Gail Minglana Martinez (By and Through Its Heir Melchizedek Martinez), Melchizedek Martinez, Kianni Martinez, Ka.M. (By and Through Her Parent and Guardian Melchizedek Martinez), Kimo Martinez, N.M. (By and Through Her Parent and Guardian Melchizedek Martinez), Rosie T. Martinez, Maria Luisa Martinez, Angelito Minglana, Sr., Teofista Minglana, Gerard Minglana, Gilda Minglana-Harwood, Angelito Minglana, Jr., Angelo Minglana, Joseph D. Empey, Amber Orton-Empey, Joseph C. Empey, Dorothy Empey, Henry Empey, Isabelle Empey, Abraham Empey, Richard I. Norby, Pamela J. Norby, Tiffany Allred, Jason Norby, Chelsea Snell, Mason Wells, Chad S. Wells, Kymberly E. Wells, Porter J. Wells, Mia Wells, T.W. (By and Through Her Parents and Natural Guardians Chad S. Wells and Kymberly Wells), and Colby S. Wells |
| 9. | Names and addresses of Plaintiffs' representatives | Joshua D. Branson, Andrew E. Goldsmith, Lillian V. Smith, Christopher C. Goodnow, James A. Ruck, Eric J. Maier, Chase H. Robinett, Kaleb J. LeGore Kellogg, Hansen, Todd, Figel & Frederick, PLLC 1615 M St. NW Ste. 400 Washington, DC 20036 (202) 326-7945 UNITED STATES OF AMERICA<br><br>Ryan R. Sparacino, Adam J. Goldstein, Stacy Wilson Sparacino PLLC 1920 L Street NW Ste. 835 Washington, DC 20036 UNITED STATES OF AMERICA<br><br>Matthew Jason Fisher Sparacino PLLC 150 South Wacker Drive Suite 2400 Chicago, IL 60606 |

| | | 312-216-5111<br>UNITED STATES OF AMERICA<br><br>Lee Wolosky, Andrew J. Lichtman, Kathryn Bolas<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 728-8000<br>Fax: (212) 728-8111<br>UNITED STATES OF AMERICA<br><br>Todd C. Toral<br>Jenner & Block LLP<br>2029 Century Park East<br>Ste 1450<br>Los Angeles, CA 90067-2901<br>213-239-2294<br>UNITED STATES OF AMERICA<br><br>Brent Caslin<br>Jenner & Block LLP<br>515 S Flower Street<br>Suite 3300<br>Los Angeles, CA 90071<br>213-239-5100<br>UNITED STATES OF AMERICA<br><br>Jason P. Hipp, Sarah Ann Purtill<br>Jenner & Block LLP<br>1155 Avenue of the Americas<br>New York, NY 10036<br>212-891-1600<br>UNITED STATES OF AMERICA<br><br>Alyssa Bernstein, J.E. Shreve Ariail, Kyle N. Tramonte<br>Jenner & Block LLP<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001<br>202-639-6029<br>UNITED STATES OF AMERICA<br><br>Craig W. Carlson<br>Langdon D. Southworth<br>The Carlson Law Firm<br>100 East Central Texas Expressway |
|---|---|---|

16

|  |  | Killeen, TX 76541<br>254-526-5688<br>UNITED STATES OF AMERICA<br><br>Kevin L. Attridge, Jonathan E. Missner, Robert B. Gilmore, Melissa Fox<br>Stein Mitchell Beato & Missner LLP<br>2000 K Street, NW, Suite 600<br>Washington, D.C. 20006<br>Tel: (202) 737-7777<br>Fax: (202) 296-8312<br>UNITED STATES OF AMERICA<br><br>Gavriel Mairone, Oceane Maher<br>MM~LAW LLC<br>875 North Michigan Avenue, Suite 3100<br>Chicago, IL 60611<br>Tel: (312) 253-7444<br>Fax: (312) 275-8590<br>UNITED STATES OF AMERICA<br><br>Amal Clooney, Alisha Mathew<br>Law Office of Amal Clooney<br>54 Doughty Street<br>London<br>United Kingdom of Great Britain and Northern Ireland<br>(44) 204 526 1185<br><br>Joseph Tipograph, Richard D Heideman, Tracy R Kalik, Noel J. Nudelman<br>Heideman Nudelman & Kalik, PC<br>5335 Wisconsin Avenue, NW<br>Suite 440<br>Washington, DC 20015<br>703-447-3804<br>UNITED STATES OF AMERICA<br><br>Joshua D. Arisohn<br>Arisohn LLC<br>513 8th Avenue, #2<br>Brooklyn, NY 11215<br>Telephone: (917) 656-0569<br>UNITED STATES OF AMERICA<br><br>Matthew A. Girardi<br>Bursor & Fisher, P.A. |

17

| | | 50 Main Street, Suite 475 White Plains, NY 10606 Telephone: (914) 874-0708 UNITED STATES OF AMERICA<br><br>T. Michael Guiffre, John L. Murino (pro hac pending), Aryeh S. Portnoy (pro hac pending), Michael J. Williams (pro hac pending) Crowell & Moring LLP 1001 Pennsylvania Avenue, NW Washington, DC 20004-2595 Telephone: (202) 624-2500 Facsimile: (202) 628-5116 UNITED STATES OF AMERICA |
|---|---|---|
| 10. | Names of Defendants | Lafarge S.A., Lafarge Cement Holding Ltd., and Lafarge Cement Syria S.A. |
| 11. | Names and addresses of Defendants' representatives | David W. Bowker, Jonathan E. Paikin, Albinas Prizgintas, Michaela S. Wilkes Klein Wilmer Cutler Pickering Hale and Dorr LLP 2100 Pennsylvania Avenue, N.W. Washington, DC 20036 UNITED STATES OF AMERICA<br><br>Alyson Zureick Wilmer Cutler Pickering Hale and Dorr LLP 7 World Trade Center 250 Greenwich Street UNITED STATES OF AMERICA<br><br>Denis Chemla A&O Shearman 32 rue François 1er 75008 Paris FRANCE |

**12-13.  Names of the Persons to Be Examined and the Names and Addresses of Their Representatives, if Known.**

| Names of the Persons to Be Examined ("Deponents") | Names and Addresses of Deponents' Representatives |
|---|---|
| Bi Yong Chungunco | Antoine Vey<br>Vey et Associés<br>16 Boulevard Raspail<br>Paris, France 75007<br>Tel: +33 (0)1 45 44 66 82 |

## 14.    Nature and Purpose of the Proceedings and Summary of the Complaints

These proceedings consist of nine related actions pending in the Eastern District. Plaintiffs seek civil damages under the U.S. Anti-Terrorism Act, as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), for deaths and injuries arising from alleged acts of international terrorism.

Plaintiffs' Complaints allege that their injuries resulted from violent attacks carried out by two designated foreign terrorist organizations ("FTOs"), ISIS and ANF, between 2012 and 2017 in Syria, Iraq, Jordan, Turkey, France, Belgium, Spain, Libya, Niger, and Lebanon.[1]

Plaintiffs claim that Lafarge S.A., Lafarge Cyprus, and LCS ("Defendants") are civilly liable for Plaintiffs' injuries based on alleged conduct connected to a cement plant that Defendants operated in northern Syria from 2010 to 2014.  Plaintiffs allege that, amid the collapse of state authority during the Syrian civil war, Defendants continued operating the facility and entered into arrangements with armed groups operating in the region, including ISIS and ANF.  Plaintiffs further allege that Defendants made payments through intermediaries and engaged in other transactions that Plaintiffs characterize as providing financial value to ISIS and

---

[1] *See Foley v. Lafarge et al.*, No. 1:23-cv-05691 (E.D.N.Y. Aug. 5, 2024), Dkt. No. 68; *Finan v. Lafarge et al.*, No. 1:22-cv-07831 (E.D.N.Y. Mar. 4, 2026), Dkt. No. 140; *Fields v. Lafarge et al.*, No. 1:23-cv-00169 (E.D.N.Y. Mar. 23, 2026), Dkt. No. 119; *Murad v. Lafarge et al.*, No. 1:23-cv-09186 (E.D.N.Y. Aug. 1, 2024), Dkt. No. 37; *Goldman v. Lafarge et al.*, No. 1:24-cv-01043 (E.D.N.Y. Feb. 9, 2024), Dkt. No. 1; *Black v. Lafarge et al.*, No. 1:24-cv-08901 (E.D.N.Y. Dec. 30, 2024), Dkt. No. 1; *Shirley v. Lafarge et al.*, No. 1:25-cv-04248 (E.D.N.Y. Dec. 10, 2025), Dkt. No. 38; *Wilson v. Lafarge et al.*, No. 1:25-cv-01975 (E.D.N.Y. Apr. 9, 2025), Dkt. No. 1; and *Stallter v. Lafarge et al.*, No. 1:25-cv-06749 (E.D.N.Y. Dec. 5, 2025), Dkt. No. 1.

ANF, forming the basis of a civil conspiracy under United States law.  In support of these claims, Plaintiffs rely in part on Defendants' guilty plea to a material support charge in U.S. criminal proceedings, which did not involve charges of civil conspiracy or address liability for any specific terrorist attack.

Defendants deny that they are civilly liable to Plaintiffs.  In Answers to Plaintiffs' respective Complaints, Defendants have asserted affirmative defenses to Plaintiffs' claims, including that any interactions with armed groups were taken by necessity or under duress, and that Defendants withdrew from any alleged conspiracy by no later than September 2014.  *See, e.g.*, *Foley v. Lafarge et al.*, No. 1:23-cv-05691 (E.D.N.Y. Mar. 3, 2026), Dkt. No. 155 at 158-61.[2]  The parties are now conducting discovery regarding Plaintiffs' claims.

**15.      Evidence to Be Obtained and the Purpose of the Evidence Sought**

This Court respectfully requests that the appropriate judicial authority in France cause the appropriate orders to be issued to direct the deposition, under oath, of the Witness to be used at trial in these proceedings.  This Court further respectfully requests that the appropriate judicial authority in France cause the appropriate orders to be issued to direct the production of the Witness's documents to be used at trial in these proceedings.

As described, *supra* Section 14, Plaintiffs assert claims under the U.S. Anti-Terrorism Act alleging that Defendants entered into a civil conspiracy with ISIS and ANF.  Defendants deny those allegations and contend that Plaintiffs cannot establish the existence of any conspiratorial

---

[2]Defendants asserted similar or identical affirmative defenses in Answers to Plaintiffs' operative Complaints in each of the above-captioned actions.  *See Finan v. Lafarge et al.*, No. 1:22-cv-07831 (E.D.N.Y. Mar. 25, 2026), Dkt. No. 148 at 140-42; *Fields v. Lafarge et al.*, No. 1:23-cv-00169 (E.D.N.Y. Mar. 25, 2026), Dkt. No. 124 at 148-51; *Murad v. Lafarge et al.*, No. 1:23-cv-09186 (E.D.N.Y. Feb. 28, 2026), Dkt. No. 86 at 537-39; *Goldman v. Lafarge et al.*, No. 1:24-cv-01043 (E.D.N.Y. Mar. 18, 2026), Dkt. No. 55 at 102-04; *Black v. Lafarge et al.*, No. 1:24-cv-08901 (E.D.N.Y. Mar. 25, 2026), Dkt. No. 53 at 133-36; *Shirley v. Lafarge et al.*, No. 1:25-cv-04248 (E.D.N.Y. Mar. 25, 2026), Dkt. No. 63 at 146-49; *Wilson v. Lafarge et al.*, No. 1:25-cv-01975 (E.D.N.Y. Mar. 18, 2026), Dkt. No. 53 at 152-54; and *Stallter v. Lafarge et al.*, No. 1:25-cv-06749 (E.D.N.Y. Feb. 20, 2026), Dkt. No. 10 at 135-38.

agreement between Defendants and ISIS or ANF, or a legally sufficient connection between Defendants' alleged conduct and the terrorist attacks at issue.  The testimony and documents sought from the Witness are material and relevant to these disputed issues and to Defendants' defenses.

Defendants have satisfied this Court that the Witness may have personal knowledge of matters material and relevant to the above-captioned proceedings.  Because the Witness resides outside the subpoena power of this Court and therefore cannot be compelled to testify at trial, Defendants seek her deposition testimony for use at trial.

The Witness's background, education, and employment history are relevant to assessing the Witness's role, responsibilities, and potential access to information concerning the matters at issue in these proceedings.  The Witness's personal preparation for the deposition is likewise relevant to evaluating the basis and scope of the testimony to be offered.  *See* Topic A, *infra*.

Defendants seek the Witness's testimony concerning her knowledge of the security situation facing Defendants in Syria, including the broader security conditions, the presence and activities of armed groups, and the risks associated with operating in an active conflict zone.  *See* Topic B, *infra*.  Defendants further seek testimony regarding the business environment in which Defendants were operating, including the risks attendant to continued operations amid civil war, as well as the risks facing Defendants' employees, including, but not limited to, threats of violence, detention, or kidnapping.  *See* Topics B-D, *infra*.  This testimony is relevant to Defendants' affirmative defenses, including, but not limited to, that any arrangement between Defendants and FTOs was compelled under duress or out of necessity.

The Witness's testimony concerning ISIS's ideology, including its stated aim to establish a caliphate, and the Witness's understanding of Defendants' assessment of al-Qaeda in Iraq

21

("AQI"), ISIS, or ANF as terrorist organizations, as well as the armed groups with whom intermediaries such as Firas Tlass or Amro Taleb communicated, is relevant to issues Plaintiffs have placed in dispute regarding Defendants' knowledge and intent. Plaintiffs' allegations rest in part on assertions of Defendants' shared purpose or alignment with ISIS and ANF. Accordingly, at trial, Defendants plan to deny that they shared terrorist objectives or acted out of allegiance to any terrorist organization. The Witness's testimony will assist the parties in evaluating how Defendants understood the nature of the groups and any relevant information conveyed through intermediaries during the relevant period. *See* Topics E-F, *infra*.

The Witness's testimony regarding Defendants' investments in Syria, the financial status of those investments, and Defendants' abandonment of the Jalabiyeh cement plant—including any instructions provided to employees regarding reentry—is relevant to Defendants' affirmative defense regarding withdrawal and to the temporal scope of any alleged agreement. At trial, Defendants plan to contend that they ceased operations in Syria and abandoned the plant by September 2014, after which ISIS seized the facility, and that such conduct constituted withdrawal from any alleged conspiracy and forecloses liability for subsequent acts by others after that date. Testimony concerning the financial and operational context of Defendants' investments may further assist the parties in determining the nature and timing of Defendants' departure from Syria. *See* Topics G-H, *infra*.

Finally, the Witness's knowledge of and participation in Defendants' or Holcim Ltd.'s internal investigation regarding Defendants' activities in Syria, as well as any French civil or criminal proceeding concerning those activities, is relevant to understanding what information the Witness previously provided, reviewed, or assessed concerning the events at issue. The Witness may have given testimony, statements, or produced documents in those proceedings that

22

bear on the factual issues disputed in these actions and that may not otherwise be available through U.S.-based discovery.  Such testimony may assist the parties and the Court in identifying, contextualizing, and authenticating evidence and in ensuring that the record on which Defendants' defenses and Plaintiffs' claims will be tried is as fulsome as possible.  *See* Topic I, *infra*.

Defendants have also satisfied this Court that the Witness may possess documents that are material and relevant to the above-captioned proceedings and cannot be obtained from other sources within the Court's jurisdiction.  Defendants seek production of documents maintained by the Witness personally that reflect the Witness's contemporaneous knowledge of, and involvement in, Defendants' operations in northern Syria, including communications, notes, reports, and other materials created, received, or retained outside formal company systems.  Such materials include records of meetings and site visits; communications with armed groups, intelligence services, or government officials; and personal correspondence concerning security conditions, operational risks, and threats to Defendants' personnel.

Defendants also seek documents reflecting communications with and among senior management and other individuals regarding whether to continue operations, how to manage security concerns, and decisions relating to the evacuation and abandonment of the Jalabiyeh cement plant, where those communications were conducted or preserved on personal devices or accounts.  Moreover, Defendants seek documents in Witness's personal possession that bear on threats, coercion, or other interactions with armed groups.  These documents are relevant to evaluating Plaintiffs' claims alleging that Defendants reached a conspiratorial agreement with ISIS and ANF, as well as to Defendants' affirmative defenses, including necessity, duress, and withdrawal.  They are also relevant to ensuring that the Court has a complete evidentiary record,

23

particularly where responsive materials are not available within Defendants' institutional

databases in which discovery is ongoing.  Defendants, therefore, seek the documents directly

from the Witness.  Defendants intend to use these documents at trial.

**16.    Questions to Be Put to The Persons to Be Examined or Statement of The Subject Matter about Which They Are to Be Examined**

    A.    The Witness's educational background; employment history; professional experience; employment, consulting, termination, cooperation or severance agreements with Defendants or Holcim, Ltd.; relationships with Defendants' current and former employees; and personal preparation for the deposition.

    B.    The Witness's knowledge of the security situation facing Defendants in Syria.

    C.    The Witness's knowledge of the business environment in which Defendants were operating and associated risks.

    D.    The Witness's knowledge of risks facing Defendants and their employees in Syria, including, but not limited to, arrests, threats, and kidnapping.

    E.    The Witness's knowledge of ISIS's jihadist ideology, including its aim to establish a caliphate, and the Witness's understanding of Defendants' assessment of AQI, ISIS, or ANF as terrorist organizations.

    F.    The Witness's knowledge of various armed groups with whom Firas Tlass or Amro Taleb communicated.

    G.    The Witness's knowledge about Defendants' abandonment of the plant and instructions provided to Defendants' employees regarding reentering the plant.

    H.    The Witness's knowledge of Defendants' investments in the plant in Syria and the financial status of those investments.

    I.    The Witness's knowledge of and participation in Defendants' or Holcim Ltd.'s internal investigation regarding Defendants' activities in Syria or Defendants' direct or indirect funding of ISIS or ANF.

**17.    Documents or Other Property to Be Inspected**

Defendants seek the documents described in the requests for production attached as

Exhibit 1 to this Request.  The Court notes that France has made a declaration under Article 23

of the Hague Convention, modified by communication of 19 January 1987, by which France

24

will execute Letters of Request issued for the purpose of pre-trial discovery of documents only where the requested documents are *limitativement énumérés* in the Letter of Request and have a *lien direct et précis* with the subject matter of the litigation.

The requests set forth in Exhibit 1 fall within the scope of France's Article 23 declaration as modified, in that: (i) each request identifies the document or category of documents by date or date range, by author or recipient where known, and by subject matter, with the specificity required by the declaration; (ii) each request bears a direct and precise relationship to the claims and defenses placed in issue by the parties in the above-captioned proceedings, as described in Section 15 above, and in particular to (a) Plaintiffs' allegations of a civil conspiracy between Defendants and the foreign terrorist organizations ISIS and ANF; (b) Defendants' affirmative defenses of necessity, duress, and withdrawal from any alleged conspiracy by September 2014; and (c) the temporal scope of Defendants' operations and abandonment of the Jalabiyeh cement plant; (iii) each request seeks documents whose existence and relevance have been established through prior discovery in the U.S. proceedings, in related French criminal proceedings, or in the public record of Defendants' guilty plea in U.S. criminal proceedings, such that the requests are not exploratory in nature but are directed to identified materials; (iv) the documents sought are not available from sources within the jurisdiction of this Court, in that they reside with a former employee of Defendants whose personal records and communications are not within Defendants' institutional custody.

The Court respectfully invites the requested authority to execute the present Request in accordance with the foregoing.  Should the requested authority, on review, consider that any particular request requires further specification or narrowing in order to fall within the scope of France's Article 23 declaration, the Court and the parties stand ready, through their French

25

counsel of record designated in Section 19(b), to provide such further specification or to confer with the *juge commis* before execution.

**18.    Any Requirement That the Evidence Be Given on Oath or Affirmation and Any Special Form to Be Used**

The examination of the witness identified in Section 12 above will be taken under oath before a judge appointed by the French court, in accordance with article 735 *et seq*. of the French Code of Civile Procedure and Chapter I of the Hague Convention, empowered to administer oaths and take testimony.  This Court will be content if the requested Court appoints a duly qualified and authorized Examiner.

This Court further requests that you, by your proper and usual process, require that the testimony given during the above-described deposition be given under the following oath or affirmation: "I [WITNESS'S NAME] swear that the testimony that I am about to give is the truth, the whole truth, and nothing but the truth."

**19.    Special Methods or Procedure to Be Followed**

This Court respectfully requests that the appropriate judicial authority in France permit the Witness's deposition to be conducted according to the following special methods and procedure, pursuant to Article 9, paragraph 2 of the Hague Convention of 18 March 1970, which provides that the requested authority shall follow a special method or procedure requested by the requesting authority unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties.  The Court submits that the special methods and procedure requested below are consistent with Articles 735 to 748 of the French Code of Civil Procedure, and in particular with Article 739.

26

(a) **Pre-execution conference.**  This Court respectfully requests that, prior to the execution of the present Letter of Request, the *juge commis* convene a pre-execution conference, in person or by video-conference, with French counsel for the parties and counsel for the Witness, for the purpose of fixing: (i) the date, time, place and expected duration of the deposition; (ii) the allocation of time between Defendants (as the requesting party) and Plaintiffs; (iii) the language(s) of the proceedings and the arrangements for interpretation; (iv) the arrangements for stenographic transcription and audiovisual recording; (v) the modalities for the use of exhibits during the examination; (vi) the procedure for the recording of objections; (vii) the application of the Confidentiality Order and the Order and Stipulation Amending the Confidentiality Order entered by this Court (attached as Exhibit 3), translated into French; and (viii) any further protective measures that the *juge commis* considers appropriate.  The parties are encouraged to cooperate and agree, as much as possible, on the logistical items listed above, and this Court requests that the *juge commis* implement any party agreement on these issues insofar as possible.

(b) **Appearance of French counsel.**  This Court respectfully requests, in accordance with Article 743 of the French Code of Civil Procedure, that the *juge commis* permit French counsel of record for Defendants and for Plaintiffs, designated below, to appear before the *juge commis* both at the pre-execution conference and at the execution of the Letter of Request, and to make oral and written submissions on procedural and logistical matters arising in connection with the deposition.  For Defendants: Maître Denis Chemla, A&O Shearman, 32 rue François 1er, 75008 Paris, France; For Plaintiffs: Maître Noëlle Lenoir, 28 Boulevard Raspail 75007 Paris, France; For the Witness: Maître Antoine Vey, Vey et Associés, 16 Boulevard Raspail, Paris, France 75007.

**(c) Mode of examination.** This Court respectfully requests that, pursuant to Article 9 of the Convention and consistent with Article 739 of the French Code of Civil Procedure, the examination of the Witness be conducted in a form approximating the practice of the courts of the United States, in that:

(i) Defendants' counsel, as the requesting party, will conduct direct examination of the Witness; (ii) Plaintiffs' counsel will conduct cross-examination; (iii) Defendants' counsel will conduct redirect examination, and Plaintiffs' counsel may conduct recross examination; (iv) Counsel for the Witness may pose questions to the Witness as appropriate, and may interpose objections; (v) Counsel for the parties may, at any time, ask questions of the Witness directly under the supervision of the *juge commis*; (vi) Counsel for the parties may, during the examination, make exhibits or other documents available to the Witness and ask questions concerning those documents; (vii) Counsel for the parties may interpose objections on the record, the objections shall be noted by the stenographer to be decided later by this Court, as may be needed, and the Witness will answer the question subject to the objection unless the *juge commis*, upon hearing argument, directs otherwise; (viii) Questions of privilege (including French legal professional privilege, U.S. attorney-client privilege, the U.S. work-product doctrine, and the U.S. Fifth Amendment privilege against self-incrimination) shall be raised before the *juge commis* in the first instance, with any unresolved question reserved for determination by the Court that issued the present Letter of Request.

**(d) Oath.** This Court requests that the testimony be given under the following oath or affirmation: "I, [Witness's Name], swear that the testimony I am about to give is the truth, the

whole truth, and nothing but the truth," administered before the *juge commis* in accordance with the practice of the French courts.

(e) **Language and interpretation.**  This Court requests that the examination be conducted in English, with simultaneous interpretation into French provided by a qualified court interpreter for the benefit of the Witness and the *juge commis*, should the Witness so prefer, and that the Witness's answers be rendered in English.  If the Witness elects to testify in French, simultaneous interpretation into English shall be provided, and a translation into French of the English-language transcript shall be provided to the witness for review, and to the *juge commis*.

(f) **Audiovisual recording**. This Court further respectfully requests, pursuant to Article 9, paragraph 2 of the Convention and to the extent compatible with French law, in particular Article 739 of the French Code of Civil Procedure and the practice of the *juge commis*, that the deposition be recorded by audiovisual means in addition to stenographic transcription, and that copies of the audiovisual recording and the transcript be transmitted, through the requested authority, to the requesting authority and to counsel for the parties who request them.

(g) **Continuity with deposition protocol**. The deposition shall be conducted, to the extent consistent with the directions of the *juge commis* and with the present Letter of Request, in accordance with the Deposition Protocol entered by this Court on March 27, 2026 in *Foley v. Lafarge et al.*, No. 1:23-cv-05691 (E.D.N.Y.), Dkt. No. 162, and identically entered in each of the related actions, attached hereto as Exhibit 2[3].

---

[3]  The same deposition protocol was entered on March 27, 2026, in each of the above-captioned actions, including *Finan v. Lafarge et al.*, No. 1:22-cv-07831 (E.D.N.Y.), Dkt. No. 155; *Fields v. Lafarge et al.*, No. 1:23-cv-00169 (E.D.N.Y.), Dkt. No. 128; *Murad v. Lafarge et al.*, No. 1:23-cv-09186 (E.D.N.Y.), Dkt. No. 106; *Goldman v. Lafarge et al.*, No. 1:24-cv-01043 (E.D.N.Y.), Dkt. No. 65; *Black v. Lafarge et al.*, No. 1:24-cv-08901 (E.D.N.Y.), Dkt. No. 60; *Shirley v. Lafarge et al.*, No. 1:25-cv-04248 (E.D.N.Y.), Dkt. No. 70; *Wilson v. Lafarge et al.*, No. 1:25-cv-01975 (E.D.N.Y.), Dkt. No. 60; and *Stallter v. Lafarge et al.*, No. 1:25-cv-06749 (E.D.N.Y.), Dkt. No. 37.

**(h) Privileges and protections**. Neither the present Letter of Request, the transmission of documents pursuant to the Hague Convention, nor any examination conducted in execution hereof, including all transcripts and recordings of the Witness's deposition, shall waive, or be deemed or argued to waive, the attorney-client privilege, the work product doctrine, French legal professional privilege, or any other privilege, right, protection, or prohibition that may apply to that evidence under the laws of France, the United States of America, or the State of New York, including the privilege against self-incrimination under the Fifth Amendment of the U.S. Constitution.

**(i) Confidentiality.** The deposition and the production of documents shall be conducted subject to the Confidentiality Order entered by this Court (*see Foley v. Lafarge et al.*, No. 1:23-cv-05691 (E.D.N.Y.), Dkt. No. 42-1) and the Order and Stipulation Amending the Confidentiality Order entered on April 6, 2026 (*see Foley v. Lafarge et al.*, No. 1:23-cv-05691 (E.D.N.Y.), Dkt. No. 165), each of which is attached hereto, as well as in French translation, as Exhibit 3.[4]  The parties stand ready to submit to the *juge commis* any further protective measures that the *juge commis* considers necessary.

**(j) Translations.**  All documents transmitted herewith, including the present Letter of Request, the requests for production of documents at Exhibit 1, the Deposition Protocol at Exhibit 2, and the Confidentiality Order and amendment at Exhibit 3, are accompanied by French translations.

---

[4] The same Order and Stipulation Amending the Confidentiality Order (*see*, *e.g.*, *Foley* Dkt. No. 165) was entered on April 6, 2026, in each of the above-captioned actions, including: *Finan v. Lafarge et al.*, No. 1:22-cv-07831 (E.D.N.Y.), Dkt. No. 157; *Fields v. Lafarge et al.*, No. 1:23-cv-00169 (E.D.N.Y.), Dkt. No. 130; *Murad v. Lafarge et al.*, No. 1:23-cv-09186 (E.D.N.Y.), Dkt. No. 108; *Goldman v. Lafarge et al.*, No. 1:24-cv-01043 (E.D.N.Y.), Dkt. No. 69; *Black v. Lafarge et al.*, No. 1:24-cv-08901 (E.D.N.Y.), Dkt. No. 62; *Shirley v. Lafarge et al.*, No. 1:25-cv-04248 (E.D.N.Y.), Dkt. No. 72; *Wilson v. Lafarge et al.*, No. 1:25-cv-01975 (E.D.N.Y.), Dkt. No. 62; and *Stallter v. Lafarge et al.*, No. 1:25-cv-06749 (E.D.N.Y.), Dkt. No. 39.

**20.    The Fees and Costs Incurred Which Are Reimbursable under the Second Paragraph of Article 14 or Under Article 26 of The Convention**

All costs of this Hague Convention process will be borne by the parties.  Each party will be responsible for the fees and expenses, if any, of its own attorneys relating to any proceedings arising from this Hague Convention process.

This Court expresses its appreciation to the Ministère de la Justice for its courtesy and assistance in this matter.

Dated:

_____, 2026
Brooklyn, New York



_____
The Hon. Peggy Kuo
United States Magistrate Judge
Eastern District of New York

31

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARISS FINAN, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 22-cv-07831-NGG-PK |
| DIANE FOLEY, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 23-cv-05691-NGG-PK |
| JASON BLACK, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 24-cv-08901-NGG-PK |
| SUSAN SHIRLEY, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 25-cv-04248-NGG-PK |

1

| | |
|---|---|
| NADIA MURAD, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 23-cv-09186-NGG-PK |
| ESTATE OF AVRAHAM GOLDMAN, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 24-cv-01043-NGG-PK |
| HELEN JANE WILSON, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 25-cv-01975-NGG-PK |
| CHRISTINE STALLTER, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAFARGE S.A., *et al.*,<br><br>    Defendants. | Case No. 25-cv-06749-NGG-PK |

| | |
|---|---|
| TAMARA FIELDS, *et al.*,<br><br>              Plaintiffs,<br><br>              v.<br><br>LAFARGE S.A., *et al.*,<br><br>              Defendants. | Case No. 23-cv-00169-NGG-PK |

### DEFENDANTS' REQUESTS FOR PRODUCTION FROM CERTAIN NON-PARTY WITNESSES

Pursuant to the Letter of Request to which these Requests are attached, Defendants request that Bi Young Chungunco (the "Witness") produce for inspection or copying the Documents set forth below that are in the Witness's possession, custody, or control, whether or not prepared by the Witness or any other Person, as soon as possible, to the offices of Maître Denis Chemla, A&O Shearman, 32 rue François 1er, 75008 Paris, France.

### DEFINITIONS

1.     Defendants hereby adopt by reference all uniform definitions provided by Local Civil Rule 26.3.

2.     "Agent" means any Person acting on Your behalf or empowered to act on Your behalf, whether expressly or impliedly authorized.  "Agent" includes, but is not limited to, all Financial Institutions with whom You hold, held, maintain, or maintained an Account.

3.     "ANF" means the al-Nusrah Front and all aliases and predecessors thereof, including al-Qaeda in Iraq ("AQI"), Jabhat al-Nusrah, Jabhet al-Nusra, The Victory Front, and Al-Nusrah Front for the People of the Levant, or any alias You used internally to refer to this foreign terrorist organization, including all members or Agents of this organization.

3

4. "Defendants" refers to Lafarge S.A. ("Lafarge"), Lafarge Cement Holding Limited ("Lafarge Cyprus"), and Lafarge Cement Syria S.A. ("LCS"), collectively and separately, including, but not limited to, any predecessors or successors, any direct or indirect parents, subsidiaries, or Affiliates, and other Related entities, Agents, or other Person(s) acting or purporting to act with or on its or their behalf.

5. "Holcim" means Holcim, Ltd. or Holcim Group, including, but not limited to, any predecessors or successors, any direct or indirect parents, subsidiaries, or Affiliates, and other Related entities, Agents, or other Person(s) acting or purporting to act with or on its or their behalf.

6. "ISIS" means the Islamic State of Iraq and Syria and all aliases and predecessors thereof, including AQI, Islamic State of Iraq and the Levant, Islamic State, and ISIL, or any alias You used internally to refer to this foreign terrorist organization, including all members or Agents of any of these organizations.

7. "Related to" or "relating to" means, without limitation, the following concepts: concerning, constituting, regarding, referring to, describing, discussing, embodying, evidencing, memorializing, mentioning, recording, studying, analyzing, evaluating, estimating, reflecting, pertaining to, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, supporting, refuting, responsive to, or otherwise involving, in whole or in part.

8. "You" or "Your" refers to the Witness individually and any Agents or other Person(s) acting or purporting to act with or on behalf of the Witness.

9. The definitions set forth above shall apply to all Requests.

4

## REQUESTS FOR PRODUCTION

### Request for Production No. 1:

The Documents listed in Table No. 1 below.

*Table No. 1*

| Document Requested | Date of Document (approximate, if known) | Witnesses Known to Be Involved |
|---|---|---|
| ISIS arrest warrant for Bruno Pescheux and Jacob Waerness, discussed in an email from Amro Taleb to Bruno Lafont on September 6, 2013 | NA | Bruno Lafont; Bruno Pescheux; Jean-Claude Veillard; Hélène Seguin; Christian Herrault |
| All Documents and Communications relating to the hiring of Jacob Waerness as LCS Risk Manager | September 2011 | Jean-Claude Veillard; Bruno Pescheux; Christian Herrault |
| All Documents and Communications relating to the termination of Amro Taleb's contract with LCS as an environmental consultant in July 2012 | July 2012 | Bruno Pescheux; Jean-Claude Veillard; Valéry Mirakoff; Christian Herrault |
| All Documents and Communications relating to the meeting in Istanbul with PYD representatives in late 2012 | Mid to end of 2012 | Bruno Pescheux; Jean-Claude Veillard; Hélène Seguin; Christian Herrault |
| All Documents and Communications from Audi Bank relating to the denial of LCS's request to open an Egyptian bank account in LCS's name | June 2013 | Valéry Mirakoff; Bruno Pescheux; Christian Herrault |

5

| Document Requested | Date of Document (approximate, if known) | Witnesses Known to Be Involved |
|---|---|---|
| Arrest warrant for Bruno Pescheux from ANF mentioned in an email from Amro Taleb | August 2013 | Bruno Pescheux; Jean-Claude Veillard; Hélène Seguin; Christian Herrault |
| All Documents and Communications relating to the meeting with Amro Taleb in Beirut in August 2013 | August 2013 | Bruno Pescheux; Jean-Claude Veillard; Christian Herrault |
| All Documents and Communications relating to the hiring of Ahmad Jaloudi as LCS Risk Manager | September 2013 | Jean-Claude Veillard; Hélène Seguin; Bruno Pescheux; Christian Herrault |
| All Documents and Communications relating to the visit to Gaziantep, Turkey from October 12-14, 2014, including notes taken during interviews of Defendants' employees | October 16, 2014 | Hélène Seguin; Frédéric Jolibois; Jean-Claude Veillard; Christian Herrault |
| All Documents and Communications from Ahmad Jaloudi to Bruno Pescheux relating to Jaloudi's meetings with a "senior leader" of the Islamic State in Arraqa mentioned in a March 9, 2014 email from Jaloudi to Jean Claude Veillard | March 2014 | Bruno Pescheux; Jean-Claude Veillard; Christian Herrault |
| All Communications from Nabil Sandook to Firas Tlass, Amro Taleb, Ahmad Jamal (and other ISIS-linked distributors) | September 2013 – May 2014 | Nabil Sandook; Bruno Pescheux; Jean-Claude Veillard; Christian Herrault |
| All Communications relating to LCS personnel evacuation from the Jalabiyeh Plant | September 2014 | Bi Yong Chungunco; Frédéric Jolibois; Jean-Claude Veillard; Hélène Seguin; Christian Herrault |

| Document Requested | Date of Document (approximate, if known) | Witnesses Known to Be Involved |
|---|---|---|
| All Communications with Bruno Lafont relating to the decision not to shut down the Jalabiyeh Plant in summer 2014 | May – September 2014 | Christian Herrault; Bruno Pescheux; Jean-Claude Veillard; Frédéric Jolibois |
| All Communications with Jean-Claude Veillard relating to the decision not to shut down the Jalabiyeh Plant in summer 2014 | May – September 2014 | Christian Herrault; Jean-Claude Veillard; Bruno Pescheux; Frédéric Jolibois |
| All Communications with Frederic Jolibois relating to the decision not to shut down the Jalabiyeh Plant in summer 2014 | May – September 2014 | Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard |
| All Communications with Frederic Jolibois leading up to evacuation of the Jalabiyeh Plant in September 2014 | August and September 2014 | Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard; Hélène Seguin |
| All Communications with Jean-Claude Veillard leading up to evacuation of the Jalabiyeh Plant in September 2014 | August and September 2014 | Christian Herrault; Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard; Hélène Seguin |
| All Communications with Bruno Lafont leading up to evacuation of the Jalabiyeh Plant in September 2014 | August and September 2014 | Christian Herrault; Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard; Hélène Seguin; Bruno Lafont |
| All Communications relating to Chungunco's knowledge of indirect relations with ISIS | August 2014 – September 2014 | Bi Yong Chungunco; Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard |
| Lists of payments to armed groups shared by Firas Tlass | July 2012 – December 2014 | Burno Pescheux; Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard |

7

| Document Requested | Date of Document (approximate, if known) | Witnesses Known to Be Involved |
|---|---|---|
| All Communications with Jean-Jérôme Khodara relating to the UN resolution in summer 2014 and the subsequent change in Tlass's contract | August 2014 – December 2014 | Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard |
| All Communications with intelligence officers relating to the security situation in northern Syria | July 2014 – February 2015 | Jean-Claude Veillard; Hélène Seguin; Christian Herrault |
| All Communications with Ahmad Jaloudi relating to armed groups and the security situation in Northern Syria | September 2013 – October 2015 | Jean-Claude Veillard; Hélène Seguin; Christian Herrault; Bruno Pescheux; Frédéric Jolibois |
| All Communications relating to Lafarge's public statements on the evacuation from Syria | November 2015 | Nicolas Vaniet; Frédéric Jolibois; Jean-Claude Veillard; Bruno Lafont; Christian Herrault |
| All Documents and Communications including, but not limited to, meeting notes, relating to Lafarge S.A. Security Committee meetings from January 2012 through December 2015. | January 2012 – December 2015 | Christian Herrault; Hélène Seguin; Jean-Claude Veillard; Bruno Lafont; Bi Yong Chungunco; Éric Olsen |
| All Communications with government officials regarding the Jalabiyeh Plant and the security situation in Syria | September 2013 – December 2015 | Jean-Claude Veillard; Frédéric Jolibois; Christian Herrault; Bruno Pescheux |
| All Documents and Communications, including meeting notes, relating to meetings with intelligence officers and government officials | September 2013 – December 2015 | Jean-Claude Veillard; Hélène Seguin; Christian Herrault |

8

| Document Requested | Date of Document (approximate, if known) | Witnesses Known to Be Involved |
|---|---|---|
| All Communications with Firas Tlass after the Jalabiyeh Plant was abandoned | September 2014 – December 2015 | Christian Herrault; Frédéric Jolibois; Jean-Claude Veillard |

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARISS FINAN, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 22-cv-07831-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| DIANE FOLEY, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 23-cv-05691-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| JASON BLACK, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 24-cv-08901-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| SUSAN SHIRLEY, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 25-cv-04248-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |

|  |  |
|---|---|
| NADIA MURAD, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 23-cv-09186-NGG-PK |
| ESTATE OF AVRAHAM GOLDMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 24-cv-01043-NGG-PK |
| HELEN JANE WILSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 25-cv-01975-NGG-PK |
| CHRISTINE STALLTER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LAFARGE S.A., *et al.*,<br><br>Defendants. | Case No. 25-cv-06749-NGG-PK |

TAMARA FIELDS, *et al.*,

        Plaintiffs,

        v.

LAFARGE S.A., *et al.*,

        Defendants.

Case No. 23-cv-00169-NGG-PK

**STIPULATION AND ORDER**
**ESTABLISHING DEPOSITION PROTOCOL AND USE OF DISCOVERY IN**
**RELATED ACTIONS**

Consistent with Federal Rule of Civil Procedure ("FRCP") 30, the Parties in the nine above-captioned matters (the "Related Actions") jointly proposed a protocol (the "Protocol") to govern depositions and use of discovery in these Actions. After reviewing the Protocol, this Court adopts the Parties' proposal. The following Stipulation and Order Establishing Deposition Protocol And Use Of Discovery In Related Actions ("Order") shall apply to and govern depositions, document productions, interrogatory responses, and responses to requests for admission in the Related Actions.

\*\*\*

**I.     GENERAL PROVISIONS**

1.     Except as specifically set forth herein, this Order does not alter or affect the applicability of the FRCP, Local Rules for the United States District Court for the Eastern District of New York ("LR"), Federal Rules of Evidence ("FRE") or applicable law.

2.     All documents that have been or will be produced by a Party in any Related Action are hereby deemed produced in all Related Actions, except that documents that are specifically designated by the producing Party as being produced in only one or more Actions shall not be deemed produced in any other Related Action. The Parties shall endeavor to share responses to

- 1 -

interrogatories and requests for admission that they provide in each Related Action with counsel in the other Related Actions. Interrogatories and requests for admission and the responses to them served in any of the *Finan*, *Foley*, *Black*, *Shirley*, *Murad*, *Goldman*, and *Stallter* Actions are effective in each of those actions, but not in the *Wilson* and *Fields* Actions. Interrogatories and requests for admission and the responses to them served in either of the *Wilson* and *Fields* Actions are effective in both of those actions, but not in the *Finan*, *Foley*, *Black*, *Shirley*, *Murad*, *Goldman*, and *Stallter* Actions.

3. A fact or third-party deposition taken in any Related Action is hereby deemed taken in all Related Actions. An expert deposition taken in any Action is hereby deemed taken in all the Related Actions where that expert is designated as an expert.

4. All depositions, documents, interrogatory responses, and responses to requests for admission are subject to the Court's Confidentiality Orders in each Related Action.

## II. DEPOSITIONS

5. Absent special circumstances or unless otherwise modified by mutual agreement, the terms set forth in this Order govern all depositions in each of the Related Actions, including but not limited to fact depositions (including 30(b)(6) depositions) and expert depositions (to the extent an expert is designated to testify in more than one Related Action), except that nothing in this Order is intended to or shall be a basis for rescheduling the already-scheduled deposition of Guillaume Roux.

6. The Parties will work cooperatively and in good faith to schedule depositions. Parties shall provide reasonable written notice stating the date, time, place, witness[1] identity, and any document requests pursuant to FRCP 30. Parties will use their best efforts to make witnesses

---

[1] The term "witness" as used in the Protocol is equivalent to deponent.

available for deposition at a mutually agreeable time and without undue delay.  As a general matter, fact witnesses will be deposed in the vicinity of their home or work.  If a witness is a former employee of any Party and is not represented by counsel to any Party, upon receipt of a deposition notice for the former employee, that Party shall, within 14 business days of the deposition notice, provide the date of departure and last known address of the former employee, whether the Party's counsel can accept service of the notice or whether a subpoena to the former employee will be necessary, whether the Party's counsel will be representing that Party in connection with the deposition and, if not, the name and contact information for the witness's counsel or that the witness is unrepresented (or that the representation status is unknown).  Nothing in the foregoing sentence is intended to or shall prevent any Party from seeking to obtain the deposition of such a witness by subpoena or other means.

7.      All deposition subpoenas will be served on all Parties simultaneously with service on the witness.  If the subpoena also calls for the production of documents, electronically stored information, or tangible things, then in accordance with FRCP 45(a)(4), the Party serving the subpoena must first provide a notice and copy of the subpoena to each Party before the subpoena is served on the person to whom it is directed.  If a Party serves a subpoena for the production of documents and commanding attendance at a deposition, the Party serving that subpoena must schedule the deposition for a date at least 14 days after the return date for the document subpoena, and if the Party serving that subpoena agrees to extend the date of production for the document subpoena in a way that would result in fewer than 14 days between the extended production date and the date scheduled for the deposition, the date scheduled for the deposition must be postponed to be at least 14 days following the extended production date, unless all parties consent to fewer than 14 days.

- 3 -

8.      Unless otherwise stipulated by the Parties, depositions will be conducted in-person; the Parties are free to provide video conference access during the deposition, so long as the defending and any questioning counsel attend in-person.

9.      Other than for expert and named plaintiffs' depositions, counsel for all Parties and their experts are entitled to attend all depositions, including any non-Party depositions, and may cross-examine witnesses in accordance with the terms of the Protocol below and obtain a copy of the deposition transcript thereof.  Fact witnesses are not permitted to attend the depositions of any other witness, except that any minor who is deposed may be accompanied by a parent or guardian, even if that parent or guardian is also an actual or potential fact witness.  If the witness is an expert, only Parties and their counsel in the Related Action in which the expert is designated may attend.

10.      If information is subject to the Confidentiality Order such that it cannot be disclosed to certain attendees or participants in a deposition, the attendee or participant shall not be permitted to participate in the portions of the deposition where such information subject to the Confidentiality Order is discussed and shall not be entitled to obtain a copy of the portion of the transcript containing such information and testimony.

11.      The first noticing or subpoenaing Party will be responsible for securing and covering any fees and costs for the deposition location, videographer, and court reporter.  The first noticing or subpoenaing Party will ensure that a video or audio link to the live deposition is available for counsel who are permitted to attend but do not intend to examine the witness.  No participant in a deposition—i.e., no deponent, defending counsel, or questioning counsel—may participate in an in-person deposition remotely, except by consent of the Parties.

**A. Number & Time Limits for Depositions**

12.      The Parties agree to meet and confer regarding modifications to the limits on the number of depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(i).

- 4 -

13.     As a general matter, Party depositions, which include 30(b)(6) depositions, and expert depositions shall last no more than **7** hours.[2]  If there are Plaintiffs from more than one Related Action seeking to ask questions, they shall coordinate and divide the available time among themselves.  The non-noticing side may cross-examine the witness at the conclusion of direct examination for up to 1 hour regardless of whether the cross-examination extends past the applicable hour limit.  The Parties may agree to extend the 7-hour limit in a particular case, and may seek relief from the limit from the Court if they cannot agree.

14.     As a general matter, depositions of third-party witnesses, including former employees of a Party, shall last no more than 7 hours.  The non-subpoenaing side may cross-examine the witness at the conclusion of direct examination for up to 1 hour regardless of whether the cross-examination extends past the applicable hour limit.  If there are Plaintiffs from more than one Action seeking to ask questions, they will coordinate and divide the available time among themselves.  The Parties may agree to extend the 7-hour limit in a particular case, and may seek relief from the limit from the Court if they cannot agree.  Further, if Plaintiffs and Defendants each seek to depose a third-party witness, the deposition shall last no more than 14 hours and will be divided equally between Defendants on one side and Plaintiffs in all Related Actions on the other.  If a third-party's counsel conducts an examination of the witness, the time spent shall not count against the time limits for any Party.

15.     If the total on-record portion of the deposition goes beyond 7 hours in a day, the remaining portion of the deposition will take place on a second day, unless the Parties, witness, court reporter, and videographer otherwise agree.

---

[2] All time periods for depositions refer to time on the record.

16. Once a witness has been noticed or subpoenaed by any Plaintiff, they shall not be noticed or subpoenaed again by Plaintiffs in any of the Related Actions absent agreement of all Parties. Similarly, if a witness has been noticed or subpoenaed by Defendants, they shall not be noticed or subpoenaed again by Defendants absent agreement of the Parties. If both Plaintiffs and Defendants notice or subpoena the same witness, the Parties shall make best efforts for the deposition to occur on consecutive days.

17. All time limits for depositions shall be increased by half in the event that the witness requires a translator. *See infra* Section II.D.

**B.     In-Room Logistics**

18. Unless otherwise agreed by the questioning Parties and the witness, witnesses are permitted to have their defending attorney physically present. If the witness is an expert, the witness is additionally permitted to have his or her staff physically present. The presence of such persons must comply with any applicable LR and shall be stated on the record. If the deposition takes place via video conference, the defending attorney or staff present with the witness must also appear on camera throughout the testimony.

19. The Parties agree that an accredited or certified videographer shall be retained to create a video record of each deposition. The video recording of the deposition shall frame the witness so that a reasonable distance around the witness on each side is visible. The video recording of the deposition shall not include counsel or others attending a deposition.

**C.     Deposition Exhibits**

20. For all depositions, the Parties shall make reasonable efforts to disclose attendees in advance. Questioning counsel must provide hard copies of all exhibits they seek to mark, including one for the court reporter, one for the witness, one for defending counsel, and one each for up to seven other counsel present, excluding the questioner. The exhibits do not otherwise

need to be provided to the court reporter, defending counsel, or other counsel prior to being marked for the record.

21.     For all depositions, exhibits shall be sequentially marked with a prefix including "Defendant" or "Plaintiff" with the next available number after the last exhibit marked at the prior deposition (e.g., Defendant Ex. 1).  The Parties shall make best efforts not to designate an exhibit marked at a prior deposition with a different exhibit number, but rather to use the previously marked exhibit.  The court reporter or designated vendor will maintain the official exhibit log.

22.     For all depositions, questioning counsel will identify the exhibit by its starting and ending Bates number for the record.  Native review may be requested by the witness for spreadsheets, CAD files, or similar items, and questioning counsel does not otherwise need to provide these native files as physical copies, but may do so.

23.     The witness will be given adequate time to review the exhibit prior to answering any question associated with the exhibit.

24.     Any documents reviewed, or notes made, by a witness at any point after the deposition commences, and before it is concluded, shall be preserved and either made available to all Parties' counsel or made a deposition exhibit.

25.     Upon conclusion of the deposition, the vendor responsible for handling the exhibits will circulate the stamped copies to the court reporter and all counsel attending.

**D.     Interpreters**

26.     The Parties shall meet and confer concerning the circumstances warranting the use of Party-selected or neutral interpreters at depositions, including the appropriate notice period and the number of interpreters.

27.     All depositions will take place in English.  Absent the Parties' agreement, for any witness who, at least 14 days before the deposition, states that he or she lacks sufficient familiarity

- 7 -

with English to understand questions asked in English or to respond to questions in English, the Parties will secure a neutral interpreter.

28.     The noticing Party bears the cost of securing a qualified and official translator for the deposition for any witness who needs a translator to respond to questions in English.  Counsel for any Party may bring its own translator to the deposition for the purpose of assisting that counsel. If a Party insists on use of its own interpreter at a deposition, then that Party shall bear the cost of that interpreter.

29.     Any objection to the translation must be mindful of the requirements of Federal Rule of Civil Procedure 30(c)(2).

**E.     Miscellaneous**

30.     The witness may review and sign the official transcript provided by the court reporter, providing any errata within the time permitted by FRCP 30(e).

31.     Where a witness is represented by counsel who does not represent a Party to the Related Actions (*e.g.*, a third party or an employee of a Party with separate counsel), then the noticing Party shall provide a copy of the governing Confidentiality Order to such witness's counsel along with the deposition subpoena or notice.  The Parties will use their best efforts to have non-Party witnesses and their counsel comply with the Protocol.

32.     The Parties may modify these procedures as appropriate by mutual agreement and reserve their rights to seek reasonable modifications of these procedures as appropriate in individual instances.

Dated: March 26, 2026

Respectfully submitted,

/s/ *David W. Bowker*

Alyson Zureick
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8875 (t)
(212) 230-8888 (t)
alyson.zureick@wilmerhale.com

David W. Bowker
Jonathan E. Paikin
Albinas Prizgintas (*pro hac vice*)
Michaela S. Wilkes Klein (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
(202) 663-6000 (t)
(202) 663-6363 (f)
david.bowker@wilmerhale.com
jonathan.paikin@wilmerhale.com
albinas.prizgintas@wilmerhale.com
michaela.wilkesklein@wilmerhale.com

*Attorneys for Lafarge S.A., Lafarge Cement Holding Limited, and Lafarge Cement Syria S.A.*

/s/ *Lee Wolosky*

Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450
Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

/s/ *Andrew E. Goldsmith*

Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
Lillian V. Smith (*pro hac vice*)
Christopher C. Goodnow (*pro hac vice*)
James A. Ruck (*pro hac vice*)
Eric J. Maier (*pro hac vice*)
Chase H. Robinett (*pro hac vice*)
KELLOGG, HANDSEN, TODD,
  FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com
lsmith@kellogghansen.com
cgoodnow@kellogghansen.com
jruck@kellogghansen.com
emaier@kellogghansen.com
crobinett@kellogghansen.com

- 9 -

Brent Caslin
JENNER & BLOCK LLP
515 S Flower Street
Suite 3300
Los Angeles, CA 90071
213-239-5100
bcaslin@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com
sariail@jenner.com

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

*Attorneys for the Finan Plaintiffs*

Adam J. Goldstein
Ryan Sparacino (*pro hac vice*)
Stacey Wilson (*pro hac vice*)
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
stacey.wilson@sparacinopllc.com

Matthew Jason Fisher (*pro hac vice*)
SPARACINO PLLC
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
312-216-5111
matt.fisher@sparacinopllc.com

*Attorneys for the Foley Plaintiffs*

- 10 -

/s/ Andrew E. Goldsmith

Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
KELLOGG, HANDSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

Adam J. Goldstein
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com

Matthew Jason Fisher (*pro hac vice*)
SPARACINO PLLC
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
312-216-5111
matt.fisher@sparacinopllc.com

*Attorneys for the Black Plaintiffs*

/s/ Lee Wolosky

Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450
Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

Brent Caslin (*pro hac vice*)
JENNER & BLOCK LLP
515 S Flower Street
Suite 3300
Los Angeles, CA 90071
213-239-5100
bcaslin@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com

Kyle N. Tramonte  (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

Craig W. Carlson  (*pro hac vice*)
Langdon D. Southworth (*pro hac vice*)
THE CARLSON LAW FIRM
100 East Central Texas Expressway
Killeen, TX 76541
254-526-5688
ccarlson@carlsonattorneys.com
lsouthworth@carlsonattorneys.com

*Attorneys for the Shirley Plaintiffs*

/s/ Lee Wolosky
Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450
Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

/s/ Robert B. Gilmore
Robert B. Gilmore  (*pro hac vice*)
Kevin L. Attridge  (*pro hac vice*)
Melissa Fox
Jonathan E. Missner  (*pro hac vice*)
STEIN MITCHELL BEATO
& MISSNER LLP
2000 K Street, NW, Suite 600
Washington, D.C. 20006
Tel: (202) 737-7777
Fax: (202) 296-8312
kattridge@steinmitchell.com
mfox@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com

Gavriel Mairone
MM~LAW LLC
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
Ctlaw@mm-Law.com

- 12 -

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

Amal Clooney (*pro hac vice*)
Alisha Mathew (*pro hac vice*)
OFFICE OF AMAL CLOONEY
54 Doughty Street
London
United Kingdom of Great Britain and
Northern Ireland
(44) 204 526 1185
YazidiUS@amalclooney.co.uk
am@officeofac.co.uk

*Attorneys for the Murad Plaintiffs*

Andrew E. Goldsmith
Joshua D. Branson  (*pro hac vice*)
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

*Attorneys for the Goldman Plaintiffs*

/s/ Tracy R. Kalik
Tracy R. Kalik (*pro hac vice*)
Noel J. Nudelman
Joseph Tipograph
Richard D Heideman (*pro hac vice*)
HEIDEMAN NUDELMAN & KALIK, PC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
703-447-3804
trkalik@hnklaw.com
njnudelman@hnklaw.com
jhtipograph@hnklaw.com
rdheideman@hnklaw.com

*Attorneys for the Wilson Plaintiffs*

/s/ Andrew E. Goldsmith
Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
KELLOGG, HANDSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

Adam J. Goldstein
Ryan R. Sparacino (*pro hac vice forthcoming*)
Matthew J. Fisher (*pro hac vice forthcoming*)
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
matt.fisher@sparacinopllc.com

*Attorneys for the Stallter Plaintiffs*

/s/ Joshua D. Arisohn
Joshua D. Arisohn
ARISOHN LLC
513 8th Avenue, #2
Brooklyn, NY 11215
Telephone: (917) 656-0569
josh@arisohnllc.com

Matthew A. Girardi
BURSOR & FISHER, P.A
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
mgirardi@bursor.com

T. Michael Guiffre
John L. Murino (*pro hac pending*)
Aryeh S. Portnoy (*pro hac pending*)
Michael J. Williams (*pro hac pending*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
mguiffre@crowell.com
jmurino@crowell.com
aportnoy@crowell.com
mwilliams@crowell.com

*Attorneys for the Fields Plaintiffs*

SO ORDERED.

Dated:  Brooklyn, New York

_____ March 27 ____, 2026

_Peggy Kuo_
_____

PEGGY KUO

United States Magistrate Judge

- 15 -

# Exhibit 3

Case Name: ___Foley v. Lafarge S.A.___  Case Number: 1:23-CV-___05691___ (NGG) (PK)
Case Name: ___Finan v. Lafarge S.A.___  Case Number: 1:22-CV-___07831___ (NGG) (PK)
Case Name: ___Fields v. Lafarge S.A.___  Case Number: 1:23-CV-___00169___ (NGG) (PK)

## **CONFIDENTIALITY ORDER**

It is hereby ordered that the following provisions shall govern claims of confidentiality in these proceedings:

(a)      The following documents and information may be designated as "confidential," provided such documents are not public [check all that apply]:

      ☒    Sensitive Commercial Data, such as confidential or proprietary research, development, manufacturing, or commercial or business information, trade secrets, special formulas, company security matters, customer lists, financial data, projected sales data, production data, matters relating to mergers and acquisitions, and pricing data.

      ☒    Sensitive Personal Data, such as personal identifiers, financial information, tax records, and employer personnel records.

      ☒    Medical and Legal Records, including medical files and reports.

      _____ Non-public criminal history.

(b)      If any party believes a document not described in the above paragraph should nevertheless be considered confidential, it may make application to the Court. Such application shall only be granted for good cause shown.

(c)      An attorney for the producing party may designate documents or parts thereof as confidential by stamping the word "confidential" on each page.

If such information is provided in an answer to an interrogatory, the attorney may separately append the information to the main body of the interrogatory responses, mark such appendices "confidential," and incorporate by reference the appended material into the responses.

At the time of a deposition or within 10 days after receipt of the deposition transcript, a party may designate as confidential specific portions of the transcript which contain confidential matters under the standards set forth in paragraph (a) above. This designation shall be in writing and served upon all counsel. No objection shall be interposed at deposition that an answer would elicit confidential information. Transcripts will be treated as confidential for this 10-day period. Any portions of a transcript designated confidential shall thereafter be treated as confidential in accordance with this Order. The confidential portion of the

1

transcript and any exhibits referenced solely therein shall be bound in a separate volume and marked "Confidential Information" by the reporter.

(d)     Documents designated "confidential" shall be shown only to the attorneys, parties, experts, actual or proposed witnesses, court personnel and other persons necessary to review the documents for the prosecution or defense of this lawsuit. Each person who is permitted to see confidential documents shall first be shown a copy of this Order and shall further be advised of the obligation to honor the confidential designation. Each person who is permitted to see confidential documents, who is not a party or an attorney for a party, shall be required to sign an agreement to be bound by this Order, attached hereto as Exhibit A. The parties agree that any confidential discovery material produced in this litigation may only be used in connection with this litigation.

(e)     Review of the confidential documents and information by counsel, experts, or consultants for the litigants in the litigation shall not waive the confidentiality of the documents or objections to production.

(f)     The inadvertent, unintentional, or *in camera* disclosure of a confidential document and information shall not generally be deemed a waiver, in whole or in part, of any party's claims of confidentiality. If at any time prior to trial, a producing party realizes that some portion(s) of the discovery material that the party produced should be designated as "confidential," the party may so designate by apprising all parties in writing, and providing that the material has not already been published or otherwise disclosed, such portion(s) shall thereafter be treated as confidential under this Order.

(g)     If a party believes that a document designated or sought to be designated confidential by the producing party does not warrant such designation, the party shall first make a good-faith effort to resolve such a dispute with opposing counsel. In the event that such a dispute cannot be resolved by the parties, either party may apply to the Court for a determination as to whether the designation is appropriate. The burden rests on the party seeking confidentiality to demonstrate that such designation is proper.

(h)     The parties shall comply with the Eastern District of New York's Steps for E-Filing Sealed Documents in Civil cases, located at https://www.nyed.uscourts.gov/sites/default/files/forms/EfilingSealedCV.pdf, if they wish to move to file a document under seal.

(i)     Within a reasonable period after the conclusion of the litigation, all confidential material shall be returned to the respective producing parties or destroyed by the recipients.

(j)     In any application to the Court referred to or permitted by this Order, the Court may exercise discretion in determining whether the prevailing party in such a dispute may recover the costs incurred by it and, if so, the amount to be awarded.

2

(k)     This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder.

Dated: April __, 2024

_____

Joshua D. Branson
Andrew E. Goldsmith
Christopher C. Goodnow
James A. Ruck
Chase H. Robinett
Eric J. Maier
Kellogg, Hansen, Todd, Figel &
  Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999

Ryan R. Sparacino
Adam J. Goldstein
SPARACINO PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
Fax: (202) 629-3658

*Counsel for the Foley Plaintiffs*

_____

Lee Wolosky
Andrew Joshua Lichtman
Katya T. Jestin
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036

Alyssa Bernstein
J.E. Shreve Ariail
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001

Todd C. Toral
Jenner & Block LLP

3

515 South Flower Street
Ste 3300
Los Angeles, CA 90071-2246

*Counsel for the Finan Plaintiffs*

_____

Joshua D. Arisohn
Matthew A. Girardi
Bursor & Fisher, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019

*Counsel for the Fields Plaintiffs*

_____

Jay K. Musoff
John Piskora
Sarah Levitan Perry
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154

*Counsel for Defendants Lafarge S.A.,*
*Lafarge Cement Holding Limited, and*
*Lafarge Cement Syria S.A.*

**SO ORDERED:**

Dated: Brooklyn, New York
     April _____, 2024

_____

PEGGY KUO
United States Magistrate Judge

## EXHIBIT A

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matters entitled *Foley v. Lafarge S.A.*, No. 1:23-cv-05691-NGG-PK, *Finan v. Lafarge S.A.*, No. 1:22-cv-07831-NGG-PK, and *Fields v. Lafarge S.A.*, No. 1:23-cv-00169-NGG-PK have been designated as confidential. I have been informed that any such documents or information labeled "confidential" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in such documents to any other person. I further agree not to use any such information for any purpose other than this litigation.

_____        DATED: _____
[Signature]

Signed in the presence of:


_____
(Attorney)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANE FOLEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:23-cv-05691-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| CHARISS FINAN, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:22-cv-07831-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| JASON BLACK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:24-cv-08901-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| SUSAN SHIRLEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:25-cv-04248-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| AVRAHAM GOLDMAN, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:24-cv-01043-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| NADIA MURAD, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:23-cv-09186-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| CHRISTINE STALLTER, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:25-cv-06749-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| TAMARA FIELDS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:23-cv-00169-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |
| HELEN JANE WILSON, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 1:25-cv-01975-NGG-PK |
| LAFARGE S.A., *et al.*, | |
| Defendants. | |

2

# ORDER AND STIPULATION AMENDING THE
# CONFIDENTIALITY ORDER

The parties, by and through their undersigned counsel, hereby stipulate and respectfully request that the Court enter the following Order amending the Confidentiality Order previously entered in this Action (ECF No. 42-1) (the "Confidentiality Order")[1]:

WHEREAS, the Court entered the Confidentiality Order (ECF No. 42-1) governing the treatment of confidential discovery material in this Action;

WHEREAS, the Court has entered a Stipulation and Order Regarding Electronic Discovery Procedure (ECF No. 120) (the "ESI Protocol"), which governs the format, processing, redaction, metadata, and security of electronically stored information, and the parties intend that this amendment be construed consistently with, and not to alter, the ESI Protocol;

WHEREAS, discovery in this Action includes documents and ESI that may contain personal data, including medical records and special category personal data and criminal convictions and offenses data as defined by Articles 9 and 10 of the General Data Protection Regulation (European Union Regulation (EU) 2016/679, the "GDPR"), respectively, and including data that may be subject to European Union Member State and Swiss data protection, confidentiality, and employment law regimes;

WHEREAS, the Defendants believe that, in light of the nature and volume of personal data involved in this Action, the relevant Controllers (as defined in Article 4(7) GDPR) should, with respect to the processing of such Personal Data that is protected by GDPR, implement additional safeguards in line with the principles of the GDPR;

WHEREAS, the parties have conferred in good faith and agree that limited amendments to the Confidentiality Order are appropriate to facilitate and expedite discovery involving large volumes of documents while protecting highly sensitive personal information.

"Attorneys' Eyes Only" or "AEO" Information means a subset of Confidential Information that is highly sensitive and that includes, without limitation:

(a) sensitive personal data related to European Union and Swiss individuals other than that already specified in the Confidentiality Order;

(b) medical data, including without limitation, psychologist notes, medical records, and diagnostic testing;

(c) special category personal data within the meaning of Article 9 of the GDPR;

---

[1] Unless otherwise noted, ECF references are to the docket for *Foley v. Lafarge, S.A.*, Case No. 1:23-cv-05691-NGG-PK.

(d) personal data relating to criminal convictions or offenses within the meaning of Article 10 of the GDPR; and

(e) comparable categories of personal data protected under European Union Member State, UK, or Swiss data protection, confidentiality, or employment laws.

Materials designated ATTORNEYS' EYES ONLY may not be produced with redactions for "personal data requiring protection under applicable foreign data privacy laws," as that phrase is used in the ESI Protocol, Part IV(3). For the avoidance of doubt, materials designated ATTORNEYS' EYES ONLY may be produced with redactions for "(1) privileged information, including information protected by the attorney-client and work product privileges; and (2) sensitive personal identifying information ("PII"), including social security numbers, personal bank account information about bank accounts that Defendants reasonably and in good faith believe are not connected to the alleged misconduct whether produced in redacted or unredacted form, consistent with the ESI Protocol." *Id*.

To maximize protection and avoid inadvertent production, the Parties agree that Defendants may mark all documents in forthcoming productions as ATTORNEYS' EYES ONLY.

"**Data Incident**" shall mean a breach of security leading to the accidental or unlawful unauthorized disclosure of, or access to, Personal Data or Special Category Data transmitted, or stored in the course of this Action.

"**Personal Data**" shall have the meaning set out under Article 4(1) of the GDPR, *i.e.*, any information relating to an identified or identifiable individual; an identifiable individual is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that individual.

"**Receiving Party**" shall mean any counsel or other authorized person who receives or accesses Personal Data or AEO Information under the Confidentiality Order.

A producing party may designate discovery material as ATTORNEYS' EYES ONLY where the material contains AEO Information and disclosure beyond the restrictions set forth herein would create a substantial risk of harm, including risks arising under applicable data-protection or confidentiality laws.

**Unredacted Production.** Where discovery materials contain AEO Information, a producing party may elect to produce such materials unredacted subject to an ATTORNEYS' EYES ONLY designation, in lieu of redaction. Nothing in this Order shall be construed to require redaction under the Confidentiality Order or the ESI Protocol where the producing party reasonably determines that an AEO designation provides appropriate protection.

Unless otherwise ordered by the Court or agreed in writing by the producing party, material designated ATTORNEYS' EYES ONLY may be disclosed only to:

(a) outside counsel of record and their litigation support personnel;

(b) in-house counsel and their litigation support personnel;

(c) experts or consultants retained for this Action who have executed Exhibit A and are not officers, directors, or employees of a party; and

(d) the Court and court personnel.

Material designated ATTORNEYS' EYES ONLY may be used in unredacted form during depositions if the witness appears on the face of the document and previously had access to the material in the course of their professional role.

**Purpose Limitation.** Consistent with the principle of purpose limitation set out under Article 5 of the GDPR, all AEO Information disclosed in discovery in this Action shall be used solely for the purposes of prosecuting, defending, or resolving the claims in this Action, and shall not be used for any secondary purpose. Without limitation, no Receiving Party shall use Personal Data obtained through discovery for commercial purposes, marketing, profiling, automated decision-making, journalistic publication, research unrelated to this Action, or any purpose other than the conduct of this litigation. No Receiving Party shall copy, reproduce, or duplicate Personal Data or AEO Information except to the extent reasonably necessary for the conduct of this Action. Any such copies shall be subject to the same protections as the original material.

**Requests for Redactions and Reduced Designations.** To the extent any party would like to use materials designated ATTORNEYS' EYES ONLY for any purpose inconsistent with its designation, the party shall identify a reasonable number of materials and make a request to the producing party to apply redactions and revise the confidentiality designation. A reproduction of the materials with redactions and a revised confidentiality designation shall be provided within five (5) business days.

**ESI Treatment.** Documents produced pursuant to the ESI Protocol that are designated ATTORNEYS' EYES ONLY shall be branded and identified using the same mechanisms applicable to other confidentiality designations, including stamping on TIFF images, identification on native file placeholders, and population of the confidentiality metadata field, consistent with the ESI Protocol.

**Security and Use of ATTORNEYS' EYES ONLY Information.** Consistent with the principle of integrity and confidentiality set out under Article 5 of the GDPR, all material designated ATTORNEYS' EYES ONLY ("AEO Information") shall be handled, transmitted, processed, and stored using reasonable and appropriate administrative, technical, and physical safeguards consistent with industry-standard security practices for highly sensitive data.

Such safeguards shall include at a minimum, access controls limiting availability to authorized persons under this Order, secure authentication, encryption of AEO Information in transit and, where technically feasible at rest, and measures designed to prevent unauthorized access, disclosure, alteration, or loss.

5

AEO Information shall not be uploaded to, processed by, summarized by, embedded in, vectorized, classified using, translated by, or otherwise disclosed to any publicly available generative artificial intelligence, machine learning large language model (LLM), or similar automated tools or services, including systems that retain inputs or outputs or other derivatives for training, tuning, service improvement, or cross-customer use. Any permitted use of artificial intelligence or automated tools must be limited to systems controlled by, or contractually restricted to, the receiving party or its counsel, experts or consultants, and configured to prevent retention, secondary use, or disclosure of AEO Information or any derivative thereof beyond what is permitted under this Order and the ESI Protocol.

**Data Incident Notification.** Consistent with the principles of transparency, confidentiality and integrity set out under Article 5 of the GDPR, in the event that any Receiving Party becomes aware of a Data Incident involving AEO Information, the Receiving Party shall notify the producing party in writing without undue delay.

Such notification shall include, to the extent then known: (i) a description of the nature of the Data Incident, including, where possible, the categories and approximate number of data subjects and data records concerned; (ii) the name and contact details of a designated point of contact from whom further information may be obtained; (iii) a description of the likely consequences of the Data Incident; and (iv) a description of the measures taken or proposed to be taken to address the Data Incident, including, where appropriate, measures to mitigate its possible adverse effects.

The Receiving Party shall cooperate fully with the producing party in investigating and remediating the Data Incident and shall take all reasonable steps to contain the Data Incident and mitigate any harm to affected data subjects.

**Deletion and Destruction of Personal Data.** Consistent with the principle of storage limitation set out under Article 5 of the GDPR, within sixty (60) days of the final resolution of this Action (or longer if there is a legal basis to retain the data concerned for a longer period), each Receiving Party shall securely destroy all AEO Information received during discovery. Destruction shall be carried out using methods reasonably designed to render the data permanently unrecoverable, including, where applicable, secure deletion of electronic files and shredding of physical documents.

6

Dated: April 3, 2026

Respectfully submitted,

/s/ *David W. Bowker*

| | |
|---|---|
| Alyson Zureick | David W. Bowker |
| WILMER CUTLER PICKERING | Jonathan E. Paikin |
| HALE AND DORR LLP | Albinas Prizgintas (*pro hac vice*) |
| 7 World Trade Center | Michaela S. Wilkes Klein (*pro hac vice*) |
| 250 Greenwich Street | WILMER CUTLER PICKERING |
| New York, NY 10007 | HALE AND DORR LLP |
| (212) 230-8875 (t) | 2100 Pennsylvania Avenue, N.W. |
| (212) 230-8888 (f) | Washington, D.C.  20037 |
| alyson.zureick@wilmerhale.com | (202) 663-6000 (t) |
| | (202) 663-6363 (f) |
| | david.bowker@wilmerhale.com |
| | jonathan.paikin@wilmerhale.com |
| | albinas.prizgintas@wilmerhale.com |
| | michaela.wilkesklein@wilmerhale.com |

*Attorneys for Lafarge S.A., Lafarge Cement Holding Limited, and Lafarge Cement Syria S.A.*

| | |
|---|---|
| /s/ *Lee Wolosky* | /s/ *Joshua D. Branson* |
| Lee Wolosky | Andrew E. Goldsmith |
| Andrew J. Lichtman | Joshua D. Branson (*pro hac vice*) |
| Kathryn Bolas | Lillian V. Smith (*pro hac vice*) |
| WILLKIE FARR & GALLAGHER LLP | Christopher C. Goodnow (*pro hac vice*) |
| 787 Seventh Avenue | James A. Ruck (*pro hac vice*) |
| New York, NY 10019 | Eric J. Maier (*pro hac vice*) |
| Tel: (212) 728-8000 | Chase H. Robinett (*pro hac vice*) |
| Fax: (212) 728-8111 | KELLOGG, HANDSEN, TODD, |
| lwolosky@willkie.com | FIGEL & FREDERICK PLLC |
| alichtman@willkie.com | 1615 M Street, N.W., Suite 400 |
| kbolas@willkie.com | Washington, D.C. 20036 |
| | (202) 326-7945 |
| Todd C. Toral | agoldsmith@kellogghansen.com |
| JENNER & BLOCK LLP | jbranson@kellogghansen.com |
| 2029 Century Park East | lsmith@kellogghansen.com |
| Ste 1450 | cgoodnow@kellogghansen.com |
| Los Angeles, CA 90067-2901 | jruck@kellogghansen.com |
| 213-239-2294 | emaier@kellogghansen.com |
| ttoral@jenner.com | crobinett@kellogghansen.com |
| | |
| Brent Caslin | Adam J. Goldstein |
| JENNER & BLOCK LLP | Ryan R. Sparacino (*pro hac vice*) |
| 515 S Flower Street | Stacey Wilson (*pro hac vice*) |
| Suite 3300 | SPARACINO PLLC |
| Los Angeles, CA 90071 | 1920 L Street, N.W., Suite 835 |
| 213-239-5100 | Washington, D.C. 20036 |

bcaslin@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com
sariail@jenner.com

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

*Attorneys for the Finan Plaintiffs*

/s/ *Joshua D. Branson*
Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
KELLOGG, HANDSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

Adam J. Goldstein
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com

(202) 629-3530
adam.goldstein@sparacinopllc.com

Matthew Jason Fisher (*pro hac vice*)
SPARACINO PLLC
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
312-216-5111
matt.fisher@sparacinopllc.com

*Attorneys for the Foley Plaintiffs*

/s/ *Lee Wolosky*
Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450

8

Matthew Jason Fisher (*pro hac vice*)
SPARACINO PLLC
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
312-216-5111
matt.fisher@sparacinopllc.com

*Attorneys for the Black Plaintiffs*

Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

Brent Caslin (*pro hac vice*)
JENNER & BLOCK LLP
515 S Flower Street
Suite 3300
Los Angeles, CA 90071
213-239-5100
bcaslin@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com

Alyssa Bernstein (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com

Kyle N. Tramonte  (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

Craig W. Carlson  (*pro hac vice*)
Langdon D. Southworth (*pro hac vice*)
THE CARLSON LAW FIRM
100 East Central Texas Expressway
Killeen, TX 76541
254-526-5688
ccarlson@carlsonattorneys.com
lsouthworth@carlsonattorneys.com

*Attorneys for the Shirley Plaintiffs*

9

*/s/ Lee Wolosky*
Lee Wolosky
Andrew J. Lichtman
Kathryn Bolas
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
kbolas@willkie.com

Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Ste 1450
Los Angeles, CA 90067-2901
213-239-2294
ttoral@jenner.com

Jason P. Hipp
Sarah Ann Purtill
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
212-891-1600
jhipp@jenner.com
spurtill@jenner.com
Alyssa Bernstein (*pro hac vice*)
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
202-639-6029
abernstein@jenner.com

Kyle N. Tramonte (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Tel: (202) 639-6000
ktramonte@jenner.com

Amal Clooney (*pro hac vice*)
Alisha Mathew (*pro hac vice*)

*/s/ Kevin L. Attridge*
Kevin L. Attridge  (*pro hac vice*)
Melissa Fox
Jonathan E. Missner  (*pro hac vice*)
Robert B. Gilmore  (*pro hac vice*)
STEIN MITCHELL BEATO
& MISSNER LLP
2000 K Street, NW, Suite 600
Washington, D.C. 20006
Tel: (202) 737-7777
Fax: (202) 296-8312
kattridge@steinmitchell.com
mfox@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com

Gavriel Mairone
MM~LAW LLC
875 North Michigan Avenue, Suite 3100,
Chicago IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
Ctlaw@mm-Law.com

Andrew E. Goldsmith
Joshua D. Branson  (*pro hac vice*)
KELLOGG, HANDSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

*Attorneys for the Goldman Plaintiffs*

10

OFFICE OF AMAL CLOONEY
54 Doughty Street
London
United Kingdom of Great Britain and
Northern Ireland
(44) 204 526 1185
YazidiUS@amalclooney.co.uk
am@officeofac.co.uk

*Attorneys for the Murad Plaintiffs*

/s/ Noel J. Nudelman
Noel J. Nudelman
Joseph Tipograph
Richard D. Heideman (*pro hac vice*)
Tracy R. Kalik (*pro hac vice*)
HEIDEMAN NUDELMAN & KALIK, PC
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20015
703-447-3804
njnudelman@hnklaw.com
jhtipograph@hnklaw.com
rdheideman@hnklaw.com
trkalik@hnklaw.com

*Attorneys for the Wilson Plaintiffs*

/s/ Joshua D. Arisohn
Joshua D. Arisohn
ARISOHN LLC
513 8th Avenue, #2
Brooklyn, NY 11215
Telephone: (917) 656-0569
Email: josh@arisohnllc.com

Matthew A. Girardi
BURSOR & FISHER, P.A.
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Email: mgirardi@bursor.com

T. Michael Guiffre
John L. Murino (*pro hac vice pending*)
Aryeh S. Portnoy (*pro hac vice pending*)
Michael J. Williams (*pro hac vice pending*)

/s/ Joshua D. Branson
Andrew E. Goldsmith
Joshua D. Branson (*pro hac vice*)
KELLOGG, HANDSEN, TODD,
 FIGEL & FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7945
agoldsmith@kellogghansen.com
jbranson@kellogghansen.com

Adam J. Goldstein
Ryan R. Sparacino (*pro hac vice forthcoming*)
Matthew J. Fisher (*pro hac vice forthcoming*)
SPARACINO PLLC
1920 L Street, N.W., Suite 835
Washington, D.C. 20036
(202) 629-3530
adam.goldstein@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
matt.fisher@sparacinopllc.com

*Attorneys for the Stallter Plaintiffs*

11

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: mguiffre@crowell.com
jmurino@crowell.com
aportnoy@crowell.com
mwilliams@crowell.com

*Attorneys for the Fields Plaintiffs*

SO ORDERED.

Dated: Brooklyn, New York
      April 6, 2026

*Peggy Kuo*
_____
PEGGY KUO
United States Magistrate Judge

*Traduction libre*
*Demande d'Entraide (Chungunco)*

**TRIBUNAL FÉDÉRAL DE DISTRICT DES ÉTATS-UNIS POUR LE DISTRICT EST DE NEW YORK**

**CHARISS FINAN, et al.**
 Demandeurs,
  c.
**LAFARGE S.A., et al.,**
 Défendeurs.
Affaire n° 22-cv-07831-NGG-PK

_____

**DIANE FOLEY, et al.**
 Demandeurs,
  c.
**LAFARGE S.A., et al.,**
 Défendeurs.
Affaire n° 23-cv-05691-NGG-PK

_____

**JASON BLACK, et al.**
 Demandeurs,
  c.
**LAFARGE S.A., et al.,**
 Défendeurs.
Affaire n° 24-cv-08901-NGG-PK

_____

**SUSAN SHIRLEY, et al.**
 Demandeurs,
  c.
**LAFARGE S.A., et al.,**
 Défendeurs.
Affaire n° 25-cv-04248-NGG-PK

_____

**NADIA MURAD, et al.**
 Demandeurs,
  c.
**LAFARGE S.A., et al.,**
 Défendeurs.
Affaire n° 23-cv-09186-NGG-PK

_____

**SUCCESSION D'AVRAHAM GOLDMAN, et al.**
 Demandeurs,
  c.

1

**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 24-cv-01043-NGG-PK

_____

**HELEN JANE WILSON, et al.**
    Demandeurs,
        c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 25-cv-01975-NGG-PK

_____

**CHRISTINE STALLTER, et al.**
    Demandeurs,
        c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 25-cv-06749-NGG-PK

_____

**TAMARA FIELDS, et al.**
    Demandeurs,
        c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 23-cv-00169-NGG-PK


## DEMANDE D'ENTRAIDE JUDICIAIRE INTERNATIONALE EN VERTU DE LA CONVENTION DE LA HAYE DU 18 MARS 1970 SUR L'OBTENTION DES PREUVES À L'ÉTRANGER EN MATIÈRE CIVILE OU COMMERCIALE

Le Tribunal fédéral de district des États-Unis pour le district Est de New York (« District Est ») présente ses compliments à l'autorité judiciaire compétente de France afin d'obtenir son assistance pour recueillir des preuves destinées à être utilisées lors du procès dans le cadre des procédures civiles susmentionnées devant ce Tribunal. Le District Est, situé au 225 Cadman Plaza East, Brooklyn, NY 11201, États-Unis d'Amérique, adresse par la présente une demande au Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Département de l'entraide, du droit international privé et européen (DEDIPE), 13, Place Vendôme, 75042 Paris Cedex 01, France, afin d'obtenir son concours pour recueillir l'audition et obtenir la communication de pièces de Jean-Jérôme Khodara (le « Témoin »), ancien employé des défendeurs Lafarge S.A. et Lafarge Cement Syria S.A., dans le cadre des procédures susmentionnées. La présente demande est formulée en vertu du chapitre I de la Convention de La Haye du 18 mars 1970 sur l'obtention des preuves à l'étranger en matière civile ou commerciale. Le District Est est un tribunal de

2

droit et d'équité et dispose d'une compétence matérielle sur ces actions en vertu des articles 28 U.S.C. § 1331 et 18 U.S.C. § 2338.

Le District Est a estimé qu'il serait dans l'intérêt de la justice d'obtenir la communication de pièces et le témoignage sous serment du Témoin résidant dans votre juridiction. Les actions portent sur des allégations selon lesquelles les défendeurs Lafarge S.A., Lafarge Cement Holding Ltd. (« Lafarge Cyprus ») et Lafarge Cement Syria S.A. (« LCS ») se sont entendus pour apporter un soutien matériel à deux organisations terroristes : l'État islamique d'Irak et de Syrie (« ISIS ») et le Front al-Nusrah (« ANF »). Les demandeurs affirment être des victimes ou des membres de la famille de victimes des attentats terroristes et autres opérations de l'ISIS et de l'ANF. Les défendeurs réfutent l'intégralité des allégations des demandeurs et ont invoqué des moyens de défense affirmatifs fondés sur les circonstances dans lesquelles les faits contestés auraient eu lieu. Le Témoin est un ancien dirigeant de Lafarge S.A. et de LCS, et tant les demandeurs que les défendeurs allèguent qu'il détient des informations et des documents pertinents pour ces actions, comme décrit plus en détail ci-dessous.

Le témoignage et les documents du Témoin ne sont disponibles auprès d'aucune source au sein du District Est et ne peuvent être obtenus par aucun autre moyen que sur ordonnance d'une autorité judiciaire compétente de France, contraignant le Témoin à comparaître pour être interrogé et à communiquer certains documents hautement pertinents pour le règlement du litige susmentionné.

La présente demande est formulée étant entendu, et sur la base, que toute ordonnance rendue en vertu de la présente demande : (1) n'obligera pas le Témoin à commettre une infraction ; et (2) ne contreviendra aux règles de procédure civile d'aucune juridiction française.

Le District Est, par conséquent, et conformément à l'article 3 de la Convention de La Haye, vous prie respectueusement, dans l'intérêt de la justice et selon la procédure régulière et habituelle de votre juridiction, de faire comparaître le Témoin devant un juge habilité à faire prêter serment et à recueillir des auditions, conformément aux articles 735 et suivants du Code de procédure civile français, à une date et une heure précises qui seront fixées par ledit juge, afin qu'il réponde sous serment ou sur affirmation solennelle aux questions et aux contre-interrogatoires ; et que le Tribunal ordonne que son audition soit transcrite et enregistrée par vidéo, et que la transcription et la vidéo soient envoyées aux avocats des parties à l'action qui en demandent une copie.

Le District Est demande en outre respectueusement que, dans l'intérêt de la justice et selon la procédure régulière et habituelle de votre juridiction, vous ordonniez au Témoin de produire les documents répondant aux demandes décrites ci-dessous, et que des copies de ces documents soient envoyées aux avocats des parties à la procédure qui en feront la demande. Le District Est se tient prêt à fournir une assistance judiciaire similaire aux autorités judiciaires françaises lorsque cela sera nécessaire.

| 1. Expéditeur | L'honorable Peggy Kuo |
|---|---|
| | Juge fédérale (Magistrate Judge) |
| | Tribunal fédéral de district des États-Unis |
| | District Est de New York |
| | 225 Cadman Plaza East |

3

| | |
|---|---|
| | Brooklyn, New York 11201<br>ÉTATS-UNIS D'AMÉRIQUE |
| **2. Autorité centrale de l'État requis** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Département de l'entraide, du droit international privé et européen<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>FRANCE |
| **3. Personne à qui la demande exécutée doit être renvoyée** | L'honorable Peggy Kuo<br>Juge fédérale (Magistrate Judge)<br>Tribunal fédéral de district des États-Unis<br>District Est de New York<br>225 Cadman Plaza East<br>Brooklyn, New York 11201<br>ÉTATS-UNIS D'AMÉRIQUE<br><br>et<br><br>David W. Bowker<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>2100 Pennsylvania Avenue, N.W.<br>Washington, DC 20036<br>Tél. : (202) 663-6000<br>Fax : (202) 663-6363<br>david.bowker@wilmerhale.com<br>ÉTATS-UNIS D'AMÉRIQUE |
| **4. Précision de la date à laquelle l'autorité requérante souhaite recevoir la réponse à la demande d'entraide judiciaire internationale (« demande d'entraide »)** | L'autorité requérante apprécierait grandement de recevoir une réponse à la demande d'entraide dès que possible. |
| **5. Autorité requérante** | Tribunal fédéral de district des États-Unis<br>District Est de New York<br>225 Cadman Plaza East<br>Brooklyn, New York 11201<br>ÉTATS-UNIS D'AMÉRIQUE |

4

*Traduction libre*
*Demande d'Entraide (Chungunco)*

| | |
|---|---|
| **6. À l'autorité compétente de** | la République française |
| **7. Intitulé de l'affaire et numéro d'identification** | Foley et al. c. Lafarge S.A. et al., n° 23-cv-05691-NGG-PK ;<br>Finan et al. c. Lafarge S.A. et al., n° 22-cv-07831-NGG-PK ;<br>Black et al. c. Lafarge S.A. et al., n° 24-cv-08901-NGG-PK ;<br>Shirley et al. c. Lafarge S.A. et al., n° 25-cv-04248-NGG-PK ;<br>Goldman et al. c. Lafarge S.A. et al., n° 24-cv-01043-NGG-PK ;<br>Murad et al. c. Lafarge S.A. et al., n° 23-cv-09186-NGG-PK ;<br>Stallter et al. c. Lafarge S.A. et al., n° 25-cv-06749-NGG-PK ;<br>Fields et al. c. Lafarge S.A. et al., n° 23-cv-00169-NGG-PK ;<br>Wilson et al. c. Lafarge S.A. et al., n° 25-cv-01975-NGG-PK |
| **8. Noms des demandeurs** | *Demandeurs Foley* : Succession de James Foley, Diane Foley, John W. Foley, John E. Foley, Mark Foley, Kathryn Simpson, Michael Foley, Succession de Kayla Mueller, Richard Mueller II, Marsha Mueller, Eric Mueller, Succession de Steven Sotloff, Arthur Sotloff, Shirley Sotloff, Lauren Sotloff, Ashley Wheeler, D.W. (par l'intermédiaire d'Ashley Wheeler), Heather Harbour-Quackenbush, Rachel Quackenbush, Scotty Quackenbush, Tatira Wade, Zachariah Wheeler, Frederick Cardin, Hayley Simpkin, Nellie Cardin, Pollyanna Dhanani, Vincent Cardin, Ali Madina, Tatsiana Neudakh, A.M. (par l'intermédiaire d'Ali Madina), L.M. (par l'intermédiaire d'Ali Madina), Ryan Galdes, C.G. (par l'intermédiaire de Ryan Galdes), Nathan Stallter, Succession de Weston Lee, Aldene Lee, Zakery Spicer, Megan Spicer, J.S. (par l'intermédiaire de Zakery Spicer), W.A.S. (par l'intermédiaire de Zakery Spicer), W.C.S. (par l'intermédiaire de Zakery Spicer), Beth Rosen, Jerrod Spicer, Lauranna Eifert, Nathan Spicer, Tanner Spicer, William Raak, Michelle Black, Henry Black, Karen Black, Addie Johnson, Elisa Johnson, John Johnson, Jennifer Johnson, Jo-Anne Johnson et Richshama Johnson.<br><br>*Demandeurs Finan* : Chariss Finan, Gloria Finan-Bacon, Shawn Bacon, Kristin Dayton, Hailey Dayton, Cole Dayton, Kenton Stacy, Lindsey Stacy, L.S., M.S., S.S., A.S., Charles Keating III, William Keating, Cassandra Keating, Elizabeth Berry Jacek, Andrew Berry, Nathan Berry, A.B., N.B., Mohamad El Hajj Hassan, Zeinab El Hajj Hassan, Ayda Ahmad et Leyla Ekren.<br><br>*Demandeurs Black* : Jason Black, Ezekiel Black, I.B. (représenté par Michelle Black), Succession de Nohemi Gonzalez, Beatriz Gonzalez, Paul Gonzalez, Reynaldo Gonzalez, Ron Greenfield, Pnina |

5

|  | Greenfield, Gili Greenfield, Liron Greenfield, Shere Greenfield, Shye Greenfield et Myeshia Johnson.

*Demandeurs Shirley* : Susan Shirley, Caitlin Shirley, Francisco Molinar, Frank Molinar, Debra Austrum, Elizabeth Ashley Molinar, Destiny English, Porter Goodman, Dale Goodman, Teresa Goodman, Ian Goodman, Levi Goodman, Erika Tannis Goodman, Jessica Wagner, Freeman Stevenson, Robert Stevenson, Paige Atwood, Meghan Stevenson, Chelsea Niehaus en qualité de « next friend » de M. N-K, mineur, et de L. N-K, mineur, Reginald Savage, Brenna Savage, David Todd, Rachel Todd, Ricardo Todd, Tammy Grodt, Kaylee Dedrick en qualité de « next friend » de T. G., mineur, Meghann Conforti, Stephanie Dawson, Emily Grodt, John Grodt, Kaitlyn Doxie, David Taylor, Sr., Lauren Samuels, Daniel Kitchens, Mathew Hughes, Paul W. Hughes, Sherri L. Hughes, Daniel D. Hughes et Jonathan P. Hughes.

*Demandeurs Goldman* : Succession d'Avraham Goldman, Nitzhiya Goldman, Maya Goldman Cohen, Sharon Goldman-Najman, Gila Nissenbaum, Nathan Goldman, Succession de Yonatan Suher, Inbal Merom, G.S., mineur, représenté par son tuteur légal Inbal Merom, U.S., mineur, représenté par son tuteur légal Inbal Merom, Randolph Suher, Yael Suher, Amir Suher, Eyal Suher, Eran Suher et Edeete Suher.

*Demandeurs Murad* : Nadia Murad, A.A., A.A., A.A., A.B., A.K., A.P., Abas Alhami, Abas Zaghla, Abeer Kareem, Abid Kassim, Abla Amy, Abrahim Qaso, Adib Ayzden, Adil Khalaf, Adil Murad, Adla Hasan, Adnan Shamo, Adool A Abdi, Adoulla Matto, Adula Mato, Aede Aldukhi, Aeid Hamo, Ahlam Albobo, Ahmed Hamo, Ahmed Ibrahim, Ahmed Mastto, Ahmed Omar, Aishan Bashar, Aishan Hassan, Aishe Murad, Akram Ezdeen, Al.M.K., Alan Elias Ibrahim, Alan Hasckan, Alan Murad, Alex Ismail, Ali Murad Azeez Barkhash, Ali Turki, Alias Aldakhi, Aliefa Avdi Rasho, Alifa Khalaf, Almas Alhainto, Alvin Khidir, Alya Ido, Alya Maroo, Alyas Aldakhi, Alyas Saydo, Am. K., Amal Hasan, Amal Kheder, Amal Osman, Ameen B Omar, Ameen Babeir Khudidah, Ameen Eedo, Ameera Khaleel Hussein, Ameera S Naif, Amena Maao, Amer Hasan, Amer Khudher, Amir Aldarwish, Ammar Mato, Amsha Hussein Ali, Angel Abrahim Qaso, Ansam Zaito, Anwar Elias, Arkan Adee, Armaan Bargish, Asaad Qasim, Asad Naif, Ashti Al Hamka, Ashwaq Naif Rashawka, Asia Ezeden, Asia Haji, Asia K Ali, Asinja Badeel, Asmar Eedo, Aveen Hussein, Awaz Smoqi, Ay.M.K., Ayad Khurmish, Ayaz Hasan, Azad Aadi, Azad Ziyad Murad Smoqi, Azeer Ismael, Azeez |

6

| | Haskan, Azeezah Arab, Azzat Aldake, B.K., Babeir Khudidah Khibil, Badal Khalaf, Badri Namo, Bahar Hamo, Bahar Mourad, Bahar Sulaiman, Bakir Murad, Banas Dna, Bannaz Shamo, Barack Abraham, Barakat Ali, Barakat Aslan, Barakat Hussein Rasho, Barakat Khalaf, Barakat Mahko, Barakat Mato, Barfi Hamo, Bari Blasiny, Barvi Mirza Ali, Basam Aldakhi, Base Awsman, Basee Naser, Baseh Shamo, Basel Shamo, Bashar Mourad, Basil Auso, Basim Alali, Basim Khalaf, Basim Namr, Basima A Hami, Basima Auso, Basima Kurtan, Basima Pir Ali, Basima Qasim Mtro, Baslan Allaw, Basma Zido Shekh, Basman Z Darweesh, Basseh Osman, Bassemah Shamo, Bayan Haydar, Bezar Ahmad, Bilqeez Khalaf, Bizi Misqri, Bsaam Alali, D.A., D.A., D.K., Dahham L Haji, Dakheel Sulaiman, Dakheel Zandinan, Dakhil Elias, Dakhil Odi, Dalal Semoqi, Dalia Kalo, Dalia Khairo, Dalshad Khudhur, Dalya Zndinan, Dani Hadgi, Daran Khamo, Darweesh Qasim, Darwesh Khalaf, Darwish Darwish, David Khaleel, David Majo, Dawood Basi Haji, Dawood Knjo, Dawood Masto, Dawood Murad, Dejin Khidir, Deleer Khudada, Diksa K Alkahalaf, Dilher Othman, Diyana Khairo, Dler Almahama, Edo Hammo, Eeda Hussain, Eedo Khalaf, Eedo Khalaf, Eedo Osman, Elias Eedo, Elyas Zaito, Evan Bibo, Ezzat Kolo, F.K., Fadi Khaleel, Fadi Taalo Pirali, Fadia Al Dakhi, Fadwa Daher, Fadwa Yousif, Faeza Murad Maroo, Faeza Osso, Fahad Naif, Fahad Qassim, Faisal Khalaf Smoqi, Faisal Osso, Faisal Rasho, Faisal Saydo, Faisal Yazdeen, Faiz Al Sloo, Faiza Shamo Kari, Fakhri Kassem, Falah Alpishimam, Falah Osman, Falah Rashoka, Falah Salo, Faleeha H Barehamy, Fareda Kader, Fareeda Aldakhi, Fares Dahhar, Farhan Alyas, Farida Khalaf, Faris Auso, Faris Bakr, Faris Khether, Faris Pirali, Faris Saado, Farooq Ibrahim, Fatima Ali, Fatin Kassem, Fawaz Blasiny, Fawziya Darweesh Hami, Faysal Khudir, Feryal D Khairo, Feryal Pirali, Firas Arab, Firdaus Kari, G.A., Gawri Al Dakhi, Gawry Salih Shamo, George Ibrahim, Ghalya Samokee, Ghandi Allaw, Ghanim Masto, Gharib Kheder, Ghassan Kheder, Ghazal Bashar Kassem, Ghazal Smoqy, Ghazalah Hesso, Ghazalah Mourad, Ghazalah Sulaiman, Guli Mahko, Guli Qasim, Guli Rasho, Gulistan Haji, H.D., H.K., Habeeb Mtro, Hadeel Pirali, Hadeel Sarhan, Hadi H Zagla, Hadi Majow Qassim, Hadi Pir, Hadia Smoqi, Hadiya Hadgi, Hadji H Khalaf, Hadji Kheder, Hadyah Murad, Haidar Hesso, Haidar Shamo Kari, Haider Elias, Haifaa Haji, Haifaa Khurmish, Haifaa Osman, Haiveen Blasiny, Hajar Ali, Haji A Blasiny, Haji Hameka, Haji Hasan Biso Mirza, Haji Hassan Smouki, Haji Salih Saido, Hakim Osman, Hakima Antar, Hala Rashoka, Halah Blasiny, Haleema Khalaf, Halfeen Khudada, Halimah F Hasan, Hammood Ali Aleeso, Hamo Hamo, Hamy M Hamdan, Hanaa Abass, Hanaa Darwish, Hanaa Khalaf, Hanan Ibrahim, Hanan Jundi, Hanan Omar, Hanan Smoqy, Hanan Thanoon, Haneef Smoqi, Harbi Izdeen, Haroon Al |
|---|---|

| | Hayder, Harry Hasckan, Hasan Fandi, Hasan K Khalil, Hashim Ido, Hassan Alassaf, Hassan Ali, Hassan Hassan, Hassan Hussein, Hassan J. Hassan, Hasso Bakr, Hatem Alali, Hatim Ido, Hawri Darweesh Elias Jndo, Hayder Yousif Murad, Hazem Al Yezidi, Hazim Aldakhi, Hazim Avdal, Hazim Ezdeen, Hazim Murad Maroo, Hazim Rashawka, Hazo Omar, Hazrat Ali, Hazzo Besho, Heivi Khalaf, Hend Z Atallah, Hiba Nawaf Assi, Hikmat Khalaf, Hinar K Kochi, Hiyam Omar, Hozhin Suliman, Huda Jasso, Humoom Darweesh, Husayn Joko, Husein Hesso, Husein Osman, Hussein Alisso, Hussein Hafi Ezdeen, Hussein Haji, Hussein Hskan, Hussein Khalaf, Hussein Kheder, Hussein M Maroo, Hussein Rasho, I.N., I.T., Ibrahim Ali, Ibrahim Alkhalaf, Ibrahim Khaleel Ghanim Zandinan, Ibrahim Khilla, Ibrahim Mourad, Ibrahim Oso, Ikhelas Mirza, Ilham Alijomir, Imad Matto, Inam Omar, Inas Al Aode, Isaac Abrahim Qaso, Isam M Maroo, Isam Nafkosh, Ismaeil Hesso, Ismael Hammo, Ismael Khro, Ismael Maajo, Ismail Heskan, Ismail Khalaf, Izdeen Smoqy, Izdihar Sheikh, J.A., J.K., Jad K Khurmish, Jadaan Khalaf, Jakleen Smo, Jalal Alhasan, Jalal Khalaf, Jalal Rasho, Jallal Isa, Jamal Karee Rasho, Jamal Mastu, Jamal Murad, Jamal Sedoo Al Dakhi, Jameel Khalaf Darweesh, James Abdy, Jamila Al Jndo, Janan Al Omar, Jane Doe, Janet Doe, Jani Al Dakhee, Jani Dawood, Jihad Khalaf, Jndy Smoqi, Joanne Osman, John Zalfow, Jolyana Khammoo, Jono Ahmed, Joza Shikho, Jwane Hasan, Jwani Hadi, Jyan Haji, Kafia Masto, Kali Pirali, Kamal Ali, Kamal Hasan Bakr, Kamal Ismail, Kamiran Choko, Kamla Ido, Kamla Shammo, Kamo Shammo, Kasim Hamo, Kawa Murad, Kawi Khalaf Kasem, Kawkab Rasho, Kawry Omar, Kawwal Hasan, Kejjan K Hesso, Khadeeda Sharo, Khaeiri Khoudeida, Khaeri Hadgi, Khaeri Hamo, Khairi Alpishimam, Khairi Alsattam, Khairi Darweesh, Khairi Elias, Khairi Heskan, Khairi Hesso, Khairi Khudher, Khairi Masto, Khairi Shammo, Khairi Smoqy, Khairi Zandinan, Khalaf Ahmed, Khalaf Kasem Amsikh, Khalaf Khalaf, Khalaf Murad, Khalaf Shammo, Khalaf Smoqi, Khalaf Sulaiman, Khaled Mourad, Khaled Shamo, Khaleel Ali, Khaleel Assaf, Khaleel K Khalaf, Khaleel Kamo Elias Haskan, Khaleel Mark, Khaleel Samo, Khaleel Sulaiman, Khalid Arab, Khalid Haider, Khalid I Khalaf, Khalid Jendo, Khalid Juko, Khalida Khalaf, Khalida Simoqi, Khalida Zndinan, Khalidah Hussein, Khalil Hakan, Khalil Sinjari, Khani Rafo, Khani Sheebo Sharo, Khansa Hasan, Khansa Khalaf, Khaton Abas, Khatoon Haskan, Khaula Saeed, Khawla Al Aisso, Khawlah H Maleko, Kheder Darweesh, Kheder Hadji, Kheder Shamo Kheder, Khedir Qassim, Khero Khalaf, Khero Edo, Khidhir Ido, Khifshi Hassan, Khifshi Khudeeda Sulaiman, Khokhee Ahmed, Khokhi Alpishimam, Khokhi Khider Khudeeda, Khokhi Naif Rashawka, Khokhy Elias Omar, Khonaf Haskan, Khonav Qary, Khoudeida K Saadoon, Khounaf Shammo, Khudaidah Havend, Khudayda Aldakhi, |

| | |
|---|---|
| | Khudedah Murad, Khudhur Abdal Azzo Dnai, Khudhur Ali, Khudhur Sulaiman, Khudidah S Maleko, Khunaf Salaja, Kiret Haji, Kitbiya Haidar, Klestan Ali Alhasan, Kochar Mhko, Kolo H Dahar, Kori Abdullah Ahmed, Kori Omar, Kori Sharro, Koulan Mourad, Kouli Khalaf, Kozi Hussein, Kudida H Shamo, Kuliar Jumaah, Laila Halo, Laila Hesso, Laila Kassem, Laila Khdir Ayub, Laila Khoudeida, Laila Mardos Miho, Laila Rasho Saleh, Laith Saleem, Layla H Karee, Layla Ibrahim, Layla Mourad, Layla Omar Elias Barghash, Layla Shamo, Leza Alali, Linda Osman, Lozina Alkhalaf, Lozniya Zandinan, Luis Alyas Kosa, M.A., M.G., M.K., M.K., Ma. K., Madina Aldakhi, Madleen Murad Maroo, Maged Hadgi, Maha Izdeen, Mahabad Darweesh, Mahabat Ali, Mahdi Hussein, Maher K Zandinan, Maherah Khille, Mahmood Hamo, Mahmood Kheder Ayoob, Mahya Alqasim, Majjo Hamo Khalaf, Majow Kaso, Manal Kuly, Mando Mtro, Manji Ibrahim Dahhar, Marenah Khalaf, Marvin Sulaiman, Marwan Khalaf, Maryam Naif, Maryna Shallal, Maya K Lavin, Mayada S M Malham, Mayan H Ali, Mayan Murad Mulhem Smoki, Maysoon Borali, Mazen Suleiman, Mazin Faeedi, Meser Haje, Mihi Zaghla, Mirza B Bakr, Mirza Khalaf, Misry Adi, Miyan Khalaf, Miyasar Kalo, Miyo Murad, Mo. K., Mohsin Ali Hasan, Mohsin Alsalo, Mohsin Khudaydah Haji, Mokhles Kheder, Mourad Hesso, Muayad Yousif, Mubad Rashow, Muhand Kheder, Muhsin Aljando, Muhsin Holki, Mulhim Abdullah, Mumtaz Blasiny, Munefah Murad, Muntasir Khudhur, Muqdad Alhamy, Murad Ismael, Murad M Mousa, Murad Qasim, Murad Qizly, Murad Smoqy, N.A., Naam Joko, Naam Simoqy, Nabilyoon Nawaf Allaw, Nada Hasan Bargish, Nada Osman, Nadia Ibrahim, Nadima Mirza, Nadin Elias, Nadira Keti Broka, Naeemah Nimr, Naeif Majjo Hamo, Nafeh Kassem, Nafiya Khoudeida, Nahidah Hasan, Nahrein Kassem, Naif Alsilo, Naif Yousif Murad, Naji Majo, Najma Khalaf, Nancy Khoudieda Khalil, Nanssy Elias, Naseema Kamal Abda Dinai, Nashwan Khudidah, Nasima Haskaan, Nasima Osman, Natiq Atto Shamo, Navin Khalaf, Navin Naif, Nawaf Dahar, Nawaf Haskan, Nawaf Khalaf, Nawaf Sulaiman, Nawal Haji, Nawfee Khadeeda, Nawras Elias, Nawroz Sulaiman, Nayif Ibrahim, Nayyef Abdo, Nazar Kheder, Neam Mahmood, Nermeen Elias, Nibras Basitkey, Nidema Malko, Nissani Jndo, Nizar Rasho, Nofa Dena, Nofa Kareem Ismael, Nofa Kasem, Nora Yazdeen, Nori Khalaf, Noura Osman, Omar Haider, Omar Hussein, Omar Ismail, Omar Rashsho, Oras Osso, Ozair Al Jndo, P.K., Paiman Dna, Paris Allaw, Parker Burjus, Parween Chiyan, Pasha Rasho, Qadisyah Hussein, Qaisar Haji Ali Blasiny, Qaseema Ali, Qasim Barakat Guly, Qasim Pir, Qasim Shaabo Sulaiman Samoqi, Qassim Chomer, Ra. K., Rae. K., Raeda Ghanem, Raeed Khadida, Raghda Al Saydo, Rahan Alali, Rana Alali, Rana Khairo, Randa Khodida, Rashed Khder, Rashid Murad, Rasho Haso, Rasimia Smoqy, Rasmia Khalaf, Reema |

| | Alhamy, Ricky Namer, Rifaah Hussein, Riham Jndo, Rima Hadgi, Riyad Hesso, Roh. K., Rojeen Almahama, Rojgar Dna, Ronza Fehed, Rosa Nahamat, Rose Osman, Roza Shamo, S.A., S.A., S.K., S.S., Sa. D., Sa. H., Sa. K., Saad Faraz, Saad Ibrahim, Saad Khodida, Saada Murad, Saadi Aloso, Saado Ali, Saadoon Khudidah, Saadoon Smoqi, Saadun Issa, Saeed Salo, Sabah Barakat, Sabah Hussein, Sabah Mirzan Hasan, Sabah Qasim, Sabah Zaido, Sabreen Mahmah, Sabri Elias, Sabri Nafkosh, Saeed Bakr, Saeed Hamo, Saeed Issa, Saeed Kalo, Saeed Khalaf, Saeed Murad, Saeed Qasim, Sahar Nafkhosh, Sahira Majoo, Saido Hesso, Saidow M Zandinan, Saifi H Smouki, Salah Omar, Salah Osman, Salam Sheikh, Salar Badeel, Saleh Khalaf, Saleh Saffuk, Saleh Saleh, Salema Merza, Salih Hasckan, Salih Rashki, Salih Saado, Salim Ido, Salim Kheder, Salim Merza, Salim Sulaiman, Sally Rashid, Salman Elias, Salwa Adee, Salwan Khodida, Sam Lincoln, Sam Qasim Mirza, Saman Ali, Saman Khalil, Saman Khodida, Samea Merza, Sameer Darweesh, Sameer Khudhur, Sameer Zandinan, Sameera Darweesh, Sameera Rasho, Samerah Osman, Sami Smoqi, Samia Findi Ahmed, Samia Smoqi, Samir Eizdin, Samirah Osman, Samo Samo, Sanaa Osman, Sanan Aldakhi, Sarab Nafkosh, Sarah Joko, Sardar Almahama, Sardar Rashid, Sari O Meskin, Sari Turki, Sarkawt Badeel, Savey Meesho Khro, Sawsan Afdi, Seno Murad, Serdar Auso, Sevi Mourad, Shafiq Shabo Abdullah, Shaha Malo, Shaha Mohammed, Shahab Bashar, Shahab Khudeeda, Shahla Alhamy, Shahnaz Alhamy, Shahnaz Murad, Shahnaz Osso, Shahrazad Jumaah, Shahrstan A Hami, Shaima A Abrahim, Shaima Shamo Kari, Shami Ibraheem, Shamia Maao, Shamo Alhamy, Shareef Murad, Sharifa Khalil, Sharo Smoqy, Sharro Gebbo, Sharro Khalaf, Shawqi Sulaiman, Shazo Al Saleem, Sheelan Jadaan, Shereen Murad, Sheren Auso, Sheren Qaso, Sherevan Alhamy, Shihab Hami, Shiri Elias Khalaf, Shirwan Chicho, Shkur Eedo, Si. D., Si. K., Siham Merza, Sinobar Badeel, Skfan Al Niamo, Sleman Smoqi, So. H., Solaf Eido Kheder Alsadun, Souriya Osman, Sozan Ajol, Sozan Khalaf, Sr. H, Stefan Khodida, Steven Alnahmo, Steven Auso, Suaad Shammo, Suad Keti, Suad Khalaf, Suad Khider, Suad Nafkosh, Sulaf Darweesh, Sulaiman Allaw, Sulaiman Antar, Sulaiman Hamo, Sulaiman Hasan, Sulaiman Sido, Sultan M Maroo, Suriyah Haji, Sy. H., Taalo Khudhur, Taha A Abdullah, Tahseen Osman, Tahsin Jihan, Talal Rasho, Tareq Darweesh, Tariq Qasim, Tawaf Merza, Thaura Smoqi, Thawra Rashawka, Trko Omar, Turkia Mahko, Ubayd Salih Nafkosh, Umayah Murad, Valentina Abrahim Qaso, Vinal Halaja, W.A., Wa. A., Wadhhah Alesou, Wadhhah Dawood, Wahida Havend, Wansa Aldkhi, Wansa Rashki, Wardah Hasan, Waseem Breem, Wisam Saado, Wlid Qaro, Y.H., Y.T., Yousif M A Zandinan, Yousif Muhamd Beeso, Yousif Nimr, Yusra Aldakhi, Zaaim Ali, Zaedo Ali, Zaeeton Haji, Zahra Hamo, Zahra Osman, |

10

| | |
|---|---|
| | Zaidan Kheder Sulaiman, Zainab Eazden, Zaitoun Aldakhi, Zaizo Ali, Zeed Alale, Zeidan Khalaf Kasem, Zeri Hesso, Zeyed Khudhur, Zina Yazdeen, Zinah Muhi, Zirvan Alaode, Ziyad Faeedi, Ziyad Khudir, Ziyad Smoqi, Zoher Alali, Zozan Hiskan, Zubada Khudada.<br><br>*Demandeurs Stallter* : Christine Stallter, Chester Lee, Peter Padnos, Brent Bartels, Michelle Black pour la succession de Bryan Black, Debra Gannon, Raymond Gannon, Myeshia Johnson pour la succession de LaDavid Johnson, A.J. (par l'intermédiaire de sa « next friend » Myeshia Johnson), L.S.J. (par l'intermédiaire de sa « next friend » Myeshia Johnson), L.T.J. (par l'intermédiaire de sa « next friend » Myeshia Johnson), Cowanda Johnson, Richard Johnson, Quanika Johnson, Rishshawnda Johnson et Michael Perozeni.<br><br>*Demandeurs Fields* : Tamara Fields, Succession de Lloyd Carl Fields Jr., représentée par Tamara Fields en qualité de représentante personnelle, Heather Gavino, Succession de James Damon Creach, représentée par Heather Gavino en qualité de représentante personnelle, Jackson Creach, Samantha Creach, Jayedon Creach, Kimberly Harris, Succession de Sean Copeland, représentée par Kimberly Harris en qualité de représentante personnelle, Succession de Brodie Copeland, représentée par Kimberly Harris en qualité de représentante personnelle, Austin Copeland, Maegan Copeland, Kenneth Ressman, Jerri Faye Eaves, Khalesi Love, Rhasia Love, Veda Love, Succession de Nicholas Vittorio Leslie, représentée par Conrado Ignacio Leslie en qualité de représentant personnel, Conrado Ignacio Leslie et Paola Ana Maria Leslie.<br><br>*Demandeurs Wilson* : Helen Jane Wilson, Valerie Wilson-Hudson, Cynthia Lahne, Melanie Ann Nicholson, Tim William Russell, Chaim Winternitz, A.W. (par l'intermédiaire de ses parents et tuteurs Chaim Winternitz et Esther Winternitz), B.W. (par l'intermédiaire de ses parents et tuteurs Chaim Winternitz et Esther Winternitz), D.W. (par l'intermédiaire de ses parents et tuteurs Chaim Winternitz et Esther Winternitz), M.W. (par l'intermédiaire de ses parents et tuteurs Chaim Winternitz et Esther Winternitz), M.W. (par l'intermédiaire de ses parents et tuteurs Chaim Winternitz et Esther Winternitz), Esther Winternitz, Faige Winternitz, Jacob Winternitz, Moshe Winternitz, Yitel Winternitz, Succession de Justin Shults (par l'intermédiaire de son administratrice, Sheila Shell), Sheila Shell, Jeffrey Shults, Tiffany Shults-Ristine, Levi Sutton, Succession de Stephanie Moore-Shults (par l'intermédiaire de son exécutrice testamentaire Carolyn G. Moore), Carolyn G. Moore, Geary Moore, Holly E. Wood, Succession de James Logan Gragg (par l'intermédiaire de son exécutrice |

| | |
|---|---|
| | testamentaire Glenda S. Gragg), Trella Elizabeth Newsom, Succession de Gail Minglana Martinez (par l'intermédiaire de son héritier Melchizedek Martinez), Melchizedek Martinez, Kianni Martinez, Ka.M. (par l'intermédiaire de son parent et tuteur Melchizedek Martinez), Kimo Martinez, N.M. (par l'intermédiaire de son parent et tuteur Melchizedek Martinez), Rosie T. Martinez, Maria Luisa Martinez, Angelito Minglana, Sr., Teofista Minglana, Gerard Minglana, Gilda Minglana-Harwood, Angelito Minglana, Jr., Angelo Minglana, Joseph D. Empey, Amber Orton-Empey, Joseph C. Empey, Dorothy Empey, Henry Empey, Isabelle Empey, Abraham Empey, Richard I. Norby, Pamela J. Norby, Tiffany Allred, Jason Norby, Chelsea Snell, Mason Wells, Chad S. Wells, Kymberly E. Wells, Porter J. Wells, Mia Wells, T.W. (par l'intermédiaire de ses parents et tuteurs légaux Chad S. Wells et Kymberly Wells), et Colby S. Wells. |
| **9. Noms et adresses des représentants des demandeurs** | Joshua D. Branson, Andrew E. Goldsmith, Lillian V. Smith, Christopher C. Goodnow, James A. Ruck, Eric J. Maier, Chase H. Robinett, Kaleb J. LeGore — Kellogg, Hansen, Todd, Figel & Frederick, PLLC, 1615 M St. NW, Ste. 400, Washington, DC 20036, (202) 326-7945, ÉTATS-UNIS D'AMÉRIQUE<br><br>Ryan R. Sparacino, Adam J. Goldstein, Stacy Wilson — Sparacino PLLC, 1920 L Street NW, Ste. 835, Washington, DC 20036, ÉTATS-UNIS D'AMÉRIQUE<br><br>Matthew Jason Fisher — Sparacino PLLC, 150 South Wacker Drive, Suite 2400, Chicago, IL 60606, 312-216-5111, ÉTATS-UNIS D'AMÉRIQUE<br><br>Lee Wolosky, Andrew J. Lichtman, Kathryn Bolas — Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Tél. : (212) 728-8000, Fax : (212) 728-8111, ÉTATS-UNIS D'AMÉRIQUE<br><br>Todd C. Toral — Jenner & Block LLP, 2029 Century Park East, Ste 1450, Los Angeles, CA 90067-2901, 213-239-2294, ÉTATS-UNIS D'AMÉRIQUE<br><br>Brent Caslin — Jenner & Block LLP, 515 S Flower Street, Suite 3300, Los Angeles, CA 90071, 213-239-5100, ÉTATS-UNIS D'AMÉRIQUE |

| | |
|---|---|
| | Jason P. Hipp, Sarah Ann Purtill — Jenner & Block LLP, 1155 Avenue of the Americas, New York, NY 10036, 212-891-1600, ÉTATS-UNIS D'AMÉRIQUE |
| | Alyssa Bernstein, J.E. Shreve Ariail, Kyle N. Tramonte — Jenner & Block LLP, 1099 New York Avenue, NW, Suite 900, Washington, DC 20001, 202-639-6029, ÉTATS-UNIS D'AMÉRIQUE |
| | Craig W. Carlson, Langdon D. Southworth — The Carlson Law Firm, 100 East Central Texas Expressway, Killeen, TX 76541, 254-526-5688, ÉTATS-UNIS D'AMÉRIQUE |
| | Kevin L. Attridge, Jonathan E. Missner, Robert B. Gilmore, Melissa Fox — Stein Mitchell Beato & Missner LLP, 2000 K Street, NW, Suite 600, Washington, D.C. 20006, Tél. : (202) 737-7777, Fax : (202) 296-8312, ÉTATS-UNIS D'AMÉRIQUE |
| | Gavriel Mairone, Oceane Maher — MM~LAW LLC, 875 North Michigan Avenue, Suite 3100, Chicago, IL 60611, Tél. : (312) 253-7444, Fax : (312) 275-8590, ÉTATS-UNIS D'AMÉRIQUE |
| | Amal Clooney, Alisha Mathew — Law Office of Amal Clooney, 54 Doughty Street, London, Royaume-Uni de Grande-Bretagne et d'Irlande du Nord, (44) 204 526 1185 |
| | Joseph Tipograph, Richard D. Heideman, Tracy R. Kalik, Noel J. Nudelman — Heideman Nudelman & Kalik, PC, 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, 703-447-3804, ÉTATS-UNIS D'AMÉRIQUE |
| | Joshua D. Arisohn — Arisohn LLC, 513 8th Avenue, #2, Brooklyn, NY 11215, Téléphone : (917) 656-0569, ÉTATS-UNIS D'AMÉRIQUE |
| | Matthew A. Girardi — Bursor & Fisher, P.A., 50 Main Street, Suite 475, White Plains, NY 10606, Téléphone : (914) 874-0708, ÉTATS-UNIS D'AMÉRIQUE |
| | T. Michael Guiffre, John L. Murino (admission pro hac vice en attente), Aryeh S. Portnoy (admission pro hac vice en attente), Michael J. Williams (admission pro hac vice en attente) — Crowell & Moring LLP, 1001 Pennsylvania Avenue, NW, Washington, DC |

13

| | |
|---|---|
| | 20004-2595, Téléphone : (202) 624-2500, Télécopie : (202) 628-5116, ÉTATS-UNIS D'AMÉRIQUE |
| **10. Noms des défendeurs** | Lafarge S.A., Lafarge Cement Holding Ltd., et Lafarge Cement Syria S.A. |
| **11. Noms et adresses des représentants des défendeurs** | David W. Bowker, Jonathan E. Paikin, Albinas Prizgintas, Michaela S. Wilkes Klein — Wilmer Cutler Pickering Hale and Dorr LLP, 2100 Pennsylvania Avenue, N.W., Washington, DC 20036, ÉTATS-UNIS D'AMÉRIQUE <br><br> Alyson Zureick — Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, ÉTATS-UNIS D'AMÉRIQUE <br><br> Denis Chemla — A&O Shearman, 32 rue François 1er, 75008 Paris, FRANCE |

**12-13. Noms des personnes à interroger et noms et adresses de leurs représentants, s'ils sont connus.**

| Noms des personnes à interroger (« déposants ») | Noms et adresses des représentants des déposants |
|---|---|
| Bi Yong Chungunco | Antoine Vey <br> Vey & Associés <br> 16 Boulevard Raspail <br> Paris, France 75007 <br> Tél. +33 1 45 44 66 82 |

**14. Nature et objet de la procédure et résumé des griefs**

La présente procédure regroupe neuf actions connexes pendantes devant le District Est. Les demandeurs réclament des dommages-intérêts civils en vertu de la loi américaine contre le terrorisme (Anti-Terrorism Act), telle que modifiée par la loi sur la justice contre les commanditaires du terrorisme (« JASTA »), pour les décès et les blessures résultant d'actes présumés de terrorisme international.

14

Les plaintes des demandeurs allèguent que leurs blessures résultent d'attaques violentes menées par deux organisations terroristes étrangères désignées (« FTO »), l'ISIS et l'ANF, entre 2012 et 2017 en Syrie, en Irak, en Jordanie, en Turquie, en France, en Belgique, en Espagne, en Libye, au Niger et au Liban.[1]

Les demandeurs font valoir que Lafarge S.A., Lafarge Cyprus et LCS (les « défendeurs ») sont civilement responsables des préjudices subis par les demandeurs en raison de comportements présumés liés à une cimenterie que les défendeurs ont exploitée dans le nord de la Syrie de 2010 à 2014. Les demandeurs allèguent que, dans un contexte d'effondrement de l'autorité de l'État pendant la guerre civile syrienne, les défendeurs ont continué à exploiter l'installation et ont conclu des accords avec des groupes armés opérant dans la région, notamment l'ISIS et l'ANF. Les demandeurs allèguent en outre que les défendeurs ont effectué des paiements par l'intermédiaire de tiers et se sont livrés à d'autres transactions qu'ils présentent comme procurant une valeur financière à l'ISIS et à l'ANF, constituant la base d'un complot civil en vertu du droit américain. À l'appui de ces allégations, les demandeurs s'appuient en partie sur la reconnaissance de culpabilité (« *guilty plea* ») des défendeurs pour une accusation de soutien matériel dans le cadre d'une procédure pénale américaine, qui ne comportait pas d'accusations de complot civil et ne traitait pas de la responsabilité pour une attaque terroriste spécifique.

Les défendeurs nient toute responsabilité civile à l'égard des demandeurs. Dans leurs réponses aux plaintes respectives des demandeurs, les défendeurs ont invoqué des moyens de défense affirmatifs à l'encontre des allégations des demandeurs, notamment en faisant valoir que toute interaction avec des groupes armés a été menée par nécessité ou sous la contrainte, et qu'ils se sont retirés de tout complot allégué au plus tard en septembre 2014. Voir, par exemple, Foley c. Lafarge et al., n° 1:23-cv-05691 (E.D.N.Y., 3 mars 2026), Dkt. n° 155, p. 158-161.[2] Les parties procèdent actuellement à la communication de preuves concernant les demandes des demandeurs.

## 15. Éléments de preuve à obtenir et finalité des éléments de preuve recherchés

Le Tribunal demande respectueusement à l'autorité judiciaire compétente en France de faire en sorte que les ordonnances appropriées soient rendues afin d'ordonner l'audition, sous serment, du Témoin, destinée à être utilisée lors du procès dans le cadre de la présente procédure. Le Tribunal demande en outre respectueusement à l'autorité judiciaire compétente en France de faire en sorte que les ordonnances

---

[1] *Voir* Foley c. Lafarge et al., n° 1:23-cv-05691 (E.D.N.Y., 5 août 2024), Dkt. n° 68 ; Finan c. Lafarge et al., n° 1:22-cv-07831 (E.D.N.Y., 4 mars 2026), Dkt. n° 140 ; Fields c. Lafarge et al., n° 1:23-cv-00169 (E.D.N.Y., 23 mars 2026), Dkt. n° 119 ; Murad c. Lafarge et al., n° 1:23-cv-09186 (E.D.N.Y., 1er août 2024), Dkt. n° 37 ; Goldman c. Lafarge et al., n° 1:24-cv-01043 (E.D.N.Y., 9 février 2024), Dkt. n° 1 ; Black c. Lafarge et al., n° 1:24-cv-08901 (E.D.N.Y., 30 décembre 2024), Dkt. n° 1 ; Shirley c. Lafarge et al., n° 1:25-cv-04248 (E.D.N.Y., 10 décembre 2025), Dkt. n° 38 ; Wilson c. Lafarge et al., n° 1:25-cv-01975 (E.D.N.Y., 9 avril 2025), Dkt. n° 1 ; et Stallter c. Lafarge et al., n° 1:25-cv-06749 (E.D.N.Y., 5 décembre 2025), Dkt. n° 1.

[2] Les défendeurs ont invoqué des moyens de défense affirmatifs similaires ou identiques dans leurs réponses aux plaintes opérantes des demandeurs dans chacune des actions susmentionnées. Voir Finan c. Lafarge et al., n° 1:22-cv-07831 (E.D.N.Y., 25 mars 2026), Dkt. n° 148, p. 140-142 ; Fields c. Lafarge et al., n° 1:23-cv-00169 (E.D.N.Y., 25 mars 2026), Dkt. n° 124, p. 148-151 ; Murad c. Lafarge et al., n° 1:23-cv-09186 (E.D.N.Y., 28 février 2026), Dkt. n° 86, p. 537-539 ; Goldman c. Lafarge et al., n° 1:24-cv-01043 (E.D.N.Y., 18 mars 2026), Dkt. n° 55, p. 102-104 ; Black c. Lafarge et al., n° 1:24-cv-08901 (E.D.N.Y., 25 mars 2026), Dkt. n° 53, p. 133-136 ; Shirley c. Lafarge et al., n° 1:25-cv-04248 (E.D.N.Y., 25 mars 2026), Dkt. n° 63, p. 146-149 ; Wilson c. Lafarge et al., n° 1:25-cv-01975 (E.D.N.Y., 18 mars 2026), Dkt. n° 53, p. 152-154 ; et Stallter c. Lafarge et al., n° 1:25-cv-06749 (E.D.N.Y., 20 février 2026), Dkt. n° 10, p. 135-138.

15

appropriées soient rendues afin d'ordonner la communication des documents du Témoin destinés à être utilisés lors du procès dans le cadre de la présente procédure.

Comme indiqué à la section 14 ci-dessus, les demandeurs font valoir des prétentions en vertu de la loi antiterroriste américaine, alléguant que les défendeurs ont conclu un complot civil avec l'ISIS et l'ANF. Les défendeurs réfutent ces allégations et soutiennent que les demandeurs ne peuvent établir l'existence d'aucun accord de complot entre les défendeurs et l'ISIS ou l'ANF, ni d'un lien juridiquement suffisant entre le comportement allégué des défendeurs et les attentats terroristes en cause. Le témoignage et les documents demandés au Témoin sont pertinents et substantiels au regard de ces questions litigieuses et des moyens de défense des défendeurs.

Les défendeurs ont convaincu ce Tribunal que le Témoin pourrait avoir une connaissance personnelle de faits substantiels et pertinents pour la procédure susmentionnée. Étant donné que le Témoin réside hors du champ d'application du pouvoir de citation à comparaître du Tribunal et ne peut donc être contraint de témoigner au procès, les défendeurs sollicitent son audition afin de l'utiliser lors du procès.

Les antécédents, la formation et le parcours professionnel du Témoin sont pertinents pour évaluer son rôle, ses responsabilités et son accès potentiel à des informations concernant les questions en litige dans la présente procédure. La préparation personnelle du Témoin en vue de l'audition est également pertinente pour évaluer le fondement et la portée du témoignage qui sera présenté. Voir le point A, ci-dessous.

Les défendeurs sollicitent le témoignage du Témoin concernant sa connaissance de la situation sécuritaire à laquelle les défendeurs étaient confrontés en Syrie, y compris les conditions de sécurité générales, la présence et les activités de groupes armés, ainsi que les risques liés à l'exercice d'activités dans une zone de conflit actif. Voir le point B, ci-dessous. Les défendeurs sollicitent en outre un témoignage concernant l'environnement commercial dans lequel ils opéraient, y compris les risques liés à la poursuite des opérations en pleine guerre civile, ainsi que les risques auxquels étaient exposés leurs employés, notamment, mais sans s'y limiter, les menaces de violence, de détention ou d'enlèvement. Voir les points B à D, ci-dessous. Ce témoignage est pertinent pour les moyens de défense affirmatifs des défendeurs, y compris, mais sans s'y limiter, celui selon lequel tout accord entre les défendeurs et les organisations terroristes étrangères (FTO) aurait été conclu sous la contrainte ou par nécessité.

Le témoignage du Témoin concernant l'idéologie de l'ISIS, y compris son objectif déclaré d'établir un califat, et la compréhension qu'a le Témoin de l'évaluation faite par les défendeurs d'Al-Qaïda en Irak (« AQI »), de l'ISIS ou de l'ANF en tant qu'organisations terroristes, ainsi que des groupes armés avec lesquels des intermédiaires tels que Firas Tlass ou Amro Taleb ont communiqué, est pertinent au regard des questions que les demandeurs ont soulevées concernant la connaissance et l'intention des défendeurs. Les allégations des demandeurs reposent en partie sur des affirmations selon lesquelles les défendeurs auraient partagé un objectif commun avec l'ISIS et l'ANF ou se seraient alignés sur ces organisations. En conséquence, lors du procès, les défendeurs entendent nier avoir partagé des objectifs terroristes ou avoir agi par allégeance à une quelconque organisation terroriste. Le témoignage du Témoin aidera les parties à évaluer la manière dont les défendeurs ont compris la nature de ces groupes et toute information pertinente transmise par des intermédiaires au cours de la période concernée. Voir les points E et F, ci-dessous.

16

Le témoignage du Témoin concernant les investissements des défendeurs en Syrie, la situation financière de ces investissements et l'abandon par les défendeurs de la cimenterie de Jalabiyeh — y compris toute instruction donnée aux employés concernant un éventuel retour sur le site — est pertinent pour le moyen de défense affirmatif des défendeurs relatif au retrait et pour la portée temporelle de tout accord allégué. Lors du procès, les défendeurs entendent faire valoir qu'ils ont cessé leurs activités en Syrie et abandonné la cimenterie dès septembre 2014, après quoi l'ISIS s'est emparé des installations, et que ce comportement constituait un retrait de tout complot allégué et exclut toute responsabilité pour les actes commis par d'autres après cette date. Les témoignages concernant le contexte financier et opérationnel des investissements des défendeurs pourraient en outre aider les parties à déterminer la nature et le moment du départ des défendeurs de Syrie. Voir les points G et H, ci-dessous.

Enfin, la connaissance qu'a le Témoin de l'enquête interne menée par les défendeurs ou Holcim Ltd. concernant les activités des défendeurs en Syrie, ainsi que de toute procédure civile ou pénale française relative à ces activités, et sa participation à celle-ci, sont pertinentes pour comprendre quelles informations le Témoin a précédemment fournies, examinées ou évaluées concernant les événements en cause. Le Témoin a peut-être fait des auditions ou des déclarations, ou communiqué des documents, dans le cadre de ces procédures, qui ont une incidence sur les questions de fait litigieuses dans les présentes actions et qui ne seraient pas autrement accessibles par le biais de la communication préalable aux États-Unis. De tels témoignages peuvent aider les parties et le Tribunal à identifier, contextualiser et authentifier les preuves, et à garantir que le dossier sur lequel se fonderont les moyens de défense des défendeurs et les demandes des demandeurs soit aussi complet que possible. Voir le point I, ci-dessous.

Les défendeurs ont également convaincu ce Tribunal que le Témoin pourrait être en possession de documents substantiels et pertinents pour la procédure susmentionnée et qui ne peuvent être obtenus auprès d'autres sources relevant de la compétence du Tribunal. Les défendeurs demandent la communication des documents conservés personnellement par le Témoin qui reflètent la connaissance et l'implication contemporaines de ce dernier dans les opérations des défendeurs dans le nord de la Syrie, y compris les communications, notes, rapports et autres documents créés, reçus ou conservés en dehors des systèmes officiels de l'entreprise. Ces documents comprennent les comptes rendus de réunions et de visites sur site ; les communications avec des groupes armés, des services de renseignement ou des responsables gouvernementaux ; et la correspondance personnelle concernant les conditions de sécurité, les risques opérationnels et les menaces pesant sur le personnel des défendeurs.

Les défendeurs demandent également les documents reflétant les communications avec et entre la haute direction de la société et d'autres personnes concernant la poursuite des opérations, la gestion des problèmes de sécurité et les décisions relatives à l'évacuation et à l'abandon de la cimenterie de Jalabiyeh, lorsque ces communications ont été menées ou conservées sur des appareils ou des comptes personnels. En outre, les défendeurs demandent les documents en la possession personnelle du Témoin qui ont trait à des menaces, à des actes de coercition ou à d'autres interactions avec des groupes armés. Ces documents sont pertinents pour évaluer les allégations des demandeurs selon lesquelles les défendeurs auraient conclu un accord de complot avec l'ISIS et l'ANF, ainsi que pour les moyens de défense affirmatifs des défendeurs, notamment la nécessité, la contrainte et le retrait. Ils sont également pertinents pour garantir que le Tribunal dispose d'un dossier probatoire complet, en particulier lorsque les

17

pièces répondant aux demandes ne sont pas disponibles dans les bases de données institutionnelles des défendeurs, où la communication des pièces est en cours. Les défendeurs demandent donc à obtenir ces documents directement auprès du Témoin. Les défendeurs ont l'intention d'utiliser ces documents lors du procès.

**16. Questions à poser aux personnes à interroger ou exposé des points sur lesquels elles doivent être interrogées**

  A.  La formation du Témoin ; son parcours professionnel ; son expérience professionnelle ; ses contrats de travail, de conseil, de licenciement, de coopération ou de départ conclus avec les défendeurs ou Holcim, Ltd. ; ses relations avec les employés actuels et anciens des défendeurs ; et sa préparation personnelle à l'audition.

  B.  La connaissance qu'a le Témoin de la situation sécuritaire à laquelle les défendeurs étaient confrontés en Syrie.

  C.  La connaissance qu'a le Témoin de l'environnement commercial dans lequel les défendeurs opéraient et des risques associés.

  D.  La connaissance qu'a le Témoin des risques auxquels étaient exposés les défendeurs et leurs employés en Syrie, notamment, mais sans s'y limiter, les arrestations, les menaces et les enlèvements.

  E.  La connaissance qu'a le Témoin de l'idéologie djihadiste de l'ISIS, y compris son objectif d'établir un califat, et la compréhension qu'a le Témoin de l'évaluation faite par les défendeurs de l'AQI, de l'ISIS ou de l'ANF en tant qu'organisations terroristes.

  F.  La connaissance qu'a le Témoin des divers groupes armés avec lesquels Firas Tlass ou Amro Taleb ont communiqué.

  G.  La connaissance qu'a le Témoin de l'abandon de l'usine par les défendeurs et des instructions données aux employés des défendeurs concernant un éventuel retour sur le site de l'usine.

  H.  La connaissance qu'a le Témoin des investissements des défendeurs dans l'usine en Syrie et de la situation financière de ces investissements.

  I.  La connaissance qu'a le Témoin de l'enquête interne menée par les défendeurs ou Holcim Ltd. sur les activités des défendeurs en Syrie ou sur le financement direct ou indirect de l'ISIS ou de l'ANF par les défendeurs, ainsi que sa participation à cette enquête.

**17. Documents ou autres biens à inspecter**

Les défendeurs demandent les documents décrits dans les demandes de communication jointes en tant que Pièce n° 1 à la présente demande d'entraide. Le Tribunal relève que la France a fait, en vertu de l'article 23 de la Convention de La Haye, une déclaration modifiée par la communication du 19 janvier 1987, aux termes de laquelle la France n'exécutera les commissions rogatoires ayant pour objet l'obtention de preuves (« pre-trial discovery of documents ») telle que connue dans les pays de common law que lorsque les documents demandés sont limitativement énumérés dans la commission rogatoire et ont un lien direct et précis avec l'objet du litige.

18

Les demandes figurant à la Pièce n° 1 relèvent du champ d'application de la déclaration française au titre de l'article 23 telle que modifiée, en ce que : (i) chaque demande identifie le document ou la catégorie de documents par date ou plage de dates, par auteur ou destinataire lorsqu'ils sont connus, et par objet, avec la précision requise par la déclaration ; (ii) chaque demande présente un lien direct et précis avec les demandes et moyens de défense soulevés par les parties dans la procédure susmentionnée, comme décrit à la section 15 ci-dessus, et en particulier avec (a) les allégations des demandeurs relatives à un complot civil entre les défendeurs et les organisations terroristes étrangères ISIS et ANF ; (b) les moyens de défense affirmatifs des défendeurs fondés sur la nécessité, la contrainte et le retrait de tout complot allégué avant septembre 2014 ; et (c) la portée temporelle des opérations des défendeurs et l'abandon de la cimenterie de Jalabiyeh ; (iii) chaque demande porte sur des documents dont l'existence et la pertinence ont été établies lors de la communication préalable de pièces dans la procédure américaine, dans la procédure pénale française connexe ou dans le dossier public de la reconnaissance de culpabilité des défendeurs dans la procédure pénale américaine, de sorte que les demandes ne sont pas de nature exploratoire mais visent des éléments identifiés ; (iv) les documents recherchés ne sont pas disponibles auprès de sources relevant de la compétence du Tribunal, dans la mesure où ils se trouvent en la possession d'un ancien employé des défendeurs dont les dossiers personnels et les communications ne sont pas sous la garde institutionnelle des défendeurs.

Le Tribunal invite respectueusement l'autorité requise à exécuter la présente demande conformément à ce qui précède. Si, après examen, l'autorité requise estime qu'une demande particulière nécessite des précisions ou des restrictions supplémentaires afin de relever du champ d'application de la déclaration française au titre de l'article 23, le Tribunal et les parties se tiennent prêtes, par l'intermédiaire de leurs avocats français désignés à la section 19(b), à fournir ces précisions supplémentaires ou à s'entretenir avec le juge commis avant l'exécution.

**18. Toute exigence selon laquelle le témoignage doit être donné sous serment ou affirmation solennelle et toute forme particulière à utiliser**

L'audition du Témoin identifié à la section 12 ci-dessus se déroulera sous serment devant un juge désigné par la juridiction française, conformément aux articles 735 et suivants du Code de procédure civile français et au chapitre I de la Convention de La Haye, habilité à faire prêter serment et à recueillir des témoignages. Le Tribunal se satisfera de ce que la juridiction requise désigne un examinateur dûment qualifié et habilité.

Le Tribunal demande en outre que, selon votre procédure régulière et habituelle, le témoignage rendu lors de l'audition susmentionnée soit fait sous le serment ou l'affirmation solennelle suivants : « Je, [NOM DU TÉMOIN], jure que le témoignage que je m'apprête à rendre est la vérité, toute la vérité et rien que la vérité. »

**19. Méthodes ou procédures spéciales à suivre**

Le Tribunal demande respectueusement à l'autorité judiciaire compétente en France d'autoriser que l'audition du Témoin soit menée selon les méthodes et procédures spéciales suivantes, conformément à l'article 9, paragraphe 2, de la Convention de La Haye du 18 mars 1970, qui prévoit que l'autorité requise

19

suivra la méthode ou la procédure spéciale demandée par l'autorité requérante, à moins que celle-ci ne soit incompatible avec la loi interne de l'État requis ou que son exécution ne soit impossible en raison de ses pratiques et procédures internes ou de difficultés pratiques. Le Tribunal fait valoir que les méthodes et procédures spéciales demandées ci-dessous sont conformes aux articles 735 à 748 du Code de procédure civile français, et en particulier à l'article 739.

**(a) Conférence préalable à l'exécution.** Le Tribunal demande respectueusement que, avant l'exécution de la présente demande d'entraide, le juge commis convoque une conférence préalable à l'exécution, en personne ou par visioconférence, avec les avocats français des parties et l'avocat du Témoin, afin de fixer : (i) la date, l'heure, le lieu et la durée prévue de l'audition; (ii) la répartition du temps entre les défendeurs (en tant que partie requérante) et les demandeurs ; (iii) la ou les langues de la procédure et les modalités d'interprétation ; (iv) les modalités de transcription sténographique et d'enregistrement audiovisuel ; (v) les modalités d'utilisation des pièces pendant l'interrogatoire ; (vi) la procédure d'enregistrement des objections ; (vii) l'application de l'ordonnance de confidentialité et de l'ordonnance et stipulation modifiant l'ordonnance de confidentialité rendues par le Tribunal (jointes en tant que Pièce n° 3), traduites en français ; et (viii) toute autre mesure de protection que le juge commis jugera appropriée. Les parties sont invitées à coopérer et à s'entendre, dans la mesure du possible, sur les points logistiques énumérés ci-dessus, et le Tribunal demande au juge commis de mettre en œuvre, dans la mesure du possible, tout accord intervenu entre les parties sur ces questions.

**(b) Comparution des avocats français.** Le Tribunal demande respectueusement, conformément à l'article 743 du Code de procédure civile français, que le juge commis autorise les avocats français mandatés pour les défendeurs et pour les demandeurs, désignés ci-dessous, à comparaître devant le juge commis tant lors de la conférence préalable à l'exécution que lors de l'exécution de la demande d'entraide, et à présenter des observations orales et écrites sur les questions de procédure et de logistique soulevées dans le cadre de l'audition. Pour les défendeurs : Maître Denis Chemla, A&O Shearman, 32 rue François 1er, 75008 Paris, France ; Pour les demandeurs : Maître Noëlle Lenoir, 28 boulevard Raspail, 75007 Paris, France ; Pour le Témoin : Maître Antoine Vey, Vey & Associés, 16 Boulevard Raspail, Paris, France 75007.

**(c) Modalités de l'audition.** Le Tribunal demande respectueusement que, conformément à l'article 9 de la Convention et en application de l'article 739 du Code de procédure civile français, l'audition du Témoin se déroule selon des modalités proches de celles en vigueur devant les tribunaux des États-Unis, à savoir : (i) l'avocat des défendeurs, en tant que partie requérante, procède à l'interrogatoire principal du Témoin ; (ii) l'avocat des demandeurs procède au contre-interrogatoire ; (iii) l'avocat des défendeurs procède à un nouvel interrogatoire principal, et l'avocat des demandeurs peut procéder à un contre-interrogatoire supplémentaire ; (iv) l'avocat du Témoin peut poser des questions au Témoin le cas échéant et peut soulever des objections ; (v) les avocats des parties peuvent, à tout moment, poser des questions directement au Témoin sous la supervision du juge commis ; (vi) les avocats des parties peuvent, pendant l'interrogatoire, mettre des pièces ou d'autres documents à la disposition du Témoin et poser des questions concernant ces documents ; (vii) les avocats des parties peuvent soulever des objections qui seront consignées au dossier ; ces objections seront notées par le sténographe pour être tranchées ultérieurement par le Tribunal, si nécessaire, et le Témoin répondra à la question faisant l'objet de

20

l'objection, sauf si le juge commis, après avoir entendu les arguments, en décide autrement ; (viii) les questions relatives au secret professionnel (y compris le secret professionnel des avocats français, le secret professionnel entre avocat et client en droit américain, la doctrine américaine du « work product » et le privilège du cinquième amendement contre l'auto-incrimination en droit américain) seront soulevées en premier lieu devant le juge commis, toute question non résolue étant réservée à la décision du Tribunal ayant émis la présente demande d'entraide.

**(d) Serment.** Le Tribunal demande que le témoignage soit rendu sous le serment ou l'affirmation solennelle suivants : « Je, [nom du Témoin], jure que le témoignage que je m'apprête à rendre est la vérité, toute la vérité et rien que la vérité », prononcé devant le juge commis conformément à la pratique des tribunaux français.

**(e) Langue et interprétation.** Le Tribunal demande que l'interrogatoire se déroule en anglais, avec une interprétation simultanée en français assurée par un interprète judiciaire qualifié à l'intention du Témoin et du juge commis, si le Témoin le préfère, et que les réponses du Témoin soient données ou traduites en anglais. Si le Témoin choisit de témoigner en français, une interprétation simultanée vers l'anglais sera assurée, et une traduction en français de la transcription en anglais sera fournie au Témoin pour examen, ainsi qu'au juge commis.

**(f) Enregistrement audiovisuel.** Le Tribunal demande en outre respectueusement, conformément à l'article 9, paragraphe 2, de la Convention et dans la mesure où cela est compatible avec le droit français, en particulier l'article 739 du Code de procédure civile français et la pratique du juge commis, que l'audition soit enregistrée par des moyens audiovisuels en plus de la transcription sténographique, et que des copies de l'enregistrement audiovisuel et de la transcription soient transmises, par l'intermédiaire de l'autorité requise, à l'autorité requérante et aux avocats des parties qui en font la demande.

**(g) Conformité au protocole de déposition.** L'Audition sera menée, dans la mesure où cela est compatible avec les instructions du juge commis et avec la présente demande d'entraide, conformément au protocole de déposition adopté par le Tribunal le 27 mars 2026 dans l'affaire Foley c. Lafarge et al., n° 1:23-cv-05691 (E.D.N.Y.), Dkt. n° 162, et enregistré de manière identique dans chacune des actions connexes, joint en tant que Pièce n° 2.[3]

**(h) Privilèges et protections.** Ni la présente demande d'entraide, ni la communication de documents en vertu de la Convention de La Haye, ni aucun interrogatoire mené en exécution de celle-ci, y compris toutes les transcriptions et tous les enregistrements de l'audition du Témoin, ne constituent une renonciation — ni ne peuvent être considérés ou invoqués comme une renonciation — au secret professionnel entre avocat et client, à la doctrine du « work product », au secret professionnel français, ou à tout autre privilège, droit, protection ou interdiction susceptible de s'appliquer à ces éléments de preuve en vertu des lois de la France, des États-Unis d'Amérique ou de l'État de New York, y compris le

---

[3] Le même protocole de déposition a été adopté le 27 mars 2026 dans chacune des actions susmentionnées, y compris Finan c. Lafarge et al., n° 1:22-cv-07831 (E.D.N.Y.), Dkt. n° 155 ; Fields c. Lafarge et al., n° 1:23-cv-00169 (E.D.N.Y.), Dkt. n° 128 ; Murad c. Lafarge et al., n° 1:23-cv-09186 (E.D.N.Y.), Dkt. n° 106 ; Goldman c. Lafarge et al., n° 1:24-cv-01043 (E.D.N.Y.), Dkt. n° 65 ; Black c. Lafarge et al., n° 1:24-cv-08901 (E.D.N.Y.), Dkt. n° 60 ; Shirley c. Lafarge et al., n° 1:25-cv-04248 (E.D.N.Y.), Dkt. n° 70 ; Wilson c. Lafarge et al., n° 1:25-cv-01975 (E.D.N.Y.), Dkt. n° 60 ; et Stallter c. Lafarge et al., n° 1:25-cv-06749 (E.D.N.Y.), Dkt. n° 37.

21

privilège de ne pas s'incriminer soi-même garanti par le cinquième amendement de la Constitution des États-Unis.

**(i) Confidentialité.** L'Audition et la communication de documents seront menées sous réserve de l'ordonnance de confidentialité rendue par le Tribunal (voir Foley c. Lafarge et al., n° 1:23-cv-05691 (E.D.N.Y.), Dkt. n° 42-1) et de l'ordonnance et stipulation modifiant l'ordonnance de confidentialité rendue le 6 avril 2026 (voir Foley c. Lafarge et al., n° 1:23-cv-05691 (E.D.N.Y.), Dkt. n° 165), dont chacune est jointe aux présentes, ainsi qu'en traduction française, en tant que Pièce n° 3.[4] Les parties se tiennent prêtes à soumettre au juge commis toute autre mesure de protection que celui-ci jugera nécessaire.

**(j) Traductions.** Tous les documents transmis ci-joints, y compris la présente demande d'entraide, les demandes de communication de documents figurant à la Pièce n° 1, le protocole de déposition figurant à la Pièce n° 2, ainsi que l'ordonnance de confidentialité et son amendement figurant à la Pièce n° 3, sont accompagnés de leurs traductions en français.

### 20. Frais et dépens engagés et remboursables en vertu du deuxième paragraphe de l'article 14 ou de l'article 26 de la Convention

Tous les frais liés à la présente procédure au titre de la Convention de La Haye seront à la charge des parties. Chaque partie prendra en charge les honoraires et frais, le cas échéant, de ses propres avocats afférents à toute procédure découlant de la présente procédure au titre de la Convention de La Haye.

Le Tribunal exprime sa gratitude au ministère de la Justice pour sa courtoisie et son assistance dans cette affaire.

Fait le _____, 2026
Brooklyn, New York


_____
L'honorable Peggy Kuo
Juge fédérale (Magistrate Judge)
District Est de New York

---

[4]La même ordonnance et la même stipulation modifiant l'ordonnance de confidentialité (voir, par exemple, Foley, Dkt. n° 165) ont été rendues le 6 avril 2026 dans chacune des actions susmentionnées, notamment : Finan c. Lafarge et al., n° 1:22-cv-07831 (E.D.N.Y.), Dkt. n° 157 ; Fields c. Lafarge et al., n° 1:23-cv-00169 (E.D.N.Y.), Dkt. n° 130 ; Murad c. Lafarge et al., n° 1:23-cv-09186 (E.D.N.Y.), Dkt. n° 108 ; Goldman c. Lafarge et al., n° 1:24-cv-01043 (E.D.N.Y.), Dkt. n° 69 ; Black c. Lafarge et al., n° 1:24-cv-08901 (E.D.N.Y.), Dkt. n° 62 ; Shirley c. Lafarge et al., n° 1:25-cv-04248 (E.D.N.Y.), Dkt. n° 72 ; Wilson c. Lafarge et al., n° 1:25-cv-01975 (E.D.N.Y.), Dkt. n° 62 ; et Stallter c. Lafarge et al., n° 1:25-cv-06749 (E.D.N.Y.), Dkt. n° 39.

22

*Traduction libre*
*Demande d'Entraide (Chungunco)*

---

**Pièce n° 1**

**TRIBUNAL FÉDÉRAL DE DISTRICT DES ÉTATS-UNIS POUR LE DISTRICT EST DE NEW YORK**

**CHARISS FINAN, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 22-cv-07831-NGG-PK

**DIANE FOLEY, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 23-cv-05691-NGG-PK

**JASON BLACK, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 24-cv-08901-NGG-PK

**SUSAN SHIRLEY, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 25-cv-04248-NGG-PK

**NADIA MURAD, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 23-cv-09186-NGG-PK

**SUCCESSION D'AVRAHAM GOLDMAN, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 24-cv-01043-NGG-PK

**HELEN JANE WILSON, et al.**
    Demandeurs,
      c.
**LAFARGE S.A., et al.,**

1

Défendeurs.
Affaire n° 25-cv-01975-NGG-PK

**CHRISTINE STALLTER, et al.**
    Demandeurs,
    c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 25-cv-06749-NGG-PK

**TAMARA FIELDS, et al.**
    Demandeurs,
    c.
**LAFARGE S.A., et al.,**
    Défendeurs.
Affaire n° 23-cv-00169-NGG-PK

## DEMANDES DE COMMUNICATION DE PIÈCES DES DÉFENDEURS AUPRÈS DE CERTAINS TÉMOINS NON PARTIES

Conformément à la demande d'entraide à laquelle les présentes demandes sont jointes, les défendeurs demandent que Jean-Jérôme Khodara (le « Témoin ») communique, aux fins d'inspection ou de copie, les documents énumérés ci-dessous qui sont en la possession, sous la garde ou sous le contrôle du Témoin, qu'ils aient été préparés ou non par le Témoin ou toute autre personne, et ce dans les meilleurs délais, aux bureaux de Maître Denis Chemla, A&O Shearman, 32 rue François 1er, 75008 Paris, France.

## DÉFINITIONS

1. Les défendeurs adoptent par référence toutes les définitions uniformes prévues par la règle 26.3 du règlement local de procédure civile (Local Civil Rule 26.3).

2. « Agent » désigne toute Personne agissant en votre nom ou habilitée à agir en votre nom, qu'elle y soit expressément ou implicitement autorisée. Le terme « Agent » inclut, sans s'y limiter, tous les Établissements financiers auprès desquels vous détenez, avez détenu, gérez ou avez géré un Compte.

3. « ANF » désigne le Front al-Nusrah et tous ses pseudonymes et prédécesseurs, y compris al-Qaïda en Irak (« AQI »), Jabhat al-Nusrah, Jabhet al-Nusra, le Front de la Victoire et le Front al-Nusrah pour le peuple du Levant, ou tout pseudonyme que vous avez utilisé en interne pour désigner cette organisation terroriste étrangère, y compris tous les membres ou agents de cette organisation.

4. « Les défendeurs » désigne Lafarge S.A. (« Lafarge »), Lafarge Cement Holding Limited (« Lafarge Cyprus ») et Lafarge Cement Syria S.A. (« LCS »), collectivement et séparément, y compris, sans s'y limiter, tout prédécesseur ou successeur, toute société mère, filiale ou société affiliée directe ou indirecte, ainsi que toute autre entité liée, tout agent ou toute autre personne agissant ou prétendant agir avec ou pour le compte de celle-ci ou de celles-ci.

5. « Holcim » désigne Holcim, Ltd. ou le groupe Holcim, y compris, sans s'y limiter, ses prédécesseurs ou successeurs, ses sociétés mères directes ou indirectes, ses filiales ou sociétés

2

affiliées, ainsi que toute autre entité liée, tout agent ou toute autre personne agissant ou prétendant agir en son nom ou en leur nom.

6. « ISIS » désigne l'État islamique d'Irak et de Syrie ainsi que tous ses pseudonymes et prédécesseurs, y compris l'AQI, l'État islamique d'Irak et du Levant, l'État islamique et l'EIIL, ou tout pseudonyme que vous avez utilisé en interne pour désigner cette organisation terroriste étrangère, y compris tous les membres ou agents de l'une quelconque de ces organisations.

7. « Lié à » ou « concernant » désigne, sans limitation, les concepts suivants : concernant, constituant, se rapportant à, faisant référence à, décrivant, examinant, incarnant, attestant, consignant, mentionnant, enregistrant, étudiant, analysant, évaluant, estimant, reflétant, ayant trait à, recensant, projetant, appréciant, résumant, critiquant, rapportant, commentant, étayant, réfutant, répondant à, ou impliquant de toute autre manière, en tout ou en partie.

8. Les termes « vous » ou « votre » désignent le Témoin à titre individuel ainsi que tout Agent ou toute autre Personne agissant ou prétendant agir avec ou pour le compte du Témoin.

9. Les définitions énoncées ci-dessus s'appliquent à toutes les Demandes.


## DEMANDES DE COMMUNICATION DE PIÈCES

**Demande de communication n° 1 :** Les documents énumérés dans le Tableau n° 1 ci-dessous.

**Tableau n° 1**

| Document demandé | Date du document (approximative, si connue) | Témoins dont l'implication est connue |
|---|---|---|
| Mandat d'arrêt émis par l'ISIS contre Bruno Pescheux et Jacob Waerness, évoqué dans un e-mail d'Amro Taleb à Bruno Lafont le 6 septembre 2013 | S.O. | Bruno Lafont ; Bruno Pescheux ; Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault |
| Tous les documents et communications relatifs à l'embauche de Jacob Waerness en tant que responsable des risques (Risk Manager) de LCS | Septembre 2011 | Jean-Claude Veillard ; Bruno Pescheux ; Christian Herrault |
| Tous les documents et communications relatifs à la résiliation, en juillet 2012, du contrat d'Amro Taleb avec LCS en tant que consultant en environnement | Juillet 2012 | Bruno Pescheux ; Jean-Claude Veillard ; Valéry Mirakoff ; Christian Herrault |
| Tous les documents et communications relatifs à la réunion tenue à Istanbul avec des représentants du PYD à la fin de l'année 2012 | Mi-2012 à fin 2012 | Bruno Pescheux ; Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault |

3

*Traduction libre*
*Demande d'Entraide (Chungunco)*

| Document demandé | Date du document (approximative, si connue) | Témoins dont l'implication est connue |
|---|---|---|
| Tous les documents et communications de la banque Audi relatifs au refus de la demande de LCS visant à ouvrir un compte bancaire égyptien au nom de LCS | Juin 2013 | Valéry Mirakoff ; Bruno Pescheux ; Christian Herrault |
| Mandat d'arrêt contre Bruno Pescheux émis par l'ANF, mentionné dans un e-mail d'Amro Taleb | Août 2013 | Bruno Pescheux ; Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault |
| Tous les documents et communications relatifs à la réunion avec Amro Taleb à Beyrouth en août 2013 | Août 2013 | Bruno Pescheux ; Jean-Claude Veillard ; Christian Herrault |
| Tous les documents et communications relatifs à l'embauche d'Ahmad Jaloudi en tant que responsable des risques (Risk Manager) de LCS | Septembre 2013 | Jean-Claude Veillard ; Hélène Seguin ; Bruno Pescheux ; Christian Herrault |
| Tous les documents et communications relatifs à la visite à Gaziantep (Turquie) du 12 au 14 octobre 2014, y compris les notes prises lors des entretiens avec les employés des défendeurs | 16 octobre 2014 | Hélène Seguin ; Frédéric Jolibois ; Jean-Claude Veillard ; Christian Herrault |
| Tous les documents et communications d'Ahmad Jaloudi à Bruno Pescheux relatifs aux rencontres de Jaloudi avec un « haut responsable » de l'ISIS à Arraqah, mentionnées dans un courriel du 9 mars 2014 adressé par Jaloudi à Jean-Claude Veillard | Mars 2014 | Bruno Pescheux ; Jean-Claude Veillard ; Christian Herrault |
| Toutes les communications de Nabil Sandook à Firas Tlass, Amro Taleb, Ahmad Jamal (et d'autres distributeurs liés à l'ISIS) | Septembre 2013 – mai 2014 | Nabil Sandook ; Bruno Pescheux ; Jean-Claude Veillard ; Christian Herrault |
| Toutes les communications relatives à l'évacuation du personnel de LCS de l'usine de Jalabiyeh | Septembre 2014 | Bi Yong Chungunco ; Frédéric Jolibois ; Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault |
| Toutes les communications avec Bruno Lafont concernant la décision de ne pas fermer l'usine de Jalabiyeh à l'été 2014 | Mai – septembre 2014 | Christian Herrault ; Bruno Pescheux ; Jean-Claude Veillard ; Frédéric Jolibois |

4

| Document demandé | Date du document (approximative, si connue) | Témoins dont l'implication est connue |
|---|---|---|
| Toutes les communications avec Jean-Claude Veillard concernant la décision de ne pas fermer l'usine de Jalabiyeh à l'été 2014 | Mai – septembre 2014 | Christian Herrault ; Jean-Claude Veillard ; Bruno Pescheux ; Frédéric Jolibois |
| Toutes les communications avec Frédéric Jolibois concernant la décision de ne pas fermer l'usine de Jalabiyeh à l'été 2014 | Mai – septembre 2014 | Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard |
| Toutes les communications avec Frédéric Jolibois ayant précédé l'évacuation de l'usine de Jalabiyeh en septembre 2014 | Août et septembre 2014 | Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard ; Hélène Seguin |
| Toutes les communications avec Jean-Claude Veillard ayant précédé l'évacuation de l'usine de Jalabiyeh en septembre 2014 | Août et septembre 2014 | Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard ; Hélène Seguin |
| Toutes les communications avec Bruno Lafont ayant précédé l'évacuation de l'usine de Jalabiyeh en septembre 2014 | Août et septembre 2014 | Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard ; Hélène Seguin ; Bruno Lafont |
| Toutes les communications relatives à la connaissance par Bi Yong Chungunco de relations indirectes avec l'ISIS | Août 2014 – septembre 2014 | Bi Yong Chungunco ; Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard |
| Listes des paiements versés à des groupes armés communiquées par Firas Tlass | Juillet 2012 – décembre 2014 | Bruno Pescheux ; Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard |
| Toutes les communications avec Jean-Jérôme Khodara relatives à la résolution de l'ONU de l'été 2014 et à la modification ultérieure du contrat de Tlass | Août 2014 – décembre 2014 | Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard |
| Toutes les communications avec des agents des services de renseignement concernant la situation sécuritaire dans le nord de la Syrie | Juillet 2014 – février 2015 | Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault |
| Toutes les communications avec Ahmad Jaloudi concernant les groupes armés et la situation sécuritaire dans le nord de la Syrie | Septembre 2013 – octobre 2015 | Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault ; Bruno Pescheux ; Frédéric Jolibois |

5

*Traduction libre*
*Demande d'Entraide (Chungunco)*

| Document demandé | Date du document (approximative, si connue) | Témoins dont l'implication est connue |
|---|---|---|
| Toutes les communications relatives aux déclarations publiques de Lafarge concernant l'évacuation de Syrie | Novembre 2015 | Nicolas Vaniet ; Frédéric Jolibois ; Jean-Claude Veillard ; Bruno Lafont ; Christian Herrault |
| Tous les documents et communications, y compris, mais sans s'y limiter, les comptes rendus de réunion, relatifs aux réunions du comité de sécurité de Lafarge S.A. de janvier 2012 à décembre 2015 | Janvier 2012 – décembre 2015 | Christian Herrault ; Hélène Seguin ; Jean-Claude Veillard ; Bruno Lafont ; Bi Yong Chungunco ; Éric Olsen |
| Toutes les communications avec des représentants du gouvernement concernant l'usine de Jalabiyeh et la situation sécuritaire en Syrie | Septembre 2013 – décembre 2015 | Jean-Claude Veillard ; Frédéric Jolibois ; Christian Herrault ; Bruno Pescheux |
| Tous les documents et communications, y compris les comptes rendus de réunion, relatifs aux réunions avec des agents des services de renseignement et des responsables gouvernementaux | Septembre 2013 – décembre 2015 | Jean-Claude Veillard ; Hélène Seguin ; Christian Herrault |
| Toutes les communications avec Firas Tlass après l'abandon de l'usine de Jalabiyeh | Septembre 2014 – décembre 2015 | Christian Herrault ; Frédéric Jolibois ; Jean-Claude Veillard |

6

*Traduction libre*
*Demande d'Entraide (Chungunco)*

**Pièce n° 2**

*Traduction libre*

# TRIBUNAL FÉDÉRAL DE PREMIÈRE INSTANCE

## DISTRICT EST DE NEW YORK

| | |
|---|---|
| CHARISS FINAN, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 22-cv-07831-NGG-PK |
| DIANE FOLEY, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 23-cv-05691-NGG-PK |
| JASON BLACK, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 24-cv-08901-NGG-PK |
| SUSAN SHIRLEY, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 25-cv-04248-NGG-PK |
| NADIA MURAD, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 23-cv-09186-NGG-PK |
| SUCCESSION D'AVRAHAM GOLDMAN, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 24-cv-01043-NGG-PK |
| HELEN JANE WILSON, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 25-cv-01975-NGG-PK |
| CHRISTINE STALLTER, et al.,<br>Demandeurs,<br>c.<br>LAFARGE S.A., et al.,<br>Défendeurs. | Affaire n° 25-cv-06749-NGG-PK |
| TAMARA FIELDS, et al.,<br>Demandeurs,<br>c. | Affaire n° 23-cv-00169-NGG-PK |

1

*Traduction libre*

| LAFARGE S.A., et al.,<br>Défendeurs. | |
|---|---|

**STIPULATION ET ORDONNANCE**

**ÉTABLISSANT LE PROTOCOLE DE DÉPOSITION ET L'UTILISATION DE LA**

**COMMUNICATION PRÉALABLE DES PIÈCES (DISCOVERY) DANS LES ACTIONS**
**CONNEXES**

Conformément à la Règle 30 des Règles fédérales de procédure civile (« FRCP »), les parties aux neuf affaires susmentionnées (les « Actions connexes ») ont conjointement proposé un protocole (le « Protocole ») destiné à régir les dépositions et l'utilisation de la communication préalable des pièces dans ces actions. Après examen du Protocole, le Tribunal adopte la proposition des parties. La présente Stipulation et Ordonnance établissant le Protocole de déposition et l'utilisation de la communication préalable des pièces dans les Actions connexes (l'« Ordonnance ») s'applique et régit les dépositions, la production de documents, les réponses aux interrogatoires écrits et les réponses aux demandes d'aveux dans les Actions connexes.

\*\*\*

**I. DISPOSITIONS GÉNÉRALES**

1.  Sauf disposition expresse contraire de la présente Ordonnance, celle-ci ne modifie ni n'affecte l'applicabilité des FRCP, des Règles locales du Tribunal fédéral de première instance pour le District Est de New York (« LR »), des Règles fédérales relatives à la preuve (« FRE ») ou du droit applicable.

2.  Tous les documents qui ont été ou seront produits par une partie dans toute Action connexe sont par les présentes réputés produits dans toutes les Actions connexes, sauf que les documents spécifiquement désignés par la partie productrice comme étant produits dans une ou plusieurs Actions seulement ne seront pas réputés produits dans toute autre Action connexe. Les parties s'efforceront de partager les réponses aux interrogatoires écrits et aux demandes d'aveux qu'elles fournissent dans chaque Action connexe avec les avocats des autres Actions connexes. Les interrogatoires écrits et les demandes d'aveux ainsi que les réponses qui y sont apportées, signifiés dans l'une quelconque des actions Finan, Foley, Black, Shirley, Murad, Goldman et Stallter, produisent leurs effets dans chacune de ces actions, mais non dans les actions Wilson et Fields. Les interrogatoires écrits et les demandes d'aveux ainsi que les réponses qui y sont apportées, signifiés dans l'une ou l'autre des actions Wilson et Fields, produisent leurs effets dans ces deux actions, mais non dans les actions Finan, Foley, Black, Shirley, Murad, Goldman et Stallter.

3.  Une déposition factuelle ou de tiers recueillie dans toute Action connexe est par les présentes réputée recueillie dans toutes les Actions connexes. Une déposition d'expert recueillie dans toute Action est par les présentes réputée recueillie dans toutes les Actions connexes dans lesquelles cet expert est désigné comme tel.

2

*Traduction libre*

4. L'ensemble des dépositions, documents, réponses aux interrogatoires écrits et réponses aux demandes d'aveux est soumis aux Ordonnances de confidentialité rendues par le Tribunal dans chaque Action connexe.

## II. DÉPOSITIONS

5. Sauf circonstances particulières ou modification d'un commun accord, les conditions énoncées dans la présente Ordonnance régissent toutes les dépositions dans chacune des Actions connexes, y compris, sans s'y limiter, les dépositions factuelles (y compris les dépositions au titre de l'article 30(b)(6)) et les dépositions d'experts (dans la mesure où un expert est désigné pour témoigner dans plus d'une Action connexe), étant entendu qu'aucune disposition de la présente Ordonnance n'a pour objet ni ne saurait servir de fondement à la reprogrammation de la déposition de Guillaume Roux déjà fixée.

6. Les parties coopéreront de bonne foi pour fixer les dates des dépositions. Les parties devront fournir un préavis écrit raisonnable indiquant la date, l'heure, le lieu, l'identité du témoin et toute demande de documents conformément à la FRCP 30. Les parties feront tout leur possible pour rendre les témoins disponibles pour une déposition à une date convenant aux parties et sans retard injustifié. En règle générale, les témoins de fait seront entendus à proximité de leur domicile ou de leur lieu de travail. Si un témoin est un ancien employé d'une partie et n'est pas représenté par l'avocat d'une partie, dès réception d'une notification de déposition concernant cet ancien employé, ladite partie devra, dans les 14 jours ouvrables suivant la notification de déposition, indiquer la date de départ et la dernière adresse connue de l'ancien employé, préciser si l'avocat de la partie peut accepter la signification de la notification ou s'il sera nécessaire d'adresser une assignation à l'ancien employé, indiquer si l'avocat de la partie représentera celle-ci dans le cadre de la déposition et, dans le cas contraire, fournir le nom et les coordonnées de l'avocat du témoin ou préciser que le témoin n'est pas représenté (ou que son statut de représentation est inconnu). Aucune disposition de la phrase précédente n'a pour objet ni ne saurait empêcher une partie de chercher à obtenir la déposition d'un tel témoin par voie d'assignation ou par d'autres moyens.

*Note du protocole : le terme « témoin » tel qu'il est utilisé dans le Protocole est équivalent au terme « déposant ».*

7. Toutes les assignations à comparaître pour une déposition seront signifiées à toutes les parties simultanément à la signification au témoin. Si l'assignation à comparaître exige également la production de documents, d'informations stockées électroniquement ou d'objets tangibles, alors, conformément à la FRCP 45(a)(4), la partie qui signifie l'assignation doit d'abord fournir une notification et une copie de l'assignation à chaque partie avant que celle-ci ne soit signifiée à la personne à laquelle elle est adressée. Si une partie signifie une assignation pour la production de documents et exigeant la comparution à une déposition, la partie qui signifie cette assignation doit fixer la date de la déposition au moins 14 jours après la date de production fixée pour l'assignation à produire des documents ; et si la partie qui signifie cette assignation accepte de reporter la date de production des documents de manière à ce que le délai entre la date de production reportée et la date prévue pour la déposition soit inférieur à 14 jours, la date prévue pour la déposition doit être reportée à au moins 14 jours après la date de production reportée, sauf consentement de toutes les parties à un délai inférieur à 14 jours.

3

*Traduction libre*

8.  Sauf stipulation contraire des parties, les dépositions se dérouleront en personne ; les parties sont libres de fournir un accès par vidéoconférence pendant la déposition, à condition que l'avocat de la partie défenderesse à la déposition et tout avocat chargé de l'interrogatoire soient présents en personne.

9.  À l'exception des dépositions des experts et des demandeurs nommément désignés, les avocats de toutes les parties et leurs experts sont habilités à assister à toutes les dépositions, y compris celles de tiers, peuvent contre-interroger les témoins conformément aux conditions du Protocole ci-dessous et obtenir une copie de la transcription de la déposition. Les témoins de fait ne sont pas autorisés à assister aux dépositions d'autres témoins, sauf qu'un mineur faisant l'objet d'une déposition peut être accompagné d'un parent ou d'un tuteur, même si ce parent ou ce tuteur est également un témoin de fait effectif ou potentiel. Si le témoin est un expert, seules les parties et leurs avocats dans l'Action connexe dans laquelle l'expert est désigné peuvent y assister.

10. Si des informations sont soumises à l'Ordonnance de confidentialité de telle sorte qu'elles ne peuvent être divulguées à certaines personnes présentes ou participantes à une déposition, la personne concernée ne sera pas autorisée à participer aux portions de la déposition au cours desquelles ces informations soumises à l'Ordonnance de confidentialité sont discutées et n'aura pas le droit d'obtenir une copie de la portion de la transcription contenant ces informations et témoignages.

11. La partie qui a émis la première notification ou la première assignation est responsable de la prise en charge de tous les frais et coûts liés au lieu de la déposition, au vidéaste et au sténographe judiciaire. La partie qui a émis la première notification ou la première assignation s'assurera qu'un lien vidéo ou audio vers la déposition en direct est mis à la disposition des avocats autorisés à y assister mais qui n'ont pas l'intention d'interroger le témoin. Aucun participant à une déposition — c'est-à-dire aucun déposant, aucun avocat de la partie défenderesse à la déposition, ni aucun avocat chargé de l'interrogatoire — ne peut participer à une déposition en personne à distance, sauf accord des parties.

## A. Nombre et durée maximale des dépositions

12. Les parties conviennent de se concerter au sujet des modifications éventuelles à apporter aux limites du nombre de dépositions prévues à la FRCP 30(a)(2)(A)(i).

13. En règle générale, les dépositions des parties, y compris les dépositions au titre de l'article 30(b)(6), et les dépositions d'experts ne devront pas durer plus de 7 heures. Si des demandeurs issus de plusieurs Actions connexes souhaitent poser des questions, ils devront se coordonner et se répartir le temps disponible entre eux. La partie qui n'a pas signifié la notification peut contre-interroger le témoin à l'issue de l'interrogatoire principal pendant une durée maximale d'une heure, que le contre-interrogatoire dépasse ou non la limite horaire applicable. Les parties peuvent convenir de prolonger la limite de 7 heures dans un cas particulier et peuvent demander au Tribunal une dérogation à cette limite si elles ne parviennent pas à un accord.

*Note : tous les délais relatifs aux dépositions se réfèrent au temps de prise effective des témoignages.*

4

*Traduction libre*

14. En règle générale, les dépositions de témoins tiers, y compris d'anciens employés d'une partie, ne devront pas durer plus de 7 heures. La partie qui n'a pas délivré l'assignation peut contre-interroger le témoin à l'issue de l'interrogatoire principal pendant une durée maximale d'une heure, que le contre-interrogatoire dépasse ou non la limite horaire applicable. Si des demandeurs issus de plusieurs Actions souhaitent poser des questions, ils se coordonneront et se répartiront le temps disponible entre eux. Les parties peuvent convenir de prolonger la limite de 7 heures dans un cas particulier et peuvent demander au Tribunal une dérogation à cette limite si elles ne parviennent pas à un accord. En outre, si les demandeurs et les défendeurs souhaitent chacun faire déposer un témoin tiers, la déposition ne durera pas plus de 14 heures et sera répartie à parts égales entre les défendeurs d'une part et les demandeurs de toutes les Actions connexes d'autre part. Si l'avocat d'un tiers procède à un interrogatoire du témoin, le temps consacré à cet interrogatoire ne sera pas décompté des limites de temps imposées à l'une ou l'autre des parties.

15. Si la durée totale enregistrée d'une déposition dépasse 7 heures dans une même journée, la partie restante de la déposition se déroulera un second jour, sauf accord contraire entre les parties, le témoin, le sténographe judiciaire et le vidéaste.

16. Une fois qu'un témoin a été notifié ou assigné par l'un des demandeurs, il ne pourra être notifié ou assigné à nouveau par les demandeurs dans aucune des Actions connexes, sauf accord de toutes les parties. De même, si un témoin a été notifié ou assigné par les défendeurs, il ne pourra être notifié ou assigné à nouveau par les défendeurs sans l'accord des parties. Si les demandeurs et les défendeurs notifient ou assignent le même témoin, les parties feront tout leur possible pour que la déposition ait lieu sur des journées consécutives.

17. Tous les délais applicables aux dépositions seront prolongés de moitié si le témoin a besoin d'un interprète. Voir infra Section II.D.

## B. Logistique sur place

18. Sauf accord contraire entre les parties qui interrogent le témoin et ce dernier, les témoins sont autorisés à se faire accompagner physiquement par leur avocat. Si le témoin est un expert, il est en outre autorisé à se faire accompagner physiquement par son équipe. La présence de ces personnes doit être conforme à toute LR applicable et doit être consignée au procès-verbal. Si la déposition se déroule par vidéoconférence, l'avocat ou les membres de l'équipe accompagnant le témoin doivent également apparaître à la caméra pendant toute la durée du témoignage.

19. Les parties conviennent qu'un vidéaste accrédité ou certifié sera engagé pour réaliser un enregistrement vidéo de chaque déposition. L'enregistrement vidéo de la déposition devra cadrer le témoin de manière à ce qu'une distance raisonnable autour du témoin de chaque côté soit visible. L'enregistrement vidéo de la déposition ne devra pas inclure les avocats ou les autres personnes présentes à la déposition.

**C. Pièces de la déposition**

20. Pour toutes les dépositions, les parties feront des efforts raisonnables pour communiquer à l'avance la liste des participants. L'avocat qui mène l'interrogatoire devra fournir des copies papier de toutes les pièces qu'il souhaite faire marquer, soit une pour le sténographe judiciaire, une pour le témoin, une pour l'avocat de la partie défenderesse à la déposition, et une pour chacun des sept autres avocats présents au maximum, à l'exclusion de l'interrogateur. Les pièces n'ont par ailleurs pas besoin d'être fournies au sténographe judiciaire, à l'avocat de la partie défenderesse à la déposition ou aux autres avocats avant d'être marquées pour le procès-verbal.

21. Pour toutes les dépositions, les pièces seront marquées de manière séquentielle avec un préfixe comprenant « Défendeur » ou « Demandeur » suivi du prochain numéro disponible après la dernière pièce marquée lors de la déposition précédente (par exemple, Pièce Défendeur n° 1). Les parties feront tout leur possible pour ne pas attribuer un numéro de pièce différent à une pièce déjà marquée lors d'une déposition antérieure, mais utiliseront plutôt la pièce précédemment marquée. Le sténographe judiciaire ou le prestataire désigné tiendra le registre officiel des pièces.

22. Pour toutes les dépositions, l'avocat qui interroge identifiera la pièce, pour les besoins du procès-verbal, par son numéro Bates de début et de fin. Le témoin peut demander à consulter les fichiers natifs pour les feuilles de calcul, les fichiers CAO ou les éléments similaires, et l'avocat qui interroge n'est pas tenu de fournir ces fichiers natifs sous forme de copies physiques, mais peut le faire s'il le souhaite.

23. Le témoin disposera d'un délai suffisant pour examiner la pièce avant de répondre à toute question s'y rapportant.

24. Tout document examiné, ou toute note prise, par un témoin à tout moment après le début de la déposition et avant sa conclusion devra être conservé et soit mis à la disposition des avocats de toutes les parties, soit versé au procès-verbal de la déposition.

25. À l'issue de la déposition, le prestataire chargé de la gestion des pièces distribuera les copies tamponnées au sténographe judiciaire et à l'ensemble des avocats présents.

**D. Interprètes**

26. Les parties se concerteront sur les circonstances justifiant le recours à des interprètes choisis par les parties ou à des interprètes neutres lors des dépositions, y compris le délai de préavis approprié et le nombre d'interprètes.

27. Toutes les dépositions se dérouleront en anglais. À défaut d'accord entre les parties, pour tout témoin qui, au moins 14 jours avant la déposition, déclare ne pas maîtriser suffisamment l'anglais pour comprendre les questions posées en anglais ou pour y répondre, les parties feront appel à un interprète neutre.

28. La partie qui a notifié la déposition prendra en charge les frais liés à l'engagement d'un traducteur officiel et qualifié pour la déposition de tout témoin ayant besoin d'un traducteur

6

*Traduction libre*

pour répondre aux questions en anglais. L'avocat de toute partie peut amener son propre traducteur à la déposition afin de l'assister. Si une partie insiste pour recourir à son propre interprète lors d'une déposition, elle en assumera les frais.

29. Toute objection à la traduction doit tenir compte des exigences de la FRCP 30(c)(2).

**E. Dispositions diverses**

30. Le témoin peut examiner et signer la transcription officielle fournie par le sténographe judiciaire, en signalant toute erreur dans le délai prévu par la FRCP 30(e).

31. Lorsqu'un témoin est représenté par un avocat qui ne représente pas une partie aux Actions connexes (par exemple, un tiers ou un employé d'une partie disposant d'un avocat distinct), la partie notifiante devra fournir une copie de l'Ordonnance de confidentialité applicable à l'avocat de ce témoin, accompagnée de l'assignation à comparaître ou de la notification de déposition. Les parties feront tout leur possible pour que les témoins tiers et leurs avocats se conforment au Protocole.

32. Les parties peuvent modifier ces procédures de commun accord, le cas échéant, et se réservent le droit de demander des modifications raisonnables de ces procédures, le cas échéant, dans des cas particuliers.

Date : 26 mars 2026

*[Suivent les signatures des avocats des parties.]*

**IL EST AINSI ORDONNÉ.**

Date : Brooklyn, New York

27 mars 2026

Peggy Kuo

*Magistrate Judge (juge fédérale auxiliaire)*

7

**Pièce n° 3**

*Traduction libre*

**Foley c. Lafarge S.A. — Affaire n° 1:23-cv-05691 (NGG) (PK)**

**Finan c. Lafarge S.A. — Affaire n° 1:22-cv-07831 (NGG) (PK)**

**Fields c. Lafarge S.A. — Affaire n° 1:23-cv-00169 (NGG) (PK)**

## ORDONNANCE DE CONFIDENTIALITÉ

Il est ordonné que les dispositions suivantes régissent les revendications de confidentialité dans le cadre de la présente procédure :

(a) Les documents et informations suivants peuvent être désignés comme « confidentiels », à condition que ces documents ne soient pas publics [cocher toutes les cases applicables] :

☒ Données commerciales sensibles, telles que des informations confidentielles ou exclusives relatives à la recherche, au développement, à la fabrication, à des activités commerciales ou d'affaires, des secrets de fabrication, des formules spéciales, des questions de sécurité de l'entreprise, des listes de clients, des données financières, des prévisions de ventes, des données de production, des questions relatives aux fusions et acquisitions, et des données relatives aux prix.

☒ Données personnelles sensibles, telles que les identifiants personnels, les informations financières, les dossiers fiscaux et les dossiers du personnel d'un employeur.

☒ Dossiers médicaux et juridiques, y compris les dossiers et rapports médicaux.

☐ Antécédents judiciaires non publics.

(b) Si une partie estime qu'un document non décrit dans le paragraphe ci-dessus devrait néanmoins être considéré comme confidentiel, elle peut en faire la demande au Tribunal. Une telle demande ne sera accueillie que pour motif valable dûment démontré.

(c) L'avocat de la partie qui produit les documents peut désigner des documents ou des parties de ceux-ci comme confidentiels en apposant la mention « confidentiel » sur chaque page.

Si ces informations sont fournies en réponse à un interrogatoire écrit, l'avocat peut joindre ces informations séparément au corps principal des réponses à l'interrogatoire écrit, marquer ces annexes de la mention « confidentiel » et incorporer par référence les éléments annexés dans les réponses.

Au moment d'une déposition ou dans les 10 jours suivant la réception de la transcription de la déposition, une partie peut désigner comme confidentielles des portions spécifiques de la transcription qui contiennent des éléments confidentiels selon les critères énoncés au paragraphe (a) ci-dessus. Cette désignation doit être effectuée par écrit et signifiée à tous les avocats. Aucune objection ne pourra être soulevée lors de la déposition au motif qu'une réponse permettrait d'obtenir des informations confidentielles. Les transcriptions seront traitées comme confidentielles pendant cette période de 10 jours. Toute portion d'une transcription désignée comme confidentielle sera par la suite

1

*Traduction libre*

traitée comme telle conformément à la présente Ordonnance. La portion confidentielle de la transcription, ainsi que toutes les pièces qui y sont uniquement mentionnées, seront reliées dans un volume séparé portant la mention « Informations confidentielles » apposée par le sténographe.

(d)  Les documents désignés « confidentiels » ne pourront être communiqués qu'aux avocats, aux parties, aux experts, aux témoins effectifs ou potentiels, au personnel du tribunal et aux autres personnes dont la consultation de ces documents est nécessaire à la poursuite ou à la défense de la présente procédure. Toute personne autorisée à consulter des documents confidentiels se verra d'abord remettre une copie de la présente Ordonnance et sera en outre informée de l'obligation de respecter la désignation de confidentialité. Toute personne autorisée à consulter des documents confidentiels qui n'est ni partie ni avocat d'une partie sera tenue de signer un engagement de respecter la présente Ordonnance, joint en Annexe A. Les parties conviennent que tout élément de communication préalable confidentiel produit dans le cadre du présent litige ne pourra être utilisé qu'en relation avec ce litige.

(e)  L'examen des documents et informations confidentiels par les avocats, experts ou consultants des parties au litige ne vaudra pas renonciation à la confidentialité des documents ni aux objections à leur production.

(f)  La divulgation par inadvertance, involontaire ou en chambre du conseil d'un document ou d'une information confidentielle ne sera généralement pas considérée comme une renonciation, totale ou partielle, aux revendications de confidentialité d'une partie. Si, à tout moment avant l'audience au fond, une partie productrice se rend compte que certaines portions des éléments de communication préalable qu'elle a produits auraient dû être désignées comme « confidentielles », elle peut les désigner comme telles en en informant toutes les parties par écrit ; à condition que ces éléments n'aient pas déjà été publiés ou divulgués d'une autre manière, ces portions seront dès lors traitées comme confidentielles en vertu de la présente Ordonnance.

(g)  Si une partie estime qu'un document désigné — ou que la partie productrice cherche à désigner — comme confidentiel ne justifie pas une telle désignation, elle devra d'abord s'efforcer de bonne foi de résoudre ce différend avec l'avocat de la partie adverse. À défaut d'une résolution par les parties, l'une ou l'autre partie peut saisir le Tribunal afin qu'il se prononce sur le bien-fondé de la désignation. Il incombe à la partie revendiquant la confidentialité de démontrer que cette désignation est justifiée.

(h)  Les parties devront se conformer aux Étapes pour le dépôt électronique de documents sous scellés en matière civile du District Est de New York, disponibles à l'adresse https://www.nyed.uscourts.gov/sites/default/files/forms/EfilingSealedCV.pdf, lorsqu'elles souhaitent demander le dépôt sous scellés d'un document.

(i)  Dans un délai raisonnable après la conclusion du litige, l'ensemble des éléments confidentiels devra être restitué aux parties productrices respectives ou détruit par les destinataires.

(j)  Pour toute requête adressée au Tribunal visée par la présente Ordonnance ou autorisée par celle-ci, le Tribunal peut exercer son pouvoir d'appréciation pour déterminer si la partie ayant gain de cause dans un tel différend peut obtenir le remboursement des frais qu'elle a engagés et, le cas échéant, le montant à accorder.

2

*Traduction libre*

(k)  Le Tribunal conservera sa compétence à l'égard de toutes les personnes soumises à la présente Ordonnance dans la mesure nécessaire pour faire respecter les obligations qui en découlent.

Date : avril 2024

*[Suivent les signatures des avocats des parties.]*

**IL EST AINSI ORDONNÉ.**

Date : Brooklyn, New York

Avril 2024

**Peggy Kuo**

*Magistrate Judge (juge fédérale auxiliaire)*

**ANNEXE A**

J'ai été informé(e) par les avocats que certains documents ou informations devant m'être communiqués dans le cadre des affaires intitulées Foley c. Lafarge S.A., n° 1:23-cv-05691-NGG-PK, Finan c. Lafarge S.A., n° 1:22-cv-07831-NGG-PK, et Fields c. Lafarge S.A., n° 1:23-cv-00169-NGG-PK, ont été désignés comme confidentiels. J'ai été informé(e) que tous les documents ou informations portant la mention « confidentiel » sont confidentiels par Ordonnance du Tribunal.

Je m'engage par les présentes à ne divulguer aucune information contenue dans ces documents à toute autre personne. Je m'engage en outre à ne pas utiliser ces informations à d'autres fins que celles du présent litige.

DATE : _____

[Signature]

Signé en présence de : _____

(Avocat)

3

*Traduction libre*

*[Traduction de courtoisie de l'anglais vers le français]*

## TRIBUNAL FÉDÉRAL DE PREMIÈRE INSTANCE
## DISTRICT EST DE NEW YORK

**Affaires concernées :**

— Foley c. Lafarge S.A., et al., affaire civile n° 1:23-cv-05691-NGG-PK

— Finan c. Lafarge S.A., et al., affaire civile n° 1:22-cv-07831-NGG-PK

— Black c. Lafarge S.A., et al., affaire civile n° 1:24-cv-08901-NGG-PK

— Shirley c. Lafarge S.A., et al., affaire civile n° 1:25-cv-04248-NGG-PK

— Goldman c. Lafarge S.A., et al., affaire civile n° 1:24-cv-01043-NGG-PK

— Murad c. Lafarge S.A., et al., affaire civile n° 1:23-cv-09186-NGG-PK

— Stallter c. Lafarge S.A., et al., affaire civile n° 1:25-cv-06749-NGG-PK

— Fields c. Lafarge S.A., et al., affaire civile n° 1:23-cv-00169-NGG-PK

— Wilson c. Lafarge S.A., et al., affaire civile n° 1:25-cv-01975-NGG-PK

## STIPULATION ET ORDONNANCE MODIFIANT L'ORDONNANCE DE CONFIDENTIALITÉ

Les parties, par l'intermédiaire de leurs avocats soussignés, conviennent par les présentes et demandent respectueusement au Tribunal de rendre l'Ordonnance suivante modifiant l'Ordonnance de confidentialité précédemment rendue dans la présente Action (ECF n° 42-1) (l'« Ordonnance de confidentialité ») :

CONSIDÉRANT que le Tribunal a rendu l'Ordonnance de confidentialité (ECF n° 42-1) régissant le traitement des éléments confidentiels de la communication préalable dans la présente Action ;

CONSIDÉRANT que le Tribunal a rendu une Stipulation et Ordonnance relatives à la procédure de communication préalable des éléments électroniques (ECF n° 120) (le « Protocole ESI »), qui régit le format, le traitement, le caviardage, les métadonnées et la sécurité des informations stockées électroniquement, et que les parties entendent que la présente modification soit interprétée en cohérence avec le Protocole ESI et ne vienne pas le modifier ;

CONSIDÉRANT que la communication préalable dans la présente Action porte sur des documents et des ESI susceptibles de contenir des données à caractère personnel, y compris des dossiers médicaux, ainsi que des données à caractère personnel relevant des catégories particulières et des données relatives aux condamnations pénales et aux infractions, telles que définies respectivement aux articles 9 et 10 du Règlement général sur la protection des données (Règlement (UE) 2016/679 de l'Union

4

*Traduction libre*

européenne, le « RGPD »), et y compris des données susceptibles d'être soumises aux régimes des États membres de l'Union européenne et de la Suisse en matière de protection des données, de confidentialité et de droit du travail ;

CONSIDÉRANT que les défendeurs estiment que, compte tenu de la nature et du volume des données à caractère personnel en cause dans la présente Action, les responsables du traitement concernés (au sens de l'article 4, paragraphe 7, du RGPD) devraient, en ce qui concerne le traitement de ces données à caractère personnel protégées par le RGPD, mettre en œuvre des garanties supplémentaires conformes aux principes du RGPD ;

CONSIDÉRANT que les parties se sont concertées de bonne foi et conviennent que des modifications limitées de l'Ordonnance de confidentialité sont appropriées pour faciliter et accélérer la communication préalable portant sur des volumes importants de documents tout en protégeant les informations personnelles hautement sensibles ;

## Définitions

« Informations Attorneys' Eyes Only » ou « AEO » désigne un sous-ensemble d'Informations confidentielles hautement sensibles qui inclut, sans s'y limiter :

(a) les données à caractère personnel sensibles relatives à des personnes physiques de l'Union européenne et de la Suisse autres que celles déjà visées par l'Ordonnance de confidentialité ;

(b) les données médicales, y compris, sans s'y limiter, les notes de psychologues, les dossiers médicaux et les tests diagnostiques ;

(c) les données à caractère personnel relevant des catégories particulières au sens de l'article 9 du RGPD ;

(d) les données à caractère personnel relatives aux condamnations pénales et aux infractions au sens de l'article 10 du RGPD ; et

(e) les catégories comparables de données à caractère personnel protégées en vertu des lois sur la protection des données, la confidentialité ou le droit du travail des États membres de l'Union européenne, du Royaume-Uni ou de la Suisse.

Les éléments désignés « ATTORNEYS' EYES ONLY » ne pourront pas être produits avec des caviardages au titre des « données à caractère personnel nécessitant une protection en vertu des lois étrangères applicables en matière de protection des données », au sens où cette expression est utilisée à la Partie IV(3) du Protocole ESI. Pour éviter toute ambiguïté, les éléments désignés « ATTORNEYS' EYES ONLY » peuvent être produits avec des caviardages portant sur « (1) les informations privilégiées, y compris les informations protégées par le secret professionnel et le secret des travaux préparatoires (work product privilege) ; et (2) les informations d'identification personnelle sensibles (« PII »), y compris les numéros de sécurité sociale et les informations bancaires personnelles relatives à des comptes bancaires dont les défendeurs estiment raisonnablement et de

5

bonne foi qu'ils ne sont pas liés aux faits reprochés, qu'elles soient produites sous forme caviardée ou non, conformément au Protocole ESI ». Id.

Afin de maximiser la protection et d'éviter toute production involontaire, les parties conviennent que les défendeurs pourront marquer tous les documents des productions à venir de la mention « ATTORNEYS' EYES ONLY ».

Le terme « Incident relatif aux données » désigne une violation de la sécurité entraînant la divulgation accidentelle ou illicite, ou l'accès accidentel ou illicite, à des Données à caractère personnel ou à des Données relevant des catégories particulières transmises ou stockées dans le cadre de la présente Action.

Le terme « Données à caractère personnel » a le sens qui lui est donné à l'article 4, paragraphe 1, du RGPD, à savoir toute information se rapportant à une personne physique identifiée ou identifiable ; est réputée identifiable une personne qui peut être identifiée, directement ou indirectement, notamment par référence à un identifiant tel qu'un nom, un numéro d'identification, des données de localisation, un identifiant en ligne, ou à un ou plusieurs éléments spécifiques propres à son identité physique, physiologique, génétique, psychique, économique, culturelle ou sociale.

Le terme « Partie destinataire » désigne tout avocat ou toute autre personne autorisée qui reçoit des Données à caractère personnel ou des Informations AEO, ou y accède, en vertu de l'Ordonnance de confidentialité.

## Désignation et divulgation

Une partie productrice peut désigner des éléments de la communication préalable comme « ATTORNEYS' EYES ONLY » lorsque ces éléments contiennent des Informations AEO et que leur divulgation au-delà des restrictions énoncées dans la présente Ordonnance créerait un risque substantiel de préjudice, y compris des risques découlant des lois applicables en matière de protection des données ou de confidentialité.

Production non caviardée. Lorsque les éléments de la communication préalable contiennent des Informations AEO, une partie productrice peut choisir de produire ces éléments sans caviardage, sous réserve d'une désignation « ATTORNEYS' EYES ONLY », au lieu de procéder à un caviardage. Aucune disposition de la présente Ordonnance ne saurait être interprétée comme imposant un caviardage en vertu de l'Ordonnance de confidentialité ou du Protocole ESI lorsque la partie productrice estime raisonnablement qu'une désignation AEO offre une protection appropriée.

Sauf décision contraire du Tribunal ou accord écrit de la partie productrice, les éléments désignés « ATTORNEYS' EYES ONLY » ne pourront être divulgués qu'aux personnes suivantes :

(a)  aux avocats externes inscrits au dossier et à leur personnel d'assistance contentieuse ;

(b)  aux avocats internes (in-house counsel) et à leur personnel d'assistance contentieuse ;

(c)  aux experts ou consultants engagés pour les besoins de la présente Action qui ont signé l'Annexe A et qui ne sont pas dirigeants, administrateurs ou employés d'une partie ; et

6

*Traduction libre*

(d)  au Tribunal et au personnel judiciaire.

Les éléments désignés « ATTORNEYS' EYES ONLY » peuvent être utilisés sous forme non caviardée lors des dépositions si le témoin apparaît au regard du document et a déjà eu accès à cet élément dans le cadre de ses fonctions professionnelles.

## Limitation de finalité

Conformément au principe de limitation des finalités énoncé à l'article 5 du RGPD, l'ensemble des Informations AEO divulguées dans le cadre de la communication préalable dans la présente Action ne pourra être utilisé qu'aux fins de la poursuite, de la défense ou du règlement des demandes formulées dans la présente Action, et ne pourra être utilisé à aucune fin secondaire. Sans préjudice de ce qui précède, aucune Partie destinataire n'utilisera de Données à caractère personnel obtenues dans le cadre de la communication préalable à des fins commerciales, de marketing, de profilage, de prise de décision automatisée, de publication journalistique, de recherche sans rapport avec la présente Action, ou à toute autre fin que la conduite du présent litige. Aucune Partie destinataire ne copiera, reproduira ou dupliquera des Données à caractère personnel ou des Informations AEO, sauf dans la mesure raisonnablement nécessaire à la conduite de la présente Action. Toute copie de ce type sera soumise aux mêmes protections que l'original.

## Demandes de caviardage et de modification de désignation

Si une partie souhaite utiliser des éléments désignés « ATTORNEYS' EYES ONLY » à une fin incompatible avec cette désignation, elle devra identifier un nombre raisonnable d'éléments et demander à la partie productrice d'y appliquer des caviardages et de réviser la désignation de confidentialité. Une copie des éléments comportant les caviardages et la désignation de confidentialité révisée devra être fournie dans un délai de cinq (5) jours ouvrables.

## Traitement des ESI

Les documents produits conformément au Protocole ESI et désignés « ATTORNEYS' EYES ONLY » devront être marqués et identifiés selon les mêmes mécanismes que ceux applicables aux autres désignations de confidentialité, notamment l'apposition d'un tampon sur les images TIFF, l'identification sur les espaces réservés des fichiers natifs et le renseignement du champ de métadonnées de confidentialité, conformément au Protocole ESI.

## Sécurité et utilisation des Informations « ATTORNEYS' EYES ONLY »

Conformément au principe d'intégrité et de confidentialité énoncé à l'article 5 du RGPD, l'ensemble des éléments désignés « ATTORNEYS' EYES ONLY » (les « Informations AEO ») devra être traité, transmis et stocké à l'aide de mesures de protection administratives, techniques et physiques

7

raisonnables et appropriées, conformes aux pratiques de sécurité standard du secteur applicables aux données hautement sensibles.

Ces mesures de protection devront inclure, au minimum, des contrôles d'accès limitant la mise à disposition aux personnes autorisées en vertu de la présente Ordonnance, une authentification sécurisée, le chiffrement des Informations AEO en transit et, lorsque cela est techniquement réalisable, au repos, ainsi que des mesures destinées à prévenir tout accès non autorisé, toute divulgation, altération ou perte.

Les Informations AEO ne pourront pas être téléversées vers, traitées par, résumées par, intégrées dans, vectorisées par, classées au moyen de, traduites par, ou autrement divulguées à, tout système d'intelligence artificielle générative accessible au public, tout grand modèle de langage (LLM) reposant sur l'apprentissage automatique, ou tout outil ou service automatisé similaire, y compris les systèmes qui conservent les entrées, les sorties ou autres dérivés à des fins d'entraînement, d'ajustement, d'amélioration du service ou d'utilisation inter-clients. Toute utilisation autorisée d'intelligence artificielle ou d'outils automatisés devra être limitée aux systèmes contrôlés par la Partie destinataire ou ses avocats, experts ou consultants, ou contractuellement restreints à ceux-ci, et configurés de manière à empêcher la conservation, l'utilisation secondaire ou la divulgation des Informations AEO ou de tout dérivé de celles-ci au-delà de ce qui est autorisé en vertu de la présente Ordonnance et du Protocole ESI.

## Notification d'incident relatif aux données

Conformément aux principes de transparence, de confidentialité et d'intégrité énoncés à l'article 5 du RGPD, dès qu'une Partie destinataire a connaissance d'un Incident relatif aux données impliquant des Informations AEO, elle devra en informer la partie productrice par écrit sans retard injustifié.

Cette notification devra inclure, dans la mesure des informations alors connues : (i) une description de la nature de l'Incident relatif aux données, y compris, lorsque cela est possible, les catégories et le nombre approximatif de personnes concernées et d'enregistrements de données concernés ; (ii) le nom et les coordonnées d'un point de contact désigné auprès duquel des informations complémentaires peuvent être obtenues ; (iii) une description des conséquences probables de l'Incident relatif aux données ; et (iv) une description des mesures prises ou envisagées pour remédier à l'Incident relatif aux données, y compris, le cas échéant, les mesures destinées à atténuer ses effets négatifs potentiels.

La Partie destinataire coopérera pleinement avec la partie productrice dans le cadre de l'enquête et de la remédiation relatives à l'Incident, et prendra toutes les mesures raisonnables pour contenir l'Incident et atténuer tout préjudice causé aux personnes concernées.

## Suppression et destruction des Données à caractère personnel

Conformément au principe de limitation de la conservation énoncé à l'article 5 du RGPD, dans un délai de soixante (60) jours à compter de la résolution définitive de la présente Action (ou plus longtemps s'il existe une base juridique justifiant la conservation des données concernées pendant une période plus longue), chaque Partie destinataire devra détruire de manière sécurisée toutes les

*Traduction libre*

Informations AEO reçues au cours de la communication préalable. La destruction sera effectuée à l'aide de méthodes raisonnablement conçues pour rendre les données définitivement irrécupérables, y compris, le cas échéant, par la suppression sécurisée des fichiers électroniques et le déchiquetage des documents physiques.

Date : 3 avril 2026

*[Suivent les signatures des avocats des parties.]*

**IL EST AINSI ORDONNÉ.**

Date : Brooklyn, New York

6 avril 2026

Peggy Kuo

*Magistrate Judge (juge fédérale auxiliaire)*

9